UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTIAN POWELL

                               Plaintiff,          Civ. No.: 1:21-cv-721

v.

CITY OF JAMESTOWN,
CITY OF JAMESTOWN CLERK,
JAMESTOWN POLICE DEPARTMENT,
JAMESTOWN POLICE CHIEF TIMOTHY
JACKSON,
COUNTY OF CHAUTAUQUA,
CHAUTAUQUA COUNTY SHERIFF'S OFFICE,
CHAUTAUQUA COUNTY SHERIFF JAMES B.
QUATTRONE,
CHAUTAUQUA COUNTY UNDERSHERIFF
DARRYL W. BRALEY,
JOHN DOES 1-10, said names being fictitious
but intended to be any other individual/officers
involved in the within incident and employees of
the CITY OF JAMESTOWN and/or
JAMESTOWN POLICE DEPARTMENT in their
individual and official capacities, and
JOHN DOES 1-10, said names being fictitious
but intended to be any other individual/officers
involved in the within incident and employees of
the COUNTY OF CHAUTAUQUA and/or
CHAUTAUQUA COUNTY SHERIFF'S OFFICE
in their individual and official capacities,

                               Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF THE
## COUNTY OF CHAUTAUQUA DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

PLAINTIFF'S ALLEGATIONS ....................................................................................... 2

ARGUMENT ................................................................................................................. 6

I.    Plaintiff's Insufficient "Group Pleading" Requires Dismissal ........................... 6

II.   Plaintiff's § 1983 *Monell* Claims Against The County Should Be Dismissed ... 8

III.  Plaintiff's § 1983 Supervisory Liability Claims Against Sheriff Quattrone And
      Undersheriff Braley Should Be Dismissed ...................................................... 11

IV.   Plaintiff's § 1983 And State Law Unlawful Arrest Claims Should Be Dismissed
      Against The County Defendants .................................................................... 13

V.    Plaintiff's § 1983 Excessive Force Claim Should Be Dismissed Against The
      County Defendants ....................................................................................... 14

VI.   Plaintiff's § 1983 Deliberate Indifference To Medical Needs Claim Should Be
      Dismissed Against The County Defendants ................................................... 16

VII.  Plaintiff's § 1983 Conspiracy Claim Should Be Dismissed Against The County
      Defendants ................................................................................................... 19

VIII. Plaintiff's § 1983 Failure To Intervene Claim Should Be Dismissed Against
      The County Defendants ................................................................................ 21

IX.   The County Defendants Are Entitled To Qualified Immunity ......................... 22

X.    Plaintiff's Remaining State Law Claims Should Be Dismissed Against The
      County Defendants ....................................................................................... 23

      A.  Plaintiff's Negligence and Vicarious Liability Claims Should Be Dismissed

          ............................................................................................................. 24

      B.  Plaintiff's Negligent Hiring, Training, Supervision, and Retention Claims
          Should Be Dismissed ............................................................................ 25

      C.  Plaintiff's Assault And Battery Claims Should Be Dismissed ................... 27

      D.  Plaintiff's IIED and NIED Claims Should Be Dismissed .......................... 29

XI.    Plaintiff Cause Of Action For Punitive Damages Against The County
       Defendants Should Be Dismissed ................................................................ 30

CONCLUSION ....................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:                                                                 <u>Page</u>:

*Amiron Dev. Corp. v Sytner*,
    2013 WL 1332725 (E.D.N.Y. 2013)................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................ 4, 12, 13

*Ashely v. City of New York*,
    7 A.D.3d 742 (2d Dept 2004) ................................................. 26

*ATSI Comms, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ...................................................... 4, 5

*Bell v. Arnone*,
    455 F.Supp.2d 232 (W.D.N.Y. 2006) ........................................ 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................. 4, 5, 6

*Boyler v. City of Lackawanna*,
    287 F.Supp.3d 308 (W.D.N.Y. 2018) ....................................... 28

*Christian v. Town of Riga*,
    649 F.Supp.2d 84 (W.D.N.Y. 2009) ........................................ 20

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002).................................................... 20

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)............................................................... 30

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995) ................................................. 11, 12

*Conopco, Inc. v. Roll Int'l*,
    231 F.3d 82 (2d Cir. 2000) ...................................................... 5

*Cotto v. City of New York*,
    803 Fed.Appx. 500 (2d Cir. 2020) ............................................ 9

*Cunningham v. United States*,
    472 F.Supp.2d 366 (E.D.N.Y. 2007) ....................................... 28

*Darnell v. Pineiro*,
      849 F.3d 17 (2d Cir. 2017) ......................................................... 17

*Dininny v. Trentanelli*,
      2010 WL 5343180 (W.D.N.Y. 2010) ........................................... 30

*Figueroa v. Mazza*,
      825 F.3d 89 (2d Cir. 2016) ......................................................... 28

*Galarza v. N.Y.C. Police Dep't, No.* 18-2715,
      2019 WL 4409695 (2d Cir. 2019) ............................................... 13

*Gleis v. Buehler*,
      374 F.Appx. 218 (2d Cir. 2010) .................................................. 13

*Gonzalez v. City of Schenectady*,
      728 F.3d 149 (2d Cir. 2013) ....................................................... 22

*Goshen v. Mutual Life Ins. Co. of New York*,
      98 N.Y.2d 314 (2002) ................................................................. 24

*Graham v. Connor*,
      490 U.S. 386 (1989) ................................................................... 15

*Hardy v. Erie County*,
      2012 WL 1835624 (W.D.N.Y. 2012) ............................................. 9

*Harlow v. Fitzgerald*,
      457 U.S. 800 (1982) ................................................................... 22

*Hays v. City of New York*,
      2017 WL 782496 (S.D.N.Y. 2017) ............................................... 29

*Holland v. City of New York*,
      197 F.Supp.3d 529 (S.D.N.Y. 2016) ........................................... 23

*Ivery v. Baldauf*,
      284 F.Supp.3d 426 (W.D.N.Y. 2018) .......................................... 20

*Johnson v. City of N.Y.*,
      2017 WL 2312924 (S.D.N.Y. 2017) ............................................... 6

*Johnson v. City of New York*,
      940 F.Supp. 631 (S.D.N.Y. 1996) .......................................... 6, 15

*Johnson v. Glick*,
    481 F.2d 1028 (2d Cir. 1973) ....................................................................... 15

*Jones v. Town of E. Haven*,
    691 F.3d 72 (2d Cir. 2012) .......................................................................... 10

*Jones v. Trump*,
    971 F.Supp. 783 (S.D.N.Y. 1997) ................................................................. 3

*Kelsey v. City of New York*,
    306 Fed.Appx. 700 (2d Cir. 2009) ............................................................. 19

*Leon v. Martinez*,
    84 N.Y.2d 83 (1994) .................................................................................... 6

*Lurch v. City of New York*,
    2021 WL 842616 (S.D.N.Y. 2021) ............................................................... 6

*Martin v City of New York*,
    2008 WL 1826483 (S.D.N.Y. 2008) ............................................................. 7

*Matthews v. City of New York*,
    889 F.Supp.2d 418 (E.D.N.Y. 2012) .......................................................... 22

*Missel v. County of Monroe*,
    2009 WL 3617787 (2d Cir. 2009) ................................................................. 9

*Moran v. Livingston*,
    155 F.Supp.3d 278 (W.D.N.Y. 2016) ........................................................ 17

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293 (1983) ................................................................................. 30

*Mustafa v. Povero*,
    2017 WL 4169339 (W.D.N.Y. 2019) ......................................................... 26

*Newton v City of New York*,
    681 F.Supp.2d 473 (S.D.N.Y. 2010) ......................................................... 26

*New York v Mountain Tobacco Co.*,
    55 F.Supp.3d 301 (E.D.N.Y. 2014); ............................................................ 7

*Ocasio v. City of Canandaigua*,
    2021 WL 115509 (W.D.N.Y. 2021) ........................................................... 20

*Outlaw v. City of Hartford*,
  884 F.3d 351 (2d Cir. 2018) ................................................................. 10

*Perrone v. Monroe Cnty. Sheriff Patrick O'Flynn*,
  2015 WL 7776930 (W.D.N.Y 2015)........................................................ 27

*Pierce v. Ottoway*,
  2009 WL 749862 (W.D.N.Y. 2009)........................................................ 10

*Plair v. City of New York*,
  789 F.Supp.2d 459 (S.D.N.Y. 2011) ..................................................... 11

*Porro v Barnes*,
  624 F.3d 1322 (10th Cir. 2010) ............................................................ 12

*Ricciuti v. N.Y.C. Transit Auth.*,
  124 F.3d 123 (2d Cir. 1997) ................................................................. 23

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) .................................................................. 4

*Santana v. Leith*,
  117 A.D.3d 711 (2d Dept 2014) ............................................................ 30

*Sheila C. v. Povich*,
  11 A.D.3d 120 (1st Dept 2004)............................................................. 27

*Shenk v. Cattaraugus County*,
  2007 WL 2874427 (W.D.N.Y. 2007)........................................................ 9

*Shu Yuan Huang v. St. John's Evangelical Lutheran Church*,
  129 A.D.3d 1053 (2d Dept 2015) .......................................................... 27

*Solomon v. City of Rochester*,
  449 F.Supp.3d 104 (W.D.N.Y. 2020) ..................................................... 14

*Sorrell v. Cnty. of Nassau*,
  162 F.Supp.3d 156 (E.D.N.Y. 2016) ...................................................... 30

*St. John v. Marlborough*,
  163 A.D.2d 761 (3d Dept 1990) ............................................................ 14

*Stoianoff v. Gahona*,
  248 A.D.2d 525 (2d Dept 1998) ............................................................. 6

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020) ......................................................................... 12

*Tenenbaum v. Williams*,
    193 F.3d 581 (2d Cir. 1999) ......................................................................... 20

*Thomas v. City of New York*,
    2015 WL 9412543 (E.D.N.Y. 2015) .............................................................. 10

*Tisdale v. Hartley*,
    442 F.Supp.3d 569 (W.D.N.Y. 2020) .......................................................... 14

*Walczyk v. Rio*,
    496 F.3d 139 (2d Cir. 2007) ......................................................................... 13

*Williams v. N.Y.C. Hous. Auth.*,
    816 Fed.Appx. 532 (2d Cir. 2020) .................................................................. 6

*Worrell v. City of New York*,
    2014 WL 1224257 (E.D.N.Y. 2014) .............................................................. 10

*Wright v. Orleans County et al.*,
    2015 WL 5316410 (W.D.N.Y. 2015) ............................................................... 7

*Wright v. Smith*,
    21 F.3d 496 (2d Cir.1994) ............................................................................ 17

*Zahra v. Town of Southold*,
    48 F.3d 674 (2d Cir. 1995) ............................................................................. 9

*Zalewski v T.P. Builders, Inc.*,
    2011 WL 3328549 (N.D.N.Y. 2011) ............................................................... 7

**Statutes:**                                                                 **Page:**

42 U.S.C. § 1983 ....................................................................... *in passim*

CPLR 3211 ............................................................................... in passim

F.R.C.P. 12(b)(6) ...................................................................... *in passim*

New York Correction Law § 500-c ............................................... 33

New York Estates, Powers and Trusts Law § 5-4.1 ..................... 35

## PRELIMINARY STATEMENT

Defendants, County of Chautauqua, Chautauqua County Sheriff's Office, Chautauqua County Sheriff James B. Quattrone ("Sheriff Quattrone"), Chautauqua County Undersheriff Darryl W. Braley ("Undersheriff Braley), and John Doe(s) being employees of the County of Chautauqua and/or Chautauqua County Sheriff's Office (collectively the "County Defendants"), submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to F.R.C.P. 12(b)(6), CPLR 3211(a)(1), and CPLR 3211(a)(7).

Plaintiff, Christian Powell, initially commenced this action against the County Defendants[1] in Chautauqua County Supreme Court on May 28, 2021. On June 9, 2021, the action was removed to this Court, pursuant to 28 U.S.C. § 1446. *See* Dkt. 1. On December 10, 2020, Plaintiff was arrested, pursuant to a valid arrest warrant, outside of the premises located at 111 Barrett Avenue in Jamestown, New York. The arrest warrant was issued on December 9, 2020 by a Jamestown City Court Judge, the Hon. John L. LaMancuso. Plaintiff was charged with criminal contempt in the first degree due to violating an order of protection.

In what can only be described as belligerent and self-destructive behavior (all of which was recorded on body camera video by the Jamestown Police Department), Plaintiff actively resisted arrest and willfully engaged in acts of self-harm by intentionally striking his head on the ground and against the Jamestown Police Department ("JPD") squad car, despite the arresting officers' best attempts to prevent

_____

[1] Plaintiff also sued the City of Jamestown, City of Jamestown Clerk, Jamestown Police Department, and Jamestown Police Chief Timothy Jackson (collectively "the City Defendants").

him from doing so.  Nonetheless, Plaintiff has the audacity to claim that he was at all times using due care.  *See* ¶ 50; *c.f.*, ¶ 31[2].

The minimal and lawful involvement that Chautauqua County Sheriff's Deputy, Stephen Madonia ("Deputy Madonia"), had with Plaintiff during the course of his arrest belies each and every one of Plaintiff's absurd allegations against the County Defendants.  *See* July 14, 2021 Declaration of Peter L. Veech ("Veech Decl."), ¶¶ 4-17; July 13, 2021 Declaration of Stephen Madonia ("Madonia Decl."), ¶¶ 2-5.  Simply put, Plaintiff did not sustain a constitutional injury on December 10, 2020 at the hands of the County Defendants, nor did the County Defendants breach any legal duty that they owed to Plaintiff during the course of his lawful arrest.  Plaintiff's unfounded and conclusory allegations to the contrary fail to state any plausible claims against the County Defendants.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations of wrongdoing on the part of the County Defendants are pure fantasy.  Nonetheless, they are summarized below for the purposes of argument and discussion only.  Plaintiff's Complaint is based on two distinct incidents: (1) his December 10, 2020 arrest outside of 111 Barrett Avenue; and (2) his post-arrest confinement to the JPD squad car and the JPD's Central Booking Bureau.  *See* ¶¶ 24-46.

Plaintiff alleges that he was assaulted, battered, repeatedly grabbed, kneed, yanked, thrown to the ground, placed in handcuffs that were "extremely tight," and

---

[2] Unless otherwise noted, references to paragraph numbers refer to Plaintiff's Complaint (Dkt. 1-1).

seized without cause or provocation during the December 10, 2020 arrest outside of 111 Barrett Avenue.  *See* ¶ 27.  Plaintiff further alleges that he requested to be sent to an inpatient hospital to be treated for (unidentified) mental health conditions during his arrest, but was not sent to the hospital or otherwise provided with an immediate mental health evaluation (while he was actively resisting arrest).  *See* ¶¶ 28-29.  Plaintiff alleges that the County Defendants knew that he had (unidentified) "mental health / other heath conditions" but fails to allege any facts as to how, when, or who from the County obtained this purported knowledge.  *Id*.

Importantly, Plaintiff concedes that he suddenly and voluntarily hit his head on the ground "multiple times causing injury" during his arrest, but incredulously seeks to hold the County Defendants liable for allowing him to do so.  *See* ¶ 31.  Plaintiff admits that after he stopped resisting, he was stood up and placed in a JPD squad car and transported to the JPD's Central Booking Bureau.  *See* ¶¶ 31-32.  Plaintiff further admits that he voluntarily "hit his head on the glass separating where he and the [JPD] officers were sitting multiple times causing injury" while en route to the JPD's Central Booking Bureau.  *See* ¶¶ 32-33.  The remainder of Plaintiff's allegations concern events that occurred at the JPD's Central Booking Bureau.  *See* ¶¶ 34-45.  The County Defendants had <u>no</u> involvement in the events that occurred within the JPD squad car or the events the occurred at the JPD's Central Booking Bureau.

Plaintiff seeks compensatory damages, punitive damages, costs, interest and attorneys' fees pursuant to 42 U.S.C. § 1983 (hereinafter "§ 1983"), 42 U.S.C. § 1988, and New York State law.  Plaintiff's deceitful and ultimately meritless Complaint includes causes of action for: (1) excessive force under § 1983; (2) deliberate

3

indifference to a pre-trial detainee's medical needs under § 1983; (3) unlawful arrest under § 1983; (4) municipal liability (*Monell* claim) under § 1983; (5) common law assault and battery; (6) common law false arrest and imprisonment; (7) common law intentional infliction of emotional distress; (8) common law negligent infliction of emotional distress; (9) common law negligence and *respondeat superior*; and (10) common law negligent hiring, supervision, retention, and training claim.

It is undisputed that Deputy Madonia was acting within the course and scope of his duties as a law enforcement official when Plaintiff's arrest occurred. *See* ¶¶ 12, 81, 112). It cannot be reasonably disputed that Plaintiff's arrest occurred in the course of Deputy Madonia's lawful exercise of authority, pursuant to a valid arrest warrant. *See* Madonia Decl., Ex. A; Veech Decl., Ex. A. Plaintiff maliciously misrepresents Deputy Madonia's actions to fit his fictitious narrative. At all times, Deputy Madonia acted lawfully and did not violate any of Plaintiff's constitutional rights. Therefore, all of Plaintiff's implausible and meritless claims should be dismissed. At minimum, all of Plaintiffs § 1983 causes of action should be dismissed against the County Defendants.

## STANDARDS OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal under Rule 12(b)(6), "the Plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI*

*Comms, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (internal quotations omitted).

A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* The Court is not obligated to accept as true Plaintiff's legal conclusions unless those conclusions are actually supported by factual allegations. *See id.* As the Supreme Court stated in *Iqbal*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.

*See* 556 U.S. at 678-79 (internal quotations and citations omitted).

Facial plausibility means that the plaintiff has plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Further, dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86-87 (2d Cir.

2000) (emphasis added).    To this end, the Court may take judicial notice of the applicable arrest warrant and arrest report[3], without converting the present motion into one for summary judgment.  *See Williams v. N.Y.C. Hous. Auth.*, 816 Fed.Appx. 532, 534 (2d Cir. 2020); *Johnson v. City of N.Y.*, 2017 WL 2312924, at *2 n.2 (S.D.N.Y. 2017); *Lurch v. City of New York*, 2021 WL 842616, at *4 (S.D.N.Y. 2021).

On a motion to dismiss state law claims pursuant to CPLR 3211(a)(7), the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory.  *See Leon v. Martinez*, 84 NY2d 83, 87 (1994) (emphasis added).    However, "the allegations in the [pleading] cannot be vague and conclusory."  *Stoianoff v. Gahona*, 248 A.D.2d 525, 526 (2d Dept 1998) (cert. denied sub nom. *Stoianoff v. New York Times*, 525 U.S. 953 (1998)).  Dismissal of state law claims is also appropriate under CPLR 3211(a)(1) where the documentary evidence submitted utterly refutes a plaintiff's factual allegations and conclusively establishes a defense to the asserted claims as a matter of law.  *See Leon*, 84 N.Y.2d at 88.

## ARGUMENT

### I.    Plaintiff's Insufficient "Group Pleading" Requires Dismissal.

Under F.R.C.P. 8 and *Twombly*, Plaintiff was required to plead facts sufficient to put each of the County Defendants on notice of the specific claims asserted against them.    However, Plaintiff's "group pleading" allegations, against "defendants" in

---

[3] Attached to the accompanying Declaration of Peter L. Veech as Exhibit A and Exhibit B, respectively.

general, fail to meet this standard. *See e.g., Wright v. Orleans County et al.*, 2015 WL 5316410, at *13 (W.D.N.Y. 2015); *New York v. Mountain Tobacco Co.*, 55 F.Supp.3d 301, 315 (E.D.N.Y. 2014); *Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725, at *5 (E.D.N.Y. 2013); *Zalewski v. T.P. Builders, Inc.*, 2011 WL 3328549, at *5 (N.D.N.Y. 2011) ("[T]he court is highly skeptical of whether plaintiffs have an adequate factual basis to establish each defendant's actual involvement and susceptibility to suit…The court will not accept conclusory allegations, conjecture, or vague group pleading to serve as a basis for liability."); *Martin v. City of New York*, 2008 WL 1826483, at *1 (S.D.N.Y. 2008) ("Rule 8(a) also requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants.") (internal quotations omitted).

Here, the Complaint consistently refers to the County Defendants and the City Defendants collectively as "defendants," and fails to delineate how any of the individually named defendants were involved in either of the complained of incidents. *See* Dkt. 1-1, generally. While Plaintiff generally alleges the County Defendants' conduct was wrongful throughout the Complaint, he fails to specifically and plausibly allege how the alleged conduct of each individually named County Defendant satisfies the elements of his respective claims. This is especially egregious in cases such as this where a 183 paragraph Complaint makes allegations against supervisory officials and individual law enforcement officers from different municipalities and law enforcement and agencies regarding two separate instances of alleged misconduct.

The Court should not accept Plaintiff's conclusory allegations, conjecture, and vague group pleading to serve as a basis for liability for any of his purported causes of action. Rather, all of Plaintiff's causes of action should be dismissed because the Complaint does not sufficiently specify the personal involvement, if any, that the County Defendants had in the alleged tortious conduct and (nonexistent) constitutional injuries.

## II.    Plaintiff's § 1983 *Monell* Claims Against The County Should Be Dismissed.

Plaintiff's second cause of action alleges that the County, and/or Sheriff Quattrone, and/or Undersheriff Braley[4] "had notice of the defendant employees' pattern and practice of using unconstitutionally excessive force in the course of an unlawful arrest…, including but not limited to failing to treat medical conditions and preventing self-harm," and that it was "the policy and custom of [the County, and/or Sheriff Quattrone, and/or Undersheriff Braley] to fail to adequately train and supervise its employees relating to the use of force including but not limited to failing to treat medical conditions and preventing self-harm." *See* ¶¶ 63, 65.

Plaintiff further alleges that it was the policy and custom of the County, and/or Sheriff Quattrone, and/or Undersheriff Braley to overlook, excuse, disregard, and tolerate and encourage unprovoked acts violence, excessive force, unlawful arrest, and failures to treat medical conditions and prevent self-harm, causing Plaintiff to be deprived of his Fourth, Eighth, and Fourteenth Amendment rights. *See* ¶¶ 66-69. Plaintiff alleges (in the alternative) that the aforesaid policy was: (1) a result of the

---

[4] The exact allegations cannot be stated due to Plaintiff's improper group pleading. *See* Point I, above.

County's "failure to train and supervise its police officers in the use of force, and to curb assaults on civilians in the course of unlawful arrests and treat medical conditions and prevent self-harm"; (2) a result of the County's deliberate indifference to past wrongful conduct; and/or (3) "memorialized in specific rules or regulations." *See* ¶¶ 71-76. Plaintiff <u>does not</u> identify any previous incidents or occurrences upon which he summarily relies. *See id*. These conclusory, formulaic recitations of the elements of § 1983 liability are insufficient to state a plausible *Monell* claim against the County.

It is well-established that a municipality "may not be held liable under § 1983 unless the alleged constitutional violation was performed pursuant to a municipal policy or custom." *Shenk v. Cattaraugus County*, 2007 WL 2874427, at *5 (W.D.N.Y. 2007) (citations omitted). The failure of a plaintiff to sufficiently plead that the violation was caused by a municipal policy or custom <u>is fatal and requires dismissal</u>. *See Missel v. County of Monroe*, 2009 WL 3617787, at *1 (2d Cir. 2009) (emphasis added) (affirming dismissal of *Monell* claim because allegations that the deputy "acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."); *Hardy v. Erie County*, 2012 WL 1835624, at *3-4 (W.D.N.Y. 2012).

The Second Circuit has consistently held "[t]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Cotto v. City of New York*, 803 F.Appx. 500, 503 (2d Cir. 2020) (*citing Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

Further, the Second Circuit has consistently held that "[i]solated acts of excessive force by non-policymaking municipal employees are generally <u>not sufficient</u> to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Id.* (emphasis added) (*citing Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Therefore, a plaintiff cannot plausibly plead a municipal policy based solely on the events involving him because a single incident is insufficient to suggest a custom or policy. *Pierce v. Ottoway*, 2009 WL 749862, at *5 (W.D.N.Y. 2009).

Here, Plaintiff fails to plausibly allege a constitutional deprivation in the first place, let alone the existence of an official County policy that caused a constitutional injury. Plaintiff fails to present any factual allegations to support the inference that the County, and/or Sheriff Quattrone, and/or Undersheriff Braley permitted Chautauqua County Sheriff's Office law enforcement officials to engage in widespread acts of false arrest, assault, excessive force, or failure to provide adequate medical care and treatment. *See* ¶¶ 61-78.

Plaintiff cannot establish a custom or policy under *Monell* by relying solely upon the alleged excessive force exhibited during his December 10, 2020 arrest. "*Monell* liability, by its nature, will often turn on evidence concerning victims <u>other than the plaintiffs</u> and alleged misfeasors other than the individual defendants." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018) (emphasis added). Indeed, a "single incident is insufficient to raise an inference of the existence of a custom, policy, or practice, as is a mere recitation of a failure to train municipal employees." *Thomas v. City of New York*, 2015 WL 9412543, at *2 (E.D.N.Y. 2015); *see also*, *Worrell v. City of New York*, 2014 WL 1224257, at *12 (E.D.N.Y. 2014). That is the exact case here.

The Complaint, liberally construed, merely identifies a single incident of alleged misconduct. *See* ¶¶ 24-41. This is patently insufficient to state a *Monell* claim. *See Plair v. City of New York*, 789 F.Supp.2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage.") (internal citations and quotations omitted). Accordingly, Plaintiff's *Monell* claim should be dismissed against the County Defendants.

### III. Plaintiff's § 1983 Supervisory Liability Claims Against Sheriff Quattrone And Undersheriff Braley Should Be Dismissed.

To the extent that Plaintiff seeks to impose § 1983 supervisory liability upon Sheriff Quattrone and Undersheriff Braley, his allegations are a mere regurgitation of underlined overturned caselaw which fail to plausibly allege personal involvement under § 1983. *See* ¶¶ 52, 63-71, 76.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). Neither Sheriff Quattrone nor Undersheriff Braley were involved in Plaintiff's underlying arrest. *See* Madonia Decl., Ex. A. Therefore, Plaintiff fails to plausibly allege their personal involvement in any constitutional injury.

Until recently, a plaintiff could establish the personal involvement of a supervisory official for a subordinate's conduct under § 1983 by showing: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional

11

practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of the plaintiffs by failing to act on information indicating that unconstitutional acts were occurring. *Id*. at 873.

However, *Colon*'s "special test" for § 1983 supervisory liability is now <u>invalid</u>. *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). In *Tangreti*, the plaintiff brought § 1983 claims against eight prison supervisors alleging deliberate indifference to the substantial risk of sexual abuse by their subordinates. *See id*. at 612. The district court granted summary judgment to seven of the eight defendants, but, relying on *Colon*, concluded that there was a genuine issue of material fact as to whether the final supervisory defendant was "conceivably personally involved" in violating the plaintiff's Eighth Amendment rights because she may have been grossly negligent in her supervision of subordinates, or may have failed to act on information indicating that the plaintiff was at a substantial risk of sexual abuse. *See id*. at 615-616.

On appeal, the Second Circuit explained that, following *Iqbal*, "courts <u>may not</u> apply a special rule for supervisory liability." *Id*. (emphasis added). Rather, a § 1983 plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See id*. (quoting *Iqbal*, 556 U.S. at 676). "Simply put, there's no special rule of [§ 1983] liability for supervisors. The test for them is the same as the test for everyone else." *Id*. at 619 (quoting *Porro v Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)).

"The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id*. at 618 (quoting *Iqbal*, 556 U.S. at 676).  The alleged constitutional violation "must be established against the supervisory official directly."  *Id*.

Plaintiff's conclusory allegations against Sheriff Quattrone and Undersheriff Braley fail to clear this bar.  *See* ¶¶ 52, 63-71, 76.  As such, any purported § 1983 supervisory liability claims against them should be dismissed.

### IV.    Plaintiff's § 1983 And State Law Unlawful Arrest Claims Should Be Dismissed Against The County Defendants.

The Complaint repeatedly asserts that Plaintiff was "unlawfully arrested," and that he was "seized without cause or provocation."  *See* Dkt. 1-1, generally.  This is demonstrably false, as Plaintiff's arrest was based upon a valid warrant.  *See* Veech Decl., Ex. A.  Therefore, Plaintiff's thirteenth cause of action[5] should be dismissed. Likewise, to the extent that Plaintiff's first cause of action alleges a false arrest / imprisonment claim under New York State law, that claim is also precluded. (¶ 52).

The existence of an arrest warrant establishes a presumption that the arresting officers had probable cause to effectuate the arrest (*i.e.*, there was privileged confinement).  *See Gleis v. Buehler*, 374 Fed.Appx. 218, 220 (2d Cir. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)); *see also*, *Jones v. Trump*, 971 F.Supp. 783, 788 (S.D.N.Y. 1997) (aff'd 1998 WL 1967891 (2d Cir. 1998)) ("Where an arrest is made pursuant to a warrant, there can be no claim for false arrest."); *Galarza v. N.Y.C. Police Dep't, No. 18-2715*, 2019 WL 4409695 (2d Cir. 2019) ("Under New

---

[5] Denominated as his second eleventh cause of action.  *See* ¶¶ 160-168.

York Law, '[a]n arrest warrant validly issued by a court having jurisdiction precludes an action for false arrest against the municipality and the police officer involved with its execution.'") (quoting *St. John v. Marlborough*, 163 A.D.2d 761, 762 (3d Dept 1990)).

New York law considers a claim for false arrest as "a species of false imprisonment, and the two claims have identical elements." *Solomon v. City of Rochester*, 449 F.Supp.3d 104, 113-14 (W.D.N.Y. 2020). Accordingly, to succeed on a common law claim for false arrest and imprisonment, a plaintiff "must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement <u>was not otherwise privileged</u>." *Tisdale v. Hartley*, 442 F. Supp. 3d 569, 573 (W.D.N.Y. 2020) (citation omitted).

Here, there can be no dispute that Plaintiff's December 10, 2020 arrest and confinement was privileged, as it was made pursuant to a valid warrant. *See* Veech Aff., Ex. A. Thus, Plaintiff's unlawful arrest claims should be dismissed.

## V.    Plaintiff's § 1983 Excessive Force Claim Should Be Dismissed Against The County Defendants.

Plaintiff's first cause of action alleges that "defendants used excessive force because they gratuitously inflicted pain on plaintiff in a manner that was not reasonable in response to the circumstances [and] violate[d] plaintiff's right to be free from excessive force amounting to punishment." *See* ¶ 52. Plaintiff's second cause of action further alleges that the "excessive force used by defendants constituted cruel and unusual punishment… [and] was not applied in a good faith effort to maintain or restore discipline and was maliciously and sadistically applied to cause harm to the

14

plaintiff…[and] violated plaintiff's Fourth Amendment right to be free from unreasonable and excessive force."  *See* ¶¶ 72-73.

Plaintiff summarily alleges that he was assaulted, battered, repeatedly grabbed, kneed, yanked by the arms, thrown to the ground, and placed in "extremely tight" handcuffs during the course of his arrest.  *See* ¶ 27.  However, Plaintiff fails to state with any specificity how he was battered, grabbed, kneed, yanked, or thrown to the ground during the course of his arrest, or when such acts occurred during the course of the arrest so as to rise to the level of excessive force.  *See* Dkt. 1-1, generally.  Plaintiff also fails to specify which of the named defendants committed these alleged acts during the course of his arrest.  *Id*.  Further, Plaintiff does not allege that Sheriff Quattrone or Undersheriff Braley used any force against him.  *See* ¶ 73.  Therefore, any claims of excessive force against them should be dismissed.  *See Johnson v. City of New York*, 940 F.Supp. 631, 637 (S.D.N.Y. 1996).

Even when accepting Plaintiff's conclusory allegations as true, they fail to state a plausible claim of excessive force.  Claims of excessive force arising out of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *See Graham v. Connor*, 490 U.S. 386, 392 (1989).  Objective reasonableness must be evaluated in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396.  "'Not every push and shove, even if it may later seem unnecessary in the peace of a judge's chambers,'" violates the Fourth Amendment.  *Id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (internal citation omitted).

15

Here, while Plaintiff was actively resisting a lawful arrest, minimal and reasonable force was used to restrain him and take him into custody. *See* Madonia Decl., Ex. A. Plaintiff befuddlingly seeks to utilize his intentional acts of self-harm as a sword to initiate a frivolous lawsuit against the County Defendants and as a shield to fend off a prompt motion to dismiss. *See* ¶¶ 31,152. Somehow, Plaintiff expects the police to not touch him at all during the course of a lawful arrest, but, at the same time, completely immobilize him in order to prevent him from engaging in self-harm. Plaintiff's allegations in this regard are vexing and nonsensical.

Therefore, Plaintiff's § 1983 excessive force claim should be dismissed against the County Defendants because the minimal force used on Plaintiff by Deputy Madonia was objectively reasonable under the circumstances and Plaintiff fails to plausibly allege otherwise.

### VI.    Plaintiff's § 1983 Deliberate Indifference To Medical Needs Claim Should Be Dismissed Against The County Defendants.

Plaintiff's fourteenth cause of action[6] alleges that "defendants, through their employees… failed to address the plaintiff's serious medical and mental health needs… [and] failed in their duty to protect plaintiff from… self-inflicted harm…" *See* ¶¶ 172-173. Plaintiff's claims fail for several reasons.

First, none of the County Defendants had any involvement with Plaintiff after he was placed in the JPD squad car to be transported to the JPD's Central Booking Bureau. *See* Madonia Decl., Ex. A. To the extent that Plaintiff's fourteenth cause of action seeks to hold the County Defendants liable for any purported deliberate

---

[6] Denominated as his twelfth cause of action. *See* ¶¶ 169-177.

indifference to medical needs while he was in the custody of the City Defendants in the JPD squad car and the JPD's Central Booking Bureau (¶¶ 43-46), those claims should be dismissed due to the absence of any personal involvement on the part of the County Defendants. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Indeed, the County Defendants had absolutely no duty to provide medical care, a psychological or mental health evaluation, or to protect Plaintiff from engaging in acts of self-harm while he was not within their custody or control. Plaintiff fails to plead any plausible facts indicating otherwise. *See* ¶¶ 32-46.

Second, in response to Plaintiff's sudden, unforeseen, and belligerent behavior during the course of his arrest, EMS was summoned to the JPD's Central Booking Bureau to examine Plaintiff's self-inflicted injuries. *See* Madonia Decl., Ex. A. This is not deliberate indifference. *See Bell v. Arnone*, 455 F.Supp.2d 232, 233-235 (W.D.N.Y. 2006). Deputy Madonia satisfied any duty he had in this regard by advising emergency medical personnel to examine the Plaintiff at the JPD's Central Booking Bureau. *See* Madonia Decl., Ex. A.

Moreover, claims sounding in deliberate indifference to a pre-trial detainee's medical needs require a two-step inquiry. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). First, the plaintiff must satisfy the "objective prong" by showing a sufficiently serious need. *Id*. "An assertion of pain sensation alone, unaccompanied by any larger medical complications, does not amount to a serious medical need." *Moran v. Livingston*, 155 F.Supp.3d 278, 288 (W.D.N.Y. 2016). Second, the plaintiff must meet the "subjective prong" which requires the officer to have acted with "deliberate indifference" to the challenged condition. *Darnell*, 849 F.3d at 29. A

17

plaintiff can prove deliberate indifference by showing that the defendant official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety." *Id.*, at 35.

Here, Plaintiff's allegations fail on both fronts. Plaintiff alleges that "[the County Defendants] failed to protect plaintiff from health problems, self-inflicted harm, "and other risks of harm that were reasonably foreseeable to defendants, i.e., those that they knew about or should have known about." *See* ¶¶ 172-173. Plaintiff <u>does not</u> allege how the failure to provide him with immediate mental health treatment (while he was actively resisting arrest) exacerbated his self-inflicted wounds or otherwise caused further injury. *Id*.

In fact, the Complaint fails to describe what, if any, injury Plaintiff suffered, what treatment he was prescribed for such injury, and how the County Defendants' alleged failure to provide immediate mental health treatment resulted in such injury. Plaintiff fails to allege with any particularity how his purported condition was "sufficiently serious" under the Fourteenth Amendment to warrant immediate mental health treatment, or how his injuries were caused or contributed to by the alleged delay in mental health treatment.

Moreover, Plaintiff fails to plausibly allege that any of the County Defendants acted with the requisite culpability to satisfy the subjective prong of the *Darnell* analysis. Plaintiff's conclusory allegation that "the willful and wanton conduct of defendants, their agents, servants and employees, reflect a reckless and careless

18

disregard and incidence for the rights of the plaintiff to receive proper and adequate medical evaluation and attention" is woefully insufficient.  *See* ¶ 175.  Plaintiff fails to particularize his allegations so as to allow the County Defendants to understand what "medical and mental health needs" (*see* ¶172) they allegedly failed to treat during the course of Plaintiff's arrest, let alone how such medical conditions were sufficiently serious" so as to support a deliberate indifference to medical needs claim.

In any event, deliberate indifference is lacking where officers take affirmative and reasonable steps to protect pre-trial detainees from self-harm.  *See Kelsey v. City of New York*, 306 Fed.Appx. 700, 703 (2d Cir. 2009).  Here, Deputy Madonia took reasonable steps to prevent Plaintiff from engaging in further acts of self-harm during his arrest by assisting the JPD in bringing him into custody and instructing EMS to respond and treat Plaintiff at the JPD's Central Booking Bureau.  Therefore, even when accepting Plaintiff's allegations as true, he fails to plausibly allege a claim for deliberate indifference to medical needs under § 1983 against the County Defendants.

## VII.    Plaintiff's § 1983 Conspiracy Claim Should Be Dismissed Against The County Defendants.

Plaintiff's fifteenth cause of action[7] alleges that "defendants… having conspired together and with others… agreed and acted with others to bear, threaten, use excessive force intimidate and terrorize plaintiff, and to deny him with medical care and failure to protect plaintiff from self-harm [and]… agreed and acted with others to punch the plaintiff for exercising his constitutionally protected rights."  *See* ¶ 179.

---

[7] Denominated as Plaintiff's first thirteenth cause of action. (¶¶ 178-181).

19

However, the Complaint is devoid of any plausible factual allegations which support this outlandish and conclusory assertion.

To state a § 1983 conspiracy claim, "a plaintiff must allege: (1) an agreement between two or more actors (at least one a state actor); (2) to act in concert to cause an unconstitutional injury; and (3) an overt act done in furtherance of that agreement, causing damages."  *Ocasio v. City of Canandaigua*, 2021 WL 115509, at *6 (W.D.N.Y. 2021) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). "In setting forth the claim, a plaintiff must make an "effort to provide some details of time and place and the alleged effects of the conspiracy..."  *Id.* (quoting *Ivery v. Baldauf*, 284 F.Supp.3d 426, 439 (W.D.N.Y. 2018)).  Vague, conclusory and general allegations of a conspiracy, such as the allegations at bar, are insufficient to state a claim under § 1983. *See Ciambriello* 292 F.3d at 324.

As stated above, Plaintiff has not plausibly established the violation of a constitutional right by the County Defendants.  Without an underlying constitutional violation, Plaintiff's § 1983 conspiracy claim obviously fails.  Furthermore, the Complaint contains only vague and conclusory allegations of a § 1983 conspiracy and offers no specific explanation as to how the County Defendants conspired or acted together to deprive Plaintiff of any purported right.  *See* ¶¶ 179-180.  Plaintiff merely echoes the elements of a § 1983 conspiracy.  *Id.*  This fails to state a plausible claim. *See Christian v. Town of Riga*, 649 F. Supp. 2d 84, 100 (W.D.N.Y. 2009) ("They do not offer sufficient factual details regarding an agreement among defendants to violate the civil rights of plaintiff, or anyone else.  Rather, they constitute the type of "vague,

conclusory, and general" allegations that, standing alone, are routinely found lacking under the Rule 12(b)(6) standard.").

Plaintiff fails to allege how, when, or which of the County Defendants entered into such a conspiratorial agreement.  *See* ¶¶ 178-181.  Plaintiff fails to specifically allege any communication, meeting of the minds, or cooperative effort which took place (prior to or during Plaintiff's arrest) between the County Defendants or any other defendant.  *Id*.  Plaintiff does not allege the specific acts (or identities) of any co-conspirators or what agreement was allegedly made.  *Id*.  Consequently, Plaintiff's § conspiracy claim is patently deficient and should be dismissed against the County Defendants.

### VIII.   Plaintiff's § 1983 Failure To Intervene Claim Should Be Dismissed Against The County Defendants.

Plaintiff's Twelfth cause of action[8] alleges that during his arrest "defendants assumed a duty to protect plaintiff from the striking, battering and assault by the defendants and their failure to provide plaintiff with medical treatment and to protect him from self-harm," and that "said defendants did not take any steps to protect the plaintiff from assault, in fact such individuals stood idly by and watched as plaintiff was repeatedly struck… [and] also did not take any steps to prevent plaintiff from defendants failure to provide plaintiff with medical treatment and to protect him from self-harm."  *See* ¶¶ 153-155.  However, Plaintiff fails to differentiate which defendants committed the alleged acts and which "stood idly by."  *Id*.  This failure is fatal under *Iqbal*.

---

[8] Denominated as his first eleventh cause of action.  *See* ¶¶ 149-159.

Moreover, this baseless claim should be dismissed against the County Defendants because Plaintiff has failed to plausibly allege a constitutional injury in the first place. *See Matthews v. City of New York*, 889 F.Supp.2d 418, 443–44 (E.D.N.Y. 2012) ("the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim").

### IX.    The County Defendants Are Entitled To Qualified Immunity.

"Qualified immunity shields government officials whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials may establish their entitlement to qualified immunity by showing that "their conduct did not violate clearly established rights of which a reasonable person would have known," or that "it was objectively reasonable to believe that their acts did not violate these clearly established rights." *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (emphasis added) (citation and internal quotation marks omitted).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citations omitted). The facts of this case satisfy all three inquiries.

On December 10, 2020, Plaintiff did not have a constitutional right to an immediate pause of a lawful arrest in order to be sent to a hospital for psychological

22

treatment or the performance of a field psychological evaluation by the arresting officers.  If he did, this would be the proverbial "olly olly oxen free" which would be routinely abused by arrestees during the course of a lawful arrest.

It is respectfully submitted that no decision by the Second Circuit Court of Appeals has held that the actions complained of (*i.e.*, failing to prevent an arrestee from suddenly and unexcitingly injuring himself while he is actively resisting arrest or failing to obtain immediate mental health treatment while the arrestee is actively resisting a lawful arrest) constitutes deliberate indifference to serious medical needs under the Fourteenth Amendment.

Further, Deputy Madonia is entitled to qualified immunity from Plaintiff's § 1983 failure to intervene claim because "an officer is entitled to qualified immunity unless his failure to intercede was under 'circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate [the plaintiff's] rights.'" *Holland v. City of New York*, 197 F.Supp.3d 529, 549 (S.D.N.Y. 2016) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). Deputy Madonia merely came to the aid of the JPD officers whom Plaintiff was actively resisting, and the force used by Deputy Madonia during the course of Plaintiff's arrest was objectively reasonable.  Accordingly, the individual County Defendants are entitled to qualified immunity dismissing all of Plaintiff's § 1983 claims.

## X. Plaintiff's Remaining State Law Claims Should Be Dismissed Against The County Defendants.

In addition to the foregoing, Plaintiff's pendant state law claims sounding in negligence, vicarious liability, negligent hiring, negligent retention, negligent training and supervision, assault, battery, battery in performance of public duty, intentional

infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") should be dismissed under CPLR 3211(a)(1), and 3211(a)(7).

### A.    Plaintiff's Negligence and Vicarious Liability Claims Should Be Dismissed.

Despite Plaintiff's inartful pleadings, the documentary evidence produced by the County Defendants makes it clear that Plaintiff's arrest was privileged, and that the amount of forced used by Deputy Madonia during the course of the arrest was objectively reasonable under the circumstances.  *See* Madonia Decl., Ex. A.

Following Plaintiff's arrest, he was remanded to the sole custody of the JPD. The County Defendants owed Plaintiff no duty of care once he was in JPD custody. Even assuming that Deputy Madonia affirmatively undertook a duty of care to Plaintiff during the course of the arrest (he did not), that duty was satisfied when Deputy Madonia advised EMS to examine Plaintiff at the JPD's Central Booking Bureau.  *See* Madonia Decl., Ex. A.  Simply put, there can be no vicarious liability on the part of the County because Deputy Madonia was not negligent during the course of Plaintiff's lawful arrest.

Therefore, Plaintiff's negligence and vicarious liability claims should be dismissed against the County Defendants pursuant to CPLR 3211(a)(1) because the documentary evidence submitted by the County Defendants utterly refutes Plaintiff's unfounded allegations and conclusively establishes a defense as a matter of law.  *See Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 326 (2002).  Similarly, Plaintiff's negligence and vicarious liability claims should be dismissed against the County Defendants pursuant to CPLR 3211(a)(7) because his Complaint is vague and conclusory and fails to identify which purported acts / omission are attributable to the

various County Defendants as opposed to the City Defendants.   As such, the Complaint fails to satisfy the relaxed notice pleading standard under CPLR § 3013.

### B.    Plaintiff's Negligent Hiring, Training, Supervision, and Retention Claims Should Be Dismissed.

Plaintiff's fist cause of action alleges that the County is liable for hiring employees it knew or should have known to be "incompetent, inexperienced, and with violent propensities and inability to properly treat medical conditions and prevent self-harm."  *See* ¶ 52.

Plaintiff's fourth cause of action alleges that the County, Sheriff Quattrone, and/or Undersheriff Braley[9] breached a duty to take reasonable steps to ascertain "whether or not the defendant officers… did not have a propensity towards violence, or overreaction to situations they were likely to encounter or administer, including but not limited to their inability to treat medical conditions and preventing self-harm, or well-known standardized tests to ascertain the defendant employees personalities." *See* ¶ 90.

Plaintiff's fifth cause of action alleges that the County, Sheriff Quattrone, and/or Undersheriff Braley[10] breached a duty to discharge or otherwise discipline (unnamed) law enforcement officials "when the incompetency, temperament and propensity for violence of the defendant officer, including but not limited to their inability to provide plaintiff with medical treatment and to protect him from self-harm, was known or should have been known to the defendants."  *See* ¶ 98.

---

[9]  The exact allegations cannot be stated due to Plaintiff's improper group pleading.
[10] Same.

25

Plaintiff's sixth cause of action alleges that the County, Sheriff Quattrone, and/or Undersheriff Braley[11] breached a duty to "ensure the competence of their employees" and otherwise failed to take reasonable steps to "ascertain whether or not the defendant employees were emotionally capable of performing [their] duties and did not have a propensity for violence, and [were] able to treat medical conditions and prevent self-harm…" *See* ¶¶ 102-104.

Plaintiff fails to point out any specific deficiencies in the training provided or otherwise allege any plausible facts or previous examples of similar misconduct to support these threadbare allegations.  Accordingly, Plaintiff's state law claims against the County, Sheriff Quattrone, and/or Undersheriff Braley that are premised on negligent hiring, training, supervision, and retention should be dismissed for two main reasons.

First, it is well settled that a state law claim for negligent hiring, training, or supervision can only proceed if the employee was acting outside the scope of his/her employment.  *See e.g., Mustafa v. Povero*, 2017 WL 4169339, at *7 (W.D.N.Y. 2019); *Newton v City of New York*, 681 F.Supp.2d 473, 488, 494-95 (S.D.N.Y. 2010) (citations and internal quotation marks omitted); *Ashely v. City of New York*, 7 A.D.3d 742, 743 (2d Dept 2004).

Here, the Complaint concedes this very issue and acknowledges that Deputy Madonia was acting within the scope of his employment during the course of Plaintiff's arrest.  *See* ¶¶ 12, 81, 112[12].  Plaintiff's allegations against the County Defendants

---

[11]  Same.
[12]  Plaintiff's concession likewise mandates the dismissal of his individual capacity §1983 claims against the named County Defendants.

26

are based on solely on Deputy Madonia's alleged conduct as a law enforcement official during the course of a lawful arrest.  There is no allegation that Deputy Madonia's actions were based entirely on personal motivations unrelated to the scope of his duties as a law enforcement officer.  *See* Dkt. 1-1, generally.

Second, Plaintiff has not alleged any facts showing that the County, and/or Sheriff Quattrone, and/or Undersheriff Braley had any reason to know that Deputy Madonia "had a propensity for the conduct which caused his injury."  *See Perrone v. Monroe Cnty. Sheriff Patrick O'Flynn*, 2015 WL 7776930, at *8 (W.D.N.Y. 2015).

Plaintiff's conclusory allegations to the contrary fail to sufficiently allege requisite actual or constructive knowledge of Deputy Madonia's (nonexistent) propensities, such that they fail to state a claim under the more lenient CPLR 3211(a)(7) standard of review.  *See Shu Yuan Huang v. St. John's Evangelical Lutheran Church*, 129 A.D.3d 1053, 1054 (2d Dept 2015); *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dept 2004).  As such, Plaintiff's negligent hiring, training, supervision and retention claims Should be dismissed.

### C.    Plaintiff's Assault And Battery Claims Should Be Dismissed.

Plaintiff's seventh cause of action (common law assault) alleges that during the course of his arrest "the defendant officers intentionally made physical contact with the plaintiff… [and] intended to cause the plaintiff apprehension that harmful, injurious and offensive bodily contact would occur… [and] that [defendants' conduct] did in fact cause the plaintiff apprehension that harmful, injurious, and offensive bodily contact would occur."  *See* ¶¶ 108-111.  Plaintiff further alleges that the (unspecified) County

Defendants' conduct occurred while "the defendant officers [were] acting in the scope of their authority as employees of defendants… without just cause." *See* ¶¶ 112-113.

Plaintiff's eighth cause of action (battery) alleges that during the course of his arrest, the County's employees intended, and, did in fact, subject the plaintiff to harmful, injurious, and offensive bodily contact "without just cause." *See* ¶¶ 117-120. Again, this is demonstrably false. Plaintiff's ninth cause of action (battery in the performance of a public duty) is not a separately recognized cause of action and should be dismissed outright as duplicative of his first and eighth causes of action. *See* ¶¶ 125-133.

The standards for assessing a state law assault and battery claim are "substantially identical" to those for a § 1983 excessive force claim. *See Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991). Under New York Law, if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest. *See Boyler v. City of Lackawanna*, 287 F.Supp.3d 308, 325-326 (W.D.N.Y. 2018) (quotations and citation omitted). However, "[a] lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Id*. (citing *Figueroa v. Mazza*, 825 F.3d 89, 105 n.13 (2d Cir. 2016)); *Cunningham v. United States*, 472 F.Supp.2d 366, 381 (E.D.N.Y. 2007). This is exactly the case here.

Plaintiff's arrest occurred in the course of Deputy Madonia's lawful exercise of authority and force. While Plaintiff mischaracterizes the County Defendants' actions to fit his fictitious (and ultimately frivolous) narrative, Deputy Madonia acted lawfully and did not violate Plaintiff's constitutional rights or any duty of care owed to Plaintiff.

### D.    Plaintiff's IIED and NIED Claims Should Be Dismissed.

Plaintiff's tenth cause of action (IIED) alleges that "defendant employees while employed and acting in their individual and official capacity, institutionally made physical contact with the plaintiff, beating him, and causing serious injuries," that "defendants intended to cause such severe emotional distress," that "defendants acted recklessly and with utter disregard to the consequences of their actions," and that there was no justification or reason for defendants' conduct, causing plaintiff to sustain emotional injury and distress. *See* ¶¶ 135-140. Again, Plaintiff fails to specify which acts are attributable to which named defendants. *Id*.

Plaintiff's eleventh[13] cause of action (NIED) is nearly identical to his tenth cause of action and alleges that during his arrest the "defendant employees while employed and acting in their individual and official capacity, institutionally made physical contact with the plaintiff, beating him, and causing serious injuries," and that the conduct of defendants was not otherwise just, authorized, or privileged, causing Plaintiff to fear for his personal safety and sustain emotional injury and distress. S*ee* ¶¶ 142-148.

Both causes of action should be dismissed because they are duplicative and meritless. Under "New York law, a person may not bring claims for intentional infliction of emotional distress or negligent infliction of emotional distress where, as here, there are more traditional theories of tort liability available." *Hays v. City of New York*, 2017 WL 782496, at *5 (S.D.N.Y. 2017). Therefore, Plaintiff's IIED and NIED claims must be dismissed because they implicate more traditional theories (false arrest, excessive force, civil rights violations, etc.).

---

[13] Denominated as Plaintiff's second tenth cause of action. *See* ¶¶ 141-148.

Further, the conduct alleged by Plaintiff (Deputy Madonia briefly assisting JPD officers in subduing an individual who is actively resisting arrest pursuant to a lawful warrant) is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (internal quotation marks omitted).

This was a garden variety arrest. Deputy Madonia's alleged acts <u>do not</u> rise to the level of outrageous and extreme conduct. *See Sorrell v. Cnty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016) (arrest after traffic stop was not extreme and outrageous).

Similarly, a cause of action to recover damages for NIED, "generally must be premised upon the breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Santana v. Leith*, 117 A.D.3d 711, 712 (2d Dept 2014). As set forth above, none of the County Defendants breach any duty owed to Plaintiff. Therefore, Plaintiff's NIED claim should be dismissed.

## XI.    Plaintiff's Cause Of Action Seeking Punitive Damages Against The County Defendants Should Be Dismissed.

Plaintiff cannot collect punitive damages as against the County. In *City of Newport v. Fact Concerts, Inc.*, the United States Supreme Court held that a municipality is immune from punitive damages in a claim brought under § 1983. *See* 453 U.S. 247, 263-271 (1981). Further, In *Dininny v. Trentanelli*, this Court recognized that under *City of Newport*, "punitive damages would not be available from the municipality." *See* 2010 WL 5343180, at *10 (W.D.N.Y. 2010).

30

Similarly, because Deputy Madonia's conduct during the course of Plaintiff's arrest did not even rise to the level of negligence, Plaintiff is precluded from recovering punitive damages against him in his individual capacity. Indeed, Plaintiff fails to allege that any of the individually named County Defendants acted outside of the scope of their employment or based solely on personal animus towards him so as to support an individual capacity claim in the first place.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying July 14, 2021 Declaration of Peter L. Veech (with Exhibits A-B), and the July 13, 2021 Declaration of Stephen Madonia (with Exhibit A), the Court should dismiss Plaintiff's Complaint against the County Defendants, in its entirety and with prejudice, pursuant to F.R.C.P. 12(b)(6), CPLR 3211(a)(1), and 3211(a)(7), together with such other and further relied that the Court deems to be necessary, just, and proper.

Dated: July 14, 2021

WEBSTER SZANYI LLP
Attorneys for Defendants,
*County of Chautauqua, Chautauqua County Sherriff's Office, Chautauqua County Sheriff James B. Quattrone, Chautauqua County Undersheriff Darryl W. Braley, and John Doe(s) being employees of the County of Chautauqua and/or Chautauqua County Sheriff's Office*

By:   *s/Peter L. Veech*
        Michael P. McClaren
        Peter L. Veech
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
mmcclaren@websterszanyi.com
pveech@websterszanyi.com

31