UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTIAN POWELL,
          Plaintiff,

v.                                                 Civil Action No.: 1:21-CV-00721

CITY OF JAMESTOWN,
CITY OF JAMESTOWN CLERK,
JAMESTOWN POLICE DEPARTMENT,
JAMESTOWN POLICE CHIEF TIMOTHY
JACKSON,
COUNTY OF CHAUTAUQUA,
CHAUTAUQUA COUNTY SHERRIFF'S OFFICE,
CHAUTAUQUA COUNTY SHERRIFF JAMES B. QUATTRONE,
CHAUTAUQUA COUNTY UNDERSHERRIFF
DARRYL W. BRALEY,
JOHN DOES 1-10, said names being fictitious but
intended to be any other individual/officers involved
in the within incident and employees of the
CITY OF JAMESTOWN and/or JAMESTOWN POLICE
DEPARTMENT in their individual and official
capacities, and
JOHN DOES 1-10, said names being fictitious
but intended to be any other individual/officers involved
in the within incident and employees of the
COUNTY OF CHAUTAUQUA and/or
CHAUTAUQUA COUNTY SHERRIFF'S OFFICE in
their individual and official capacities,

                                Defendants.

## DECLARATION OF ELLIOT S. RAIMONDO

I, Elliot S. Raimondo, make this declaration under the penalties of perjury pursuant to 28 U.S.C. §1746.

1. I am an attorney at law duly licensed to practice in the State of New York and in this Court and am the Corporation Counsel for the City of Jamestown, attorney for City of Jamestown, City of Jamestown Clerk, Jamestown Police Department, Jamestown Police Chief

1

Timothy Jackson, and John Does 1-10 employees of the City of Jamestown and/or Jamestown Police Department (hereinafter referred to collectively as "City Defendants").

2. I submit this declaration in support of the Jamestown Defendants' Motion to Dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to F.R.C.P. 12(b)(6).

3. Attached as Exhibit A is a true and accurate copy of the appliable warrant issued by Jamestown City Court Judge Hon. John L. LaMancuso on December 9, 2020 for the arrest of Christian T. Powell.

4. Attached hereto as Exhibit B is a true and accurate copy of the Declaration of Police Officer Carter Obergfell concerning the arrest of the Plaintiff on December 10, 2020, with supporting documentation.

5. Attached hereto as Exhibit C is a true and accurate copy of the Declaration of Police Officer Kevin Wise concerning the arrest of the Plaintiff on December 10, 2020, with supporting documentation.

6. Attached hereto as Exhibit D is a true and accurate copy of the Declaration of Police Officer Mark Conklin, who was the jailer on duty when Plaintiff was arrested on the night of December 10, 2020, with supporting documentation.

7. Attached hereto as Exhibit E is a true and accurate copy of the Declaration of Police Officer John Conti who was the jailer on duty after the arraignment of Plaintiff on December 10, 2020, with supporting documentation.

8. Attached hereto as Exhibit F is Jamestown Fire Department Report dated December 10, 2020, 6:23 am regarding evaluation and transport of Plaintiff.

9. Attached hereto as Exhibit G is Jamestown Fire Report dated December 10, 2020, 10:51am regarding evaluation and transfer of Plaintiff.

10. On December 10, 2020, Chautauqua County Sheriff's Deputy, Stephen Madonia responded to a call from the Plaintiff regarding an unrelated civil matter. While responding to 111 Barrett Avenue, Deputy Madonia realized there was an active warrant for the arrest of the Plaintiff and advised the Jamestown Police Department of Plaintiff's location. Obergfell and Wise Decl., Ex. A.

11. In response to Deputy Madonia's information, Jamestown Police Officers Obergfell and Wise responded to the location at approximately 2:53 am and advised Plaintiff he was under arrest. *Id.*

12. In response, Plaintiff began actively resisting, pulling away from Officers. Plaintiff, still actively resisting, was taken to the ground by Jamestown Police Officers, assisted by Deputy Madonia. Plaintiff continued actively resisting, laying on his hands and repeatedly, intentionally, smashing his head in the gravel driveway, as well as Deputy Madonia's flashlight, which had fallen lose during the struggle. After the Officers were able to secure Plaintiff's hands and restrain him with handcuffs, Plaintiff continued to actively resist while being led to, placed in and secured in the JPD squad car, kicking and screaming at officers and kicking the JPD vehicle, inside and out. *Id.*

13. Plaintiff was transported to Jamestown Police Department. When Plaintiff was taken out of the squad car, he smashed his head against the back of the squad car, leaving a dent. *Id.*

14. Plaintiff was taken to the booking area, where he continued banging his head off walls. 00At approximately 3:32 am Allstar EMS responded to the booking area, having been contacted by Officer Obergfell of Plaintiff's injuries prior to leaving 111 Barrett Avenue. Plaintiff refused to be treated by EMS responders, who indicated the injuries did not require stitches and left due to Plaintiff's refusal of treatment. *Id* and Conklin Decl., Exhibit A.

3

15. During transport to JPD and while in the booking area, Plaintiff stated he wanted to die. Officers completed mental health evaluation paperwork and supervised him accordingly. *Id.*

16. At approximately 6:25 am, Plaintiff was on the booking area bench and intentionally hit his head against the concrete wall. Officer Conklin, the jailer, called EMS to evaluate Plaintiff. Jamestown Fire Department EMS responded and determined Plaintiff should be transported to UPMC as he was showing signs of possible concussion, for swelling on the right side of his face as well as mental health concerns. Falconer Fire Department personnel transported Plaintiff to UPMC, and Plaintiff was ultimately returned to JPD for arraignment. Conklin Decl., Exhibit B and F, Jamestown Fire Department Report.

17. At approximately 10:42a m, while back in the booking area of JPD, after his arraignment, Plaintiff stood up from the bench and when approached by officers, walked to the "holding tank" where he began smashing his forehead again the metal bars which caused him to fall to the floor. Police Officer Conti was present at that time and radioed for additional officers to assist. Officer Conti, with help from fellow officers, placed Plaintiff in the restraint chair, while Plaintiff continued to resist, placing his feet on the arm rests and pushing away. Officers attempted to lift Plaintiff into the chair with Plaintiff still resisting causing Plaintiff to hit his head on the floor. Conti Decl., Exhibit A.

18. After Plaintiff was successfully placed in the restraint chair. Officers called Jamestown Fire Department EMS personnel to evaluate Plaintiff's further injuries even though he was alert and did not lose consciousness during the events. After evaluation, based on Plaintiff's combative actions and attempts to self-injure, Allstar EMS was contacted to transfer

Plaintiff to the hospital for evaluation of his injuries and for a mental health evaluation. Conti Decl., Exhibit A and Exhibit G Jamestown Fire Report

19. After evaluation at UPMC, officers were advised Plaintiff did not require medical intervention or mental health evaluation and would be discharged immediately. *Id.*

20. Upon Plaintiff's release he was taken into custody by Chautauqua County Sheriff's Deputies and transported to the Chautauqua County Jail. *Id.*

21. After Plaintiff's release from UPMC and transfer to the Chautauqua County Jail there was no further City Defendant involvement with Plaintiff. *Id.*


DATED:        August 26, 2021


_____/s/ Eliot S. Raimondo_____
Elliot S. Raimondo, Corporation Counsel