

**User Name:** Blake Zaccagnino
**Date and Time:** Friday, September 15, 2023 6:19:00PM EDT
**Job Number:** 205928108

## Document (1)

1. *Powell v. City of Jamestown, 2022 U.S. Dist. LEXIS 99749*

   **Client/Matter:** zaccagnb

   **Search Terms:** Powell v. City of Jamestown, 2022 U.S. Dist. LEXIS 99749

   **Search Type:** Natural Language

   **Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| Cases | -None- |

Cited
As of: September 15, 2023 10:19 PM Z

## *Powell v. City of Jamestown*

United States District Court for the Western District of New York

June 3, 2022, Decided; June 3, 2022, Filed

Case No. 1:21-cv-721

### Reporter

2022 U.S. Dist. LEXIS 99749 *; 2022 WL 1913581

CHRISTIAN POWELL, Plaintiff, v. CITY OF JAMESTOWN, CITY OF JAMESTOWN CLERK, JAMESTOWN POLICE DEPARTMENT, JAMESTOWN POLICE CHIEF TIMOTHY JACKSON, COUNTY OF CHAUTAUQUA, CHAUTAUQUA COUNTY SHERIFF'S OFFICE, CHAUTAUQUA COUNTY SHERIFF JAMES B. QUATTRONE, CHAUTAUQUA COUNTY UNDERSHERIFF DARRYL W. BRALEY, JOHN DOES 1-10 (city employees), JOHN DOES 1-10 (county employees), Defendants.

## Core Terms

allegations, arrest, municipal, excessive force, Sheriff, custom, Defendants', training, assault, deliberate indifference, qualified immunity, supervision, conspiracy, asserts, law enforcement officer, police officer, excessive-force, injuries, rights, supervisory, respondeat superior, punitive damages, cause of action, mental health, declarations, deprivation, constitutional right, personal involvement, medical condition, motion to dismiss

## Case Summary

### Overview

HOLDINGS: [1]-The "group pleading" doctrine did not entitle defendants to dismissal of all of plaintiff's claims—including the excessive-force claim—because, although the complaint repeatedly described the alleged violations as being perpetrated by "defendants" or "officers," without further delineation, plaintiff explicitly alleged that Incident 1 involved County sheriffs and Incident 2 involved City defendants; [2]-Count 1 included an allegation that defendants subjected plaintiff to "an unreasonable and excessive use of force" in violation of his constitutional rights. Thus, because the 42 U.S.C.S. § 1983 complaint included multiple allegations that plaintiff expressed suicidal ideation and that he engaged in self-harm, the allegations plausibly established sufficiently serious mental health conditions and safety needs of which defendants were aware.

### Outcome

Motions to dismiss granted in part and denied in part. The request for leave to amend was denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

### *HN1*[⤓]  Motions to Dismiss, Failure to State Claim

On a Fed. R. Civ. P. 12(b)(6) motion, the court's task is to determine whether, accepting the allegations contained in the complaint as true, and drawing all reasonable inferences in favor of the non-movant, plaintiffs have stated a facially valid claim. In order to be found sufficient, a pleading must set forth sufficient facts to suggest that a cause of action is legally plausible. Ultimately, where a plaintiff has not nudged their claim across the line from conceivable to plausible, their complaint must be dismissed.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Summary Judgment > Motions for Summary

Judgment > Notice Requirement

*HN2*[⤓] **Motions to Dismiss, Failure to State Claim**

In addition to the facts alleged in the complaint, a court is permitted to consider matters of which judicial notice may be taken. However, if, on a motion under Fed. R. Civ. P. 12(b)(6) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). In such cases, parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN3*[⤓] **Complaints, Requirements for Complaint**

As the Second Circuit has explained, although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests. A complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy this minimum standard. At the same time, nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

Torts > Public Entity Liability > Excessive Force

*HN4*[⤓] **Law Enforcement Officials, Excessive Force**

In situations involving an alleged assault by a group of police officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so. Where a plaintiff alleges use of excessive force during an arrest, it would be asking too much for an arrestee to remember and plead the role each of several police officer played in this alleged instance of police brutality.

Civil Rights Law > Protection of Rights > Immunity From Liability > Defenses

Torts > Public Entity Liability > Immunities > Qualified Immunity

Civil Rights Law > ... > Immunity From Liability > Local Officials > Individual Capacity

Civil Rights Law > Protection of Rights > Immunity From Liability > Federal Officials

*HN5*[⤓] **Immunity From Liability, Defenses**

Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Government actors are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courts typically consider two questions in a qualified immunity analysis: (1) whether the facts that a plaintiff has alleged (Fed. R. Civ. P. 12(b)(6), (c)) or shown (Fed. R. Civ. P. 50, 56) make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. On the latter element, the court evaluates: (a) whether the defendant's action violated clearly established law; and (b) whether it was objectively reasonable for the defendant to believe that his or her action did not violate such law.

Governments > Courts > Judicial Precedent

*HN6*[⤓] **Courts, Judicial Precedent**

A Court is required to apply the law as stated by the Supreme Court.

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Rights Law > Protection of Rights > Immunity From Liability > Defenses

Torts > Public Entity
Liability > Immunities > Qualified Immunity

Civil Rights Law > ... > Immunity From
Liability > Local Officials > Individual Capacity

Civil Procedure > ... > Defenses, Demurrers &
Objections > Affirmative Defenses > Immunity

*HN7*[📥]    **Entitlement    as    Matter    of    Law,
Appropriateness**

The procedural posture of a case affects the qualified
immunity analysis. Although claims of qualified immunity
should be decided as early as possible in a case, it is
often best decided on a motion for summary judgment
when the details of the alleged deprivations are more
fully developed. On a motion to dismiss, the defense will
succeed only where entitlement to qualified immunity
can be established based solely on facts appearing on
the face of the complaint. This is a stringent standard.

Civil Rights Law > Protection of Rights > Immunity
From Liability > Defenses

Torts > Public Entity
Liability > Immunities > Qualified Immunity

*HN8*[📥]  **Immunity From Liability, Defenses**

Regarding    qualified    immunity,    on    one    hand,
characterizing the right too narrowly to the facts of the
case    might    permit    government    actors    to    escape
personal liability. On the other hand, defining clearly
established law at too high a level of generality avoids
the    crucial    question    whether    the    official    acted
reasonably in the particular circumstances that he or
she faced.

Civil Rights Law > ... > Section 1983
Actions > Elements > Protected Rights

*HN9*[📥]  **Elements, Protected Rights**

To state a valid claim under 42 U.S.C.S. § 1983, the
plaintiff must allege that the challenged conduct: (1) was
attributable to a person acting under color of state law;
and (2) deprived the plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the
United States.

Constitutional Law > Bill of Rights > Fundamental
Rights > Cruel & Unusual Punishment

Constitutional Law > ... > Fundamental
Rights > Search & Seizure > Scope of Protection

Constitutional Law > ... > Fundamental
Rights > Procedural Due Process > Scope of
Protection

*HN10*[📥]  **Fundamental Rights, Cruel & Unusual
Punishment**

The right not to be subject to excessive force derives
from the Fourth Amendment for arrestees, the Eighth
Amendment for prisoners incarcerated for a criminal
conviction, and the Fifth or Fourteenth Amendment for
pretrial detainees and individuals who have not been
arrested.

Governments > Federal Government > Employees
& Officials

Governments > State & Territorial
Governments > Employees & Officials

*HN11*[📥]    **Federal    Government,    Employees    &
Officials**

The Fifth Amendment governs the conduct of the
federal government and federal employees, and does
not regulate the activities of state officials or state
actors.

Civil Rights Law > ... > Scope > Law Enforcement
Officials > Excessive Force

Constitutional Law > ... > Fundamental
Rights > Search & Seizure > Scope of Protection

Torts > Public Entity Liability > Excessive Force

*HN12*[📥]  **Law Enforcement Officials, Excessive
Force**

The standards applicable to excessive-force claims
under the Fourth and Fourteenth Amendments are
largely the same. Both relate to the objective
reasonableness of the defendants' use of force. Proper

2022 U.S. Dist. LEXIS 99749, *99749

application of this objective test requires careful attention to the facts and circumstances of each particular case. Courts consider factors such as: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount offeree; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Because of its intensely factual nature, the question of whether the use offeree was reasonable under the circumstances is generally best left for a jury to decide. Even in the arrest context, the reasonableness of the force used is often a jury question. These principles apply with even greater force at the motion to dismiss stage, where a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

### HN13[⤓] Motions to Dismiss, Failure to State Claim

A court need not credit bare, conclusory allegations in a Complaint on a motion to dismiss.

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

Constitutional Law > ... > Fundamental Rights > Search & Seizure > Scope of Protection

### HN14[⤓] Law Enforcement Officials, Excessive Force

Not every push or shove amounts to a Fourth Amendment violation. Indeed, a de minimis use of force will rarely suffice to state a Constitutional claim.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

Torts > Public Entity Liability > Excessive Force

### HN15[⤓] Complaints, Requirements for Complaint

A plaintiff claiming excessive force must allege that he sustained an injury. Conclusory allegations of physical and emotional injuries are no more than labels and conclusions and do not plausibly state an excessive force claim. There is no threshold degree of injury a plaintiff must allege in order to successfully pursue an excessive force claim.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > ... > Section 1983 Actions > Elements > Causal Relationship

### HN16[⤓] Complaints, Requirements for Complaint

To state a claim under 42 U.S.C.S. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

Governments > Local Governments > Claims By & Against

### HN17[⤓] Local Officials, Customs & Policies

The elements of a Monell claim are: (1) a municipal policy or custom that; (2) causes the plaintiff to be subjected to; (3) the deprivation of a constitutional right.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

Governments > Local Governments > Claims By & Against

### HN18[⤓] Local Officials, Customs & Policies

2022 U.S. Dist. LEXIS 99749, *99749

For a Monell claim, to show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law. Thus, a plaintiff can rely on allegations of similar misconduct to plead that there was a widespread practice, policy or custom. And, depending on the particular circumstances, a plaintiff need not present a large number of similar incidents.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Deliberate Indifference

Governments > Local Governments > Claims By & Against

*HN19*[⤓]  **Local Officials, Deliberate Indifference**

In a Monell case, an inference can be drawn where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Governments > Local Governments > Claims By & Against

*HN20*[⤓]  **Complaints, Requirements for Complaint**

Since the Ferrari decision, the Second Circuit has clarified that while it may be true that 42 U.S.C.S. § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under Iqbal to plead a facially plausible claim. There are a number of ways that plaintiffs can plausibly allege a § 1983 claim for municipal liability premised on a failure to train theory without having detailed knowledge of a municipality's training programs.

Civil Rights Law > Protection of Rights > Immunity From Liability > Respondeat Superior Distinguished

Governments > Local Governments > Claims By & Against

*HN21*[⤓]  **Immunity From Liability, Respondeat Superior Distinguished**

Since claims against the officers in their official capacities are treated as claims against the municipalities themselves, respondeat superior does not authorize a 42 U.S.C.S. § 1983 claim against those defendants in their official capacities.

Civil Rights Law > ... > Section 1983 Actions > Elements > Protected Rights

*HN22*[⤓]  **Elements, Protected Rights**

To state a personal-capacity claim under 42 U.S.C.S. § 1983, a plaintiff must allege facts showing the defendants' personal involvement in the alleged constitutional deprivations.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

Civil Rights Law > ... > Immunity From Liability > Local Officials > Deliberate Indifference

Civil Rights Law > ... > Immunity From Liability > Local Officials > Direct Causal Links

*HN23*[⤓]  **Local Officials, Customs & Policies**

Before the Supreme Court's Iqbal decision, the Second Circuit identified five categories of evidence to show the personal involvement of a supervisory defendant: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. But, the Second Circuit has since held that after there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a 42 U.S.C.S. § 1983

2022 U.S. Dist. LEXIS 99749, *99749

violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary.

Constitutional Law > Substantive Due Process > Scope

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN24*[⬇] **Constitutional Law, Substantive Due Process**

Although, after Tangreti, courts must resolve claims against supervisor-defendants without reference to Colon's special standards for supervisory liability, the legal standard under the fourth factor is virtually identical to the Fourteenth Amendment deliberate-indifference standard.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Torts > Intentional Torts > Assault & Battery > Elements of Assault

*HN25*[⬇] **Complaints, Requirements for Complaint**

In the context of an alleged assault by a group of law enforcement officers, the plaintiff is not required to set forth in detail the actions and omissions of each officer.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Elements

Evidence > Burdens of Proof > Allocation

*HN26*[⬇] **Section 1983 Actions, Elements**

To prevail on a failure-to-intervene claim, a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene.

Civil Rights Law > ... > Scope > Law Enforcement

Officials > Arrests

Torts > Intentional Torts > False Arrest > Defenses

Torts > Intentional Torts > False Arrest > Elements

Torts > ... > False Imprisonment > Defenses > Justifications & Privileges

*HN27*[⬇] **Law Enforcement Officials, Arrests**

The elements of a claim of false arrest under 42 U.S.C.S. § 1983 are substantially the same as the elements of a false arrest claim under New York law. Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. The existence of probable cause to arrest renders the confinement privileged and is a complete defense to an action for false arrest.

Constitutional Law > ... > Fundamental Rights > Search & Seizure > Probable Cause

*HN28*[⬇] **Search & Seizure, Probable Cause**

An arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause.

Civil Rights Law > ... > Scope > Law Enforcement Officials > Custody

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Civil Rights Law > ... > Immunity From Liability > Local Officials > Deliberate Indifference

*HN29*[⬇] **Law Enforcement Officials, Custody**

The Due Process Clause requires the responsible government or governmental agency to provide medical care to persons who have been injured while being apprehended by the police. A pretrial detainee may establish a 42 U.S.C.S. § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the

2022 U.S. Dist. LEXIS 99749, *99749

challenged conditions. This means that a pretrial detainee must satisfy two prongs to prove a claim, an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong—perhaps better classified as a mens rea prong or mental element prong—showing that the officer acted with at least deliberate indifference to the challenged conditions.

Civil Rights Law > ... > Section 1983
Actions > Scope > Law Enforcement Officials

*HN30*[⤓]  **Scope, Law Enforcement Officials**

Regarding the objective prong for a 42 U.S.C.S. § 1983 claim, failure to attend to a medical condition can be a constitutional violation depending on the facts of the particular case. In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as sufficiently serious.

Civil Rights Law > ... > Section 1983
Actions > Scope > Law Enforcement Officials

*HN31*[⤓]  **Scope, Law Enforcement Officials**

As to the subjective prong for a 42 U.S.C.S. § 1983 claim, a court considers whether the allegations plausibly indicate that defendants knew and disregarded an excessive risk to health or safety.

Civil Rights Law > ... > Section 1983
Actions > Elements > Protected Rights

*HN32*[⤓]  **Elements, Protected Rights**

Causation and damages are required elements of a 42 U.S.C.S. § 1983 claim. To state a claim under Section 1983, a plaintiff must show: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; and (4) damages., report and recommendation adopted in part (affirming jury instruction in § 1983 case describing causation as the third element of the claim.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

*HN33*[⤓]  **Conspiracy Against Rights, Elements**

Conspiracy under 42 U.S.C.S. § 1983 and conspiracy under 42 U.S.C.S. § 1985 are distinct causes of action with different elements. However, it is necessary to each of these causes of action that there has been an underlying constitutional violation.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Private Conspirators

*HN34*[⤓]  **Conspiracy Against Rights, Elements**

Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either 42 U.S.C.S. § 1983 or 42 U.S.C.S. § 1985(3).

Civil Procedure > Remedies > Damages > Punitive Damages

Governments > Local Governments > Claims By & Against

Contracts Law > ... > Damages > Types of Damages > Punitive Damages

Torts > ... > Types of Damages > Punitive Damages > Aggravating Circumstances

Torts > ... > Punitive Damages > Availability > Governmental Entities

*HN35*[⤓]  **Damages, Punitive Damages**

Punitive damages are not available against a municipal defendant. Punitive damages can be available, however against municipal officials named in their individual capacities. At the motion-to-dismiss stage, a plaintiff needs to allege evil motive or intent, callous indifference to justify punitive damages.

Civil Procedure > Pleading &

2022 U.S. Dist. LEXIS 99749, *99749

Practice > Pleadings > Rule Application & Interpretation

*HN36*[ ] **Pleadings, Rule Application & Interpretation**

Under New York's Civil Practice Law and Rules, a party may move for judgment dismissing one or more causes of action against him on the ground that a defense is founded upon documentary evidence. N.Y. C.P.L.R. 3211(a)(1).

Business & Corporate Law > ... > Duties & Liabilities > Authorized Acts of Agents > Liability of Principals

*HN37*[ ] **Authorized Acts of Agents, Liability of Principals**

Respondeat superior is not an independent cause of action, but a theory that must attach to an underlying claim.

Torts > ... > Employers > Scope of Employment > Application of State Law

Torts > ... > Employers > Scope of Employment > Personal Activities

Torts > ... > Employers > Scope of Employment > Violations of Instructions

*HN38*[ ] **Scope of Employment, Application of State Law**

In New York, conduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties. However, an employee will be considered within the scope of his employment so long as he is discharging his duties, no matter how irregularly, or with what disregard of instructions. Since law enforcement officers often must use some degree of force to make arrests, municipalities can foresee that their officers will use force given the nature of police work.

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Remedies

*HN39*[ ] **Intentional Infliction of Emotional Distress, Remedies**

The federal rules of procedure authorize alternative claims in a pleading. Fed. R. Civ. P. 8(d)(2). But, intentional infliction of emotional distress and negligent infliction of emotional distress may not be used as a substitute for an available traditional tort theory.

Torts > ... > Concerted Action > Civil Conspiracy > Elements

*HN40*[ ] **Civil Conspiracy, Elements**

In order to state a claim for civil conspiracy, a plaintiff must allege an underlying tort plus four additional elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

**Counsel:** **[*1]** For Christian Powell, Plaintiff: Blake Joseph Zaccagnino, LEAD ATTORNEY, Shaw & Shaw, PC, Hamburg, NY.

For City of Jamestown, Jamestown Police Chief Timothy Jackson, John Does 1-10, said names being fictitious but intended to be any other individual/officers involved in the within incident and employees of the City of Jamestown and/or Jamestown Police Department in their individual and official capacities, John Does 1-10, said names being fictitious but intended to be any other individual/officers involved in the within incident and employees of the County of Chautauqua and/or Chautauqua County Sheriff's Office in their individual and official capacities, Defendants: Elliot Samuel Raimondo, LEAD ATTORNEY, Corporation Counsel, Jamestown, NY.

For County of Chautauqua, Chautauqua County Sheriff James B. Quattrone, Chautauqua County Undersheriff Darryl W. Braley, Defendants: Michael P. McClaren, LEAD ATTORNEY, Peter L Veech, Buffalo, NY.

**Judges:** Geoffrey W. Crawford, United States District Judge.

**Opinion by:** Geoffrey W. Crawford

# Opinion

## OPINION AND ORDER

## (Does. 9, 14)

In this case, removed from New York Supreme Court, Plaintiff Christian Powell sues the above-captioned defendants[1] alleging personal injuries resulting from [*2] two incidents. First, he alleges that law enforcement officers knew or should have known that he suffers from mental health and other conditions, but that they used harmful force as they arrested him on December 10,2020 and allowed him to harm himself during the arrest, during transport to the Jamestown Police Department Central Booking Bureau, and during a period while he was restrained at the police station—all while failing to send him to a hospital or provide him with a mental health evaluation. (Doc. 1-1 ¶¶ 24-41.) Second, he alleges that after his arraignment, officers failed to send him to a hospital or provide him with a mental health evaluation, failed to prevent him from harming himself, and used harmful force as they restrained him at the police station. (Id. ¶¶ 43-46.)

The 183-paragraph Complaint seeks damages on the following theories: (1) negligence; (2) violation of civil rights under _42 U.S.C. § 1983_; (3) respondeat superior/vicarious liability; (4) negligent hiring; (5) negligent retention; (6) negligent training and supervision; (7) assault; (8) battery; (9) battery committed in the performance of a public duty; (10) intentional infliction of emotional distress ("TIED"); (11) negligent [*3] infliction of emotional distress ("NIED"); (12) failure to intervene; (13) unlawful arrest; (14) failure to treat; (15) conspiracy; and (16) demand for punitive damages.[2] The City Defendants and the County

---

[1] The defendants can be organized into two groups: the "City Defendants" (the City of Jamestown, the City of Jamestown Clerk, the Jamestown Police Department, Jamestown Police Chief Timothy Jackson, and the John Does who are city employees) and the "County Defendants" (the County of Chautauqua, the Chautauqua County Sheriff's Office, Chautauqua County Sheriff James B. Quattrone, Chautauqua County Undersheriff Darryl W. Braley, and the John Does who are county employees).

[2] The IIED and NIED claims are both numbered count "10" in the Complaint, and the "failure to intervene" and "unlawful arrest" claims are both numbered count "11." For clarity, the court refers to the claims by the numbers listed above.

Defendants have separately filed motions to dismiss for failure to state a claim under _Fed. R. Civ. P. 12(b)(6)_. (Does. 9, 14.)

## Background

The factual allegations in the Complaint include the following. Mr. Powell suffers from mental health and other health conditions about which Defendants knew or should have known. (Doc. 1-1 ¶ 28.) Chautauqua County sheriffs and Jamestown Police officers arrested Mr. Powell on December 10, 2020. (Id. ¶¶ 24, 26, 29.) Mr. Powell asserts on information and belief that the arresting officers "possessed obvious violent propensities." (Id. ¶ 52.)

## I. "Incident 1"

According to Mr. Powell, the officers effecting the arrest "assaulted, battered, repeatedly grabbed, kneed, yanked his arms, threw him to the ground, placed handcuffs on him extremely tight causing injury, and seized him without cause or provocation." (Id. ¶ 27.) At the time he was arrested, Mr. Powell asked the officers to send him to an inpatient hospital to be treated for his mental health conditions and his mental state [*4] at the time. (Id. ¶ 29.) They refused to send him to the hospital or to provide him with a mental health evaluation. (Id.) Mr. Powell was crying and he advised the officers that he had not slept in days, that he had not seen his children, that he was stressed out, that he wanted to kill himself, and that he has post-traumatic stress disorder ("PTSD"). (Id. ¶ 30.)

According to Plaintiff: "After being advised of the above, the defendants remained on top of Plaintiff." (Id. ¶ 31.) They allowed him to "hit his head off of the ground multiple times causing injury." (Id.) The officers stood Mr. Powell up and he advised that he felt he had a concussion. (Id.)

Officers placed Mr. Powell in a Jamestown Police vehicle and transported him to the Jamestown Police Department Central Booking Bureau. (Id. ¶ 32.) Plaintiff asserts that the officers "allowed plaintiff to hit his head on the glass separating where he and the officers were sitting multiple times, causing injury." (Id.) Mr. Powell "screamed that he had a concussion and that he felt like he was going to die." (Id.) "He again screamed that he had not slept in days." (Id.) He "screamed that he was going to die and that he could not feel his [*5] head." (Id.)

2022 U.S. Dist. LEXIS 99749, *5

Upon arriving at the police station, an officer stated that Mr. Powell was "fighting hard" and that he would be going straight to the "chair" depending on his medical situation. (*Id.* ¶ 33.) Plaintiff asserts on information and belief that the "chair" is a "restraint chair meant to prevent prisoners from self injury." (*Id.*) An officer also stated that Mr. Powell was "bashing his head on a flash-light." (*Id.*)

When officers took Mr. Powell out of the vehicle, they allowed him to "bash his head on the trunk of a police vehicle, causing injury." (*Id.* ¶ 34.) Once inside the station, Mr. Powell screamed that his handcuffs were tight and asked officers to take them off (*Id.*) Mr. Powell again stated that he had not slept in days, that he had not seen his children in weeks, that he had no one to talk to, and that he had PTSD. (*Id.*) He further stated that he had not eaten, that he did not care what happened to him, that he would rather kill himself than go to jail, and that he needed someone to talk to. (*Id.* ¶ 35.) He told officers that he wanted to go to the hospital. (*Id.*)

Officers did not send Mr. Powell to the hospital, place him in a restraint chair, or provide him with a mental [*6] health evaluation at that time. (*Id.* ¶ 36.) Instead, they handcuffed him to a bench at the station. (*Id.*) He remained handcuffed on the bench for a number of hours. (*Id.*)

Mr. Powell alleges that, while he was handcuffed on the bench, officers "allowed plaintiff to smash his hands on the bench and yank on his handcuffs" and to "punch the wall and break his ankle-handcuffs," causing injury. (*Id.* ¶ 37.) He stated to Officers that "he lost his kids and his heart was gone, that he would rather kill himself, that he was psychotic, [and] that he needed mental health help right now." (*Id.*) He told officers "to use a taser on him and to put a bullet in his head." (*Id.*)

Mr. Powell again stated that he was going to kill himself. (*Id.* ¶ 39.) Officers allowed him to "hit his head off of the wall, causing injury." (*Id.*)

> Plaintiff rambled, stumbled around, stretched his full body out with his leg attached to a bench, and took his shirt off. Plaintiff yanked his handcuffs on the bench, grabbed the phone off of the wall, violently clapped his hands, punched the wall, fell off of the bench and landed on his side, hit his head on the wall, and rolled back and forth moaning.

(*Id.*) He stated to officers that [*7] he had been drinking for the past week, that he had not showered in days, that he was ready to kill himself, that he would rather be

dead, that he has nobody and was ready to say "bye." (*Id.* ¶ 40.) He also stated that he has explosive anger disorder, that he was getting ready to kill himself, and that officers "better call someone in before he does it, that he was ready to jump head first off of the bench, and that he might as well kill himself." (*Id.*) Despite Mr. Powell's deteriorating mental health condition, Defendants did not send him to the hospital or provide him with a mental health evaluation. (*Id.* ¶ 41.)

## II. "Incident 2"

Hours later, Mr. Powell was arraigned. (*Id.* ¶ 43.) "He was crying, trying to make statements on the record, and acted erratically." (*Id.*) "His [bizarre] behavior from hours prior continued." (*Id.*) "[D]efendants still did not send Plaintiff to the hospital or provide him with a mental health evaluation." (*Id.*)

After his arraignment—hours after he was brought to the police station—Mr. Powell ripped his court paperwork up and threw it on the ground. (*Id.* 1144.) Officers brought him to the restraint chair. (*Id.*) But they "allowed Plaintiff to hit his head on the [*8] metal bars in the jail area causing him pain and injury." (*Id.*)

In the process of restraining Mr. Powell, officers "assaulted, battered, slammed Plaintiff to the ground, and seized Plaintiff without cause or provocation." (*Id.* ¶ 45.) They "pulled Plaintiff's shirt over his head for a period of time while they restrained him." (*Id.*) They "allowed Plaintiff to bang his head and neck on the back of the restraint chair." (*Id.*) They strapped him down "extremely tight," causing pain and injury, and Mr. Powell asked that his restraints be loosened. (*Id.*)

Mr. Powell asserts that he was "at all times, using due care." (*Id.* ¶ 50.) He further asserts that, as a result of Defendants' conduct, he was "injured internally, externally, and permanently in and about the face, head, back, chest, shoulders, limbs, torso, and nervous system, so that he became and will continue to be disabled and will continue to suffer pain and discomfort, distress, and psychological adjustment." (*Id.* ¶ 49.) He alleges that he suffered "severe, painful, permanent and personal injuries; was rendered sick, sore lame and disabled, and suffered a loss of enjoyment and quality of life." (*Id.* ¶ 85.)

## Analysis

The County and City [*9] Defendants raise numerous

2022 U.S. Dist. LEXIS 99749, *9

arguments in their motions to dismiss. They each seek dismissal of all counts on the grounds that the Complaint suffers from impermissible "group pleading." (Doc. 9-6 at 14; Doc. 14-9 at 14.) They also each seek dismissal of multiple claims on qualified immunity grounds. (Doc. 9-6 at 30; Doc. 14-9 at 32.) And each group of Defendants raises individual challenges to all of the federal and state causes of action in the Complaint.

The court begins by reciting the applicable standard of review and addressing the issue of which materials that may be considered under the present procedural posture. *See infra* Parts I-II. The court then proceeds to consider certain defense theories that are potentially applicable to multiple claims. *See infra* Parts II—IV. Finally, the court turns to the individual federal and state-law claims. *See infra* Parts V—VI.

## I. Standard of Review

*HN1*[⬆] On a *Rule 12(b)(6)* motion, the court's task is "to determine whether, accepting the allegations contained in the complaint as true, and drawing all reasonable inferences in favor of the non-movant, plaintiffs have stated a facially valid claim." *Deasio v. City of Canandaigua, 513 F. Supp. 3d 310, 319 (W.D.N.Y. 2021)* (cleaned up). "In order to be found sufficient, a pleading must set **[*10]** forth sufficient facts to suggest that a cause of action is legally plausible." *Id.* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "Ultimately, where a plaintiff has not nudged their claim across the line from conceivable to plausible, their complaint must be dismissed." *Id.* (cleaned up).

*HN2*[⬆] In addition to the facts alleged in the complaint, the court is permitted to "consider matters of which judicial notice may be taken." *Simmons v. Trans Exp. Inc., 16 F.4th 357, 360 (2d Cir. 2021)* (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)*). However, "[i]f, on a motion under *Rule 12(b)(6)* . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule 56*." *Fed. R. Civ. P. 12(d)*. In such cases 141 parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

## II. Materials Outside the Pleadings

In their motions to dismiss, the County and City Defendants have each presented matters outside the pleadings. Both defendants have supplied copies of a December 9, 2020 warrant issued for Mr. Powell's arrest. (Does. 9-2, 14-2.) The County Defendants have supplied a Chautauqua County Sheriff Filed Case Report concerning the December 10, 2020 arrest (Doc. 9 3) and a five-paragraph declaration signed by Chautauqua County Sheriff's Deputy Stephen Madonia **[*11]** (Doc. 9-4). The City Defendants have supplied declarations by four city police officers (Carter Obergfell, Kevin Wise, Mark Conklin, and John Conti) (Does. 14-3, 14-4, 14-5, 14-6),[3] plus two Jamestown Fire Department reports (Does. 14-7, 14-8). Each officer's declaration includes an exhibit of that officer's written narrative or report of his involvement in the events related to Mr. Powell on December 10, 2020.

## A. Arrest Warrant

The December 9, 2020 warrant is a public record and is properly subject to judicial notice. *See Debellis v. Schmoke, No. 19-CV-07834 (PMH), 2021 U.S. Dist. LEXIS 1187, 2021 WL 38262, at *1 n.3 (S.D.N.Y. Jan. 5, 2021)* (taking judicial notice of arrest warrant; citing cases). The court will take notice of that warrant. The warrant, issued by Jamestown City Court Judge John L. LaMancuso on December 9, 2020, authorized the arrest of Christian T. Powell. (Doc. 9-2.) An endorsement on the warrant indicates that the arrest was carried out on December 10, 2020. (*Id.*)

## B. Officers' Declarations and Written Reports

Relying on the declarations of law enforcement officers, the County and City Defendants challenge Mr. Powell's allegations. According to the County Defendants, Deputy Madonia had only "minimal and lawful involvement" in alleged "Incident 1," undermining "each and every one of Plaintiff's **[*12]** absurd allegations against the County Defendants. . . . Plaintiff's allegations of wrongdoing on the part of the County Defendants are pure fantasy." (Doc. 9-6 at 10; *see also id.* at 12 ("Plaintiff maliciously misrepresents Deputy Madonia's actions to fit his fictitious narrative.").) The City Defendants take a similar position. (*See* Doc. 14-9 at 10 ("At no time during Plaintiff's arrest and confinement at

---

[3] Document 14-6 is supposed to be Officer Conti's declaration, but the document is a transcript from a different case involving a different officer (Sgt. Robert Bender).

2022 U.S. Dist. LEXIS 99749, *12

the Jamestown Police Department was he assaulted or injured by any party other than himself."); *see also* Doc. 23 ¶ 9 ("Plaintiff s attempt to alter the narrative to view him as the victim in this matter when, in fact, he was arrested on an active, lawful and valid warrant, was combative with officers and medical responders, self-harmed despite employees['] best attempts to intercede, caused damage to City property and subsequently refused any offer of assistance is beyond any credibility"); *id.* ¶ 10 ("The Plaintiff has provided no proof, aside from his own distorted narrative to contradict any of the proof submitted by Defendant[s] in this matter.").)

This court has declined to take judicial notice of police reports on a *Rule 12(b)(6)* motion. *See Acquest Holdings, Inc. v. Travelers Cas. & Surety Co. of Am., 217 F. Supp. 3d 678, 684 n.1 (W.D.N.Y. 2016)*. While some courts have taken judicial notice [*13] of police reports and similar materials on a motion to dismiss, such notice was taken to establish the *existence* of the reports, not for the truth of their contents. *See Alvarez v. Cnty. of Orange, N.Y., 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015)* (collecting cases). Defendants in this case do not rely on the police reports for that narrow purpose, but instead to attempt to establish the facts of their conduct during Mr. Powell's arrest and detention.

The court cannot take judicial notice of the reports for that purpose. Therefore, the court's options are to exclude the officers' declarations and written reports, or to convert Defendants' motions to motions for summary judgment. *See Fed. R. Civ. P. 12(d)*. The court elects to exclude the declarations and written reports from consideration of the *Rule 12(b)(6)* motions.

### III. Distinguishable or Suable Defendants

### A. Group Pleading

Defendants seek dismissal of all of Mr. Powell's claims on the basis that the Complaint violates *Fed. R. Civ. P. 8*'s prohibition on group pleading. (Doc. 9-6 at 14; Doc. 14-9 at 14.)

HN3[⬆] As the Second Circuit has explained, "[a]lthough *Federal Rule of Civil Procedure 8* does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiffs claim is

and the [*14] ground upon which it rests."

*Tracey v. City of Geneva, No. 6:17-cv-06567-MAT, 2018 U.S. Dist. LEXIS 49977, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018)* (quoting *Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)*). "A complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy this minimum standard." *Id.* (cleaned up). At the same time, "[n]othing in *Rule 8* prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Stevenson v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 1:21-cv-355, 2022 U.S. Dist. LEXIS 10663, 2022 WL 179768, at *10 (W.D.N.Y. Jan. 20, 2022)* (alteration in original) (quoting *Wyatt v. Kozlowski, No. 19-CV-159W(F), 2021 U.S. Dist. LEXIS 7707, 2021 WL 130978, at *7 (W.D.N.Y. Jan. 14, 2021)*).

HN4[⬆] This court has observed that "in situations involving an alleged assault by a group of police officers . . . courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *Bryant v. Monroe Cnty., No. 19-CV-6474 CJS, 2022 U.S. Dist. LEXIS 6392, 2022 WL 119184, at *10 (W.D.N.Y. Jan. 12, 2022)*. Where a plaintiff alleges use of excessive force during an arrest, "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officer played in [this] alleged instance of police brutality." *2022 U.S. Dist. LEXIS 6392, [WL] at *11* (alterations in original) (quoting *Arias v. E. Hartford, No. 3:20-CV-00895 (JCR), 2021 U.S. Dist. LEXIS 142340, 2021 WL 3268846, at *4 (D. Conn. July 30, 2021)*).

Applying these principles to this case, the court concludes that the "group pleading [*15] doctrine does not entitle Defendants to dismissal of all of Mr. Powell's claims—and certainly not the excessive-force claim. It is true that the Complaint repeatedly describes the alleged violations as being perpetrated by "defendants" or "officers," without further delineation. But Mr. Powell explicitly alleges that "Incident 1" involved Chautauqua County sheriffs and Jamestown Police officers. (Doc. 1-1 ¶ 26.) And he concedes that "Incident 2"—which allegedly occurred while Mr. Powell was in the sole custody of the Jamestown Police Department—involved only City Defendants. (*See* Doc. 13-1 at 12; Doc. 20-2 at 22.) In the context of Mr. Powell's allegations of excessive force by law enforcement officers, the "group pleading" doctrine is not a basis to grant dismissal under

*Rule 12(b)(6)*.

**B. Suable Entities**

The City Defendants argue that all of Mr. Powell's claims against the Jamestown Police Department and the City of Jamestown Clerk must be dismissed because they are not suable entities. (Doc. 14-9 at 16.) Mr. Powell concedes that "[u]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot **[*16]** sue or be sued." *Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)*; *see also Long v. Cnty. of Orleans, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021)* ("Federal courts apply state law to determine whether an entity has capacity to be sued. . . . Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued.") (citations omitted). But Mr. Powell contends that the City Defendants "have not cited case law providing that the Jamestown Police Department/City of Jamestown Clerk (specifically) are merely administrative arms of the City of Jamestown." (Doc. 20-2 at 15.)

The court rejects that argument. Mr. Powell has not shown that the law on this issue is different for the City of Jamestown. The City Defendants are not required to cite a case specifically applying this law to the City of Jamestown. Mr. Powell's reference to the Jamestown Police Department's website is unavailing. Assuming the court can consider those extra-pleading materials, nothing on the website indicates that the Jamestown Police Department is anything other than an administrative arm of the city.

The County Defendants have not raised this issue as to the Chautauqua County Sheriff's Office. However, the same doctrine **[*17]** applies to county sheriff's departments. *Long, 540 F. Supp. 3d at 350*. The court will dismiss all claims against that defendant *sua sponte*. *See Seale v. Madison Cnty., 929 F. Supp. 2d 51, 58 n.1 (N.D.N.Y. 2013)* (dismissing *sua sponte* claims against the Madison County Sheriff's Office because the Sheriff's Office is an administrative arm of a municipality and lacks the capacity to sue or be sued).

**IV. Qualified Immunity**

*HN5*[⬆] "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021)* (per curiam) (quoting *White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017)* (per curiam)); *see also Hurd v. Fredenburgh, 984 F.3d 1075, 1089 (2d Cir. 2021)* (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 432-33 (2d Cir. 2009)*) ("Government actors are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Courts typically consider two questions in a qualified immunity analysis: (1) "whether the facts that a plaintiff has alleged (see *Fed. Rules Civ. Proc. 12(b)(6)*, *(c)*) or shown (see *Rules 50*, *56*) make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)* (quoting *Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*). On the latter element, the court evaluates (a) whether the defendant's action violated "clearly established law" **[*18]** and (b) whether it was "objectively reasonable" for the defendant to believe that his or her action did not violate such law. *Poe v. Leonard, 282 F.3d 123, 133 (2d Cir. 2002)* (quoting *Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998)*).

The court recognizes that the doctrine of qualified immunity has recently been the subject of intense public scrutiny and debate, especially as the doctrine relates to police conduct. Courts have also weighed in on the issue. *See, e.g., Jamison v. McClendon, 476 F. Supp. 3d 386, 391-92 (S.D. Miss. 2020)* (asserting that qualified immunity "operates like absolute immunity" in real life, and that the doctrine "has served as a shield" for law enforcement officers who have failed to respect "the dignity and worth of black lives"). *HN6*[⬆] Still, "[t]his Court is required to apply the law as stated by the Supreme Court." *Id. at 392*.

*HN7*[⬆] The procedural posture of a case affects the qualified immunity analysis. "Although claims of qualified immunity 'should be decided as early as possible in a case,' it 'is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed.'" *Watkins v. Town of Webster, No. 6:21-CV-06233 EAW, 2022 U.S. Dist. LEXIS 49237, 2022 WL 827824, at *11 (W.D.N.Y. Mar. 17, 2022)* (quoting *Walker v. Schult, 717 F.3d 119, 130 (2d Cir.*

2022 U.S. Dist. LEXIS 99749, *18

2013)). On a motion to dismiss, "the defense will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the [*19] face of the complaint." *Id.* (cleaned up); *see also Biswas v. Kwait, 576 F. App'x 58, 59 (2d Cir. 2014)* (summary order) ("Qualified immunity is appropriately granted on a *Rule 12(b)(6)* motion only if it is based on facts appearing on the face of the complaint, exhibits to the complaint, documents incorporated by reference, and items of which judicial notice may be taken."). This is a "stringent" standard. *Chamberlain ex rel. Estate of Chamberlain v. City of White Plains, 960 F.3d 100, 110 (2d Cir. 2020)* (quoting *McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)*).

The following pronouncements guide the court in seeking the definition of the rights at issue. *HN8*[⬆] On one hand, "[c]haracterizing the right too narrowly to the facts of the case might permit government actors to escape personal liability." *Edrei v. Maguire, 892 F.3d 525, 539 (2d Cir. 2018)* (quoting *Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251 (2d Cir. 2001)*), "On the other hand, defining clearly established law at too high a level of generality 'avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* (quoting *Plumhoff v. Rickard, 572 U.S. 765, 779, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014)*).

The County and City Defendants both assert that Mr. Powell did not have any constitutional right to "an immediate pause of a lawful arrest in order to be sent to a hospital for psychological treatment or the performance of a field psychological evaluation by the arresting officers." (Doc. 9-6 at 30-31; Doc. 14-9 at 32.) That argument characterizes the rights at issue [*20] too narrowly. It is true that the Complaint repeatedly faults Defendants for failing to send Mr. Powell to the hospital or provide him with a mental health evaluation. But the Complaint also alleges—among other things—that the officers applied excessive force and that the officers failed to prevent Mr. Powell from harming himself.

Regarding the "clearly established" prong, the County and City Defendants also both assert that "no decision by the Second Circuit Court of Appeals has held that the actions complained of . . . constitutes deliberate indifference to serious medical needs under the *Fourteenth Amendment*." (Doc. 9-6 at 31; Doc. 14-9 at 32.) The City Defendants define the "actions complained of" as: "[F]ailing to prevent an arrestee from suddenly and [unexpectedly] injuring himself while he is actively

resisting a lawful arrest." (Doc. 14-9 at 32.) The County Defendants define those actions similarly but somewhat more broadly: "[F]ailing to prevent an arrestee from suddenly and [unexpectedly] injuring himself while he is actively resisting arrest or failing to obtain immediate mental health treatment while the arrestee is actively resisting a lawful arrest." (Doc. 9-6 at 31.)

The court is unpersuaded. [*21] In the light most favorable to Mr. Powell, the Complaint does not state or suggest that Mr. Powell was resisting arrest. To the contrary, he asserts that the force applied during his arrest was "without cause or provocation" and that he was "at all times, using due care." (Doc. 1-1 ¶¶ 27, 50.)[4] For the reasons stated above, under the *Rule 12(b)(6)* procedure, the court cannot consider the officers' declarations or statements to the contrary.

For similar reasons, the court rejects Defendants' argument that they are entitled to qualified immunity on Mr. Powell's failure-to-intervene claim. (Doc. 9-6 at 31; Doc. 14-9 at 32.) The County Defendants maintain that Deputy Madonia "merely came to the aid of the JPD officers whom Plaintiff was actively resisting, and the force used by Deputy Madonia during the course of Plaintiff's arrest was objectively reasonable." (Doc. 9-6 at 31.) The City Defendants assert that the force they used "was objectively reasonable while the Plaintiff was actively resisting a lawful arrest." (Doc. 14-9 at 33.) Since the Complaint does not state or suggest that Mr. Powell was resisting arrest, and the court is excluding the officers' declarations at this procedural stage, Defendants [*22] are not entitled to qualified immunity on the failure-to-intervene claim.

## V. Federal Claims

Mr. Powell's federal claims are primarily claims under *42 U.S.C. § 1983*. *Section 1983* provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other

---

[4] The Complaint does include an allegation that, at the police station, one officer remarked that Mr. Powell was "fighting hard." (Doc. 1-1 ¶ 33.) That remark does not necessarily establish that Mr. Powell was in fact resisting arrest.

2022 U.S. Dist. LEXIS 99749, *22

proper proceeding for redress ....

_Section 1983_ does not confer any substantive rights but "merely provides a method for vindicating federal rights elsewhere conferred." _Vill. of Freeport v. Bar relict, 814 F.3d 594, 600 n.8 (2d Cir. 2016)_ (quoting _Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004)_). _HN9_[⬆] "To state a valid claim under _42 U.S.C. § 1983_, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." _Forbes v. City of Rochester, No. 6:18-CV-06700 EAW, 2020 U.S. Dist. LEXIS 72655, 2020 WL 1963139, at *3 (W.D.N.Y. Apr. 6, 2020)_ (quoting _Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997)_).

Although Count 2 is the only count that mentions _42 U.S.C. § 1983_ in the title of the count, all parties view several other counts as including **[*23]** _§ 1983_ claims. The court considers the plausibility of each of the possible federal claims below.

## A. Count 1—_§ 1983_ Excessive Force

While it is labeled as a "negligence" claim, Count 1 includes an allegation that Defendants subjected Mr. Powell to "an unreasonable and excessive use of force" in violation of his constitutional rights. (Doc. 1-1 ¶ 52.)[5] _HN10_[⬆] "The right not to be subject to excessive force derives from the _Fourth Amendment_ for arrestees, the _Eighth Amendment_ for prisoners incarcerated for a criminal conviction, and the _Fifth_ or _Fourteenth Amendment_ for pretrial detainees and individuals who have not been arrested." _Abujayyab v. City of New York, No. 15 Civ. 10080 (NRB), 2018 U.S. Dist. LEXIS 140914, 2018 WL 3978122, at *4 (S.D.N.Y. Aug. 20, 2018)_ (citing _Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018)_). Mr. Powell cites all four of these Amendments (Doc. 1-1 ¶ 52), but only the _Fourth_ and _Fourteenth Amendments_ apply to his excessive-force claim.[6]

_HN12_[⬆] The standards applicable to excessive-force claims under the _Fourth_ and _Fourteenth Amendments_ are "largely the same .... Both relate to the objective reasonableness of the defendants' use of force . . . ." _Casiano v. Ashley, 515 F. Supp. 3d 19, 25 (W.D.N.Y. 2021)_ (citing _Kingsley v. Hendrickson, 576 U.S. 389, 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015)_). Proper application of this objective test requires "careful attention to the facts and circumstances of each particular case." _Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)_. Courts consider factors such as: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to **[*24]** temper or to limit the amount offeree; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." _Kingsley, 576 U.S. at 397_.

"Because of its intensely factual nature, the question of whether the use offeree was reasonable under the circumstances is generally best left for a jury to decide." _Oakley v. Dolan, 980 F.3d 279, 284 (2d Cir. 2020)_ (quoting _Holland v. City of Poughkeepsie, 90 A.D.3d 841, 935 N.Y.S.2d 583, 588 (N.Y. App. Div. 2011)_). "Even in the arrest context, the reasonableness of the force used is often a jury question." _Id._ "These principles apply with even greater force at the motion to dismiss stage, where a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes." _Id._

The County and City Defendants raise three arguments against Mr. Powell's excessive-force claims. First, they assert that Mr. Powell's allegations are conclusory. Second, they argue that the allegations fail to state a plausible excessive-force claim. Third, Defendants argue that the Complaint lacks allegations of personal involvement by the named individual supervisory officers.

---

[5] In addition to excessive force, Count 1 refers to alleged failures to provide adequate medical care, failure to supervise, failure to intervene, unlawful arrest, and other alleged wrongs. The court considers the _§ 1983_ excessive-force claim here and other aspects of the _§ 1983_ claim below.

[6] _HN11_[⬆] The _Fifth Amendment_ does not apply because it

---

"governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors." _Gordon v. Semrug, No. 14-CV-324S, 2017 U.S. Dist. LEXIS 78275, 2017 WL 2241966, at *6 n.6 (W.D.N.Y. May 23, 2017)_ (quoting _Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005)_). Here, none of the defendants are alleged to be federal officials. The _Eighth Amendment_ protects prisoners incarcerated for a criminal conviction, _Edrei, 892 F.3d at 533_; it does not apply here because Mr. Powell was not an incarcerated prisoner at any relevant time.

2022 U.S. Dist. LEXIS 99749, *24

## 1. Allegations of Force Used

Defendants argue that "minimal and reasonable force was used to restrain [Mr. Powell] and take him into custody." (Doc. 9-6 at 24; Doc. 14-9 [*25] at 31.) _HN13_[⬆] The court is declining to consider the officers' declarations that Defendants cite in support of this contention, Still, the court need not credit "bare, conclusory allegation[s]" in the Complaint on a motion to dismiss. _Smith v. Fischer, No. 13-CV-6127-FPG, 2016 U.S. Dist. LEXIS 67403, 2016 WL 3004670, at *13 (W.D.N.Y. May 23, 2016)_ (citing _Ashcroft v. Iqbal, 556 U.S. 662, 680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_). Defendants argue that Mr. Powell's allegations are conclusory because he "fails to state with any specificity how he was battered, grabbed, kneed, yanked, or thrown to the ground during the course of his arrest, or when such acts occurred during the course of the arrest" and also "fails to specify which of the named defendants committed these alleged acts during the course of his arrest." (Doc, 9-6 at 23; Doc. 14-9 at 30-31.) Mr. Powell insists that he "thoroughly pled what took place." (Doc. 13-1 at 19; Doc. 20-2 at 22.)

For the reasons discussed above, Mr. Powell is not required to plead the role that each law enforcement officer played in alleged brutality committed by a group of officers. The court is also not persuaded that the Complaint is deficient for failing to include more details about the alleged physical contact or the precise order in which it occurred. The Complaint includes adequate details about the [*26] officers' alleged physical conduct during the arrest; Mr. Powell asserts that officers "repeatedly grabbed, kneed, yanked his arms, threw him to the ground, [and] placed handcuffs on him extremely tight." (Doc. 1-1 ¶ 27.)

This goes beyond the type of conclusory allegation of "assault" or "battery"—without supporting facts—that would be inadequate. _Hall v. City of New York, No. 99 CIV. 979(GEL), 2001 U.S. Dist. LEXIS 13569, 2001 WL 1029046, at *5 n.6 (S.D.N. Y. Sept. 5, 2001)_; see also _Youngblood v. City of New York, No. 15 Civ. 3541(AT)(HBP), 2016 U.S. Dist. LEXIS 92313, 2016 WL 3919650, at *4 (S.D.N.Y. June 27, 2016)_ (plaintiff failed to plead any facts describing "the nature of the force used"). _HN14_[⬆] The court is mindful that "[n]ot every push or shove amounts to a _Fourth Amendment_ violation. Indeed, de minimis use of force will rarely suffice to state a Constitutional claim." _Forbes, 2020 U.S. Dist. LEXIS 72655, 2020 WL 1963139, at *4_ (cleaned up). But drawing all reasonable inferences in

Mr. Powell's favor, the court concludes that the Complaint alleges that officers used more than de minimis force during the arrest. _Cf. Oakley, 980 F.3d at 283_ ("When a plaintiff alleges that he was 'thrown to the ground' by actions that 'greatly exceeded the amount offeree that was necessary' and 'clearly exceeded the bounds of reasonable behavior,' and that he 'has suffered and continues to suffer harm,' the reasonable inference to be drawn is that he has been subjected to an unreasonable amount of force.").

The circumstances alleged are also different [*27] from those in _Johnson v. City of New York, 940 F. Supp. 631 (S.D.N.Y. 1996)_. In that case, the plaintiff claimed that a police officer used excessive force by handcuffing him and leaving him handcuffed for approximately 4-5 hours, where the plaintiff complained that the handcuffs were too tight and he sought and received treatment for injury to his hands following his release from custody. _Id. at 637_. The court concluded that the officer was entitled to qualified immunity on the excessive-force claim. _Id._ But the court did not find the plaintiff's allegations about the facts to be conclusory.

## 2. Injuries Caused

_HN15_[⬆] A plaintiff claiming excessive force "must allege that he sustained an injury." _Forbes, 2020 U.S. Dist. LEXIS 72655, 2020 WL 1963139, at *4_. "Conclusory allegations of 'physical and emotional injuries ... are no more than labels and conclusions and do not plausibly state an excessive force claim.'" _Bowers v. City of Salamanca, No. 20-CV-1206-LJV, 2021 U.S. Dist. LEXIS 129406, 2021 WL 2917672, at *9 (W.D.N. Y. July 12, 2021)_ (alteration in original) (quoting _Youngblood, 2016 U.S. Dist. LEXIS 92313, 2016 WL 3919650, at *4_). "[T]here is no threshold degree of injury a plaintiff must allege in order to successfully pursue an excessive force claim." _Jackson v. Mastrangelo, No. 6:17-CV-06448 EAW, 582 F. Supp. 3d 91, 2022 U.S. Dist. LEXIS 16890, 2022 WL 274043, at *6 (W.D.N.Y. Jan. 31, 2022)_.

As noted above, the Complaint includes an allegation that as a result of Incidents 1 and 2, Mr. Powell was "injured internally, externally, and permanently in and about the face, head, back, chest, shoulders, [*28] limbs, torso, and nervous system, so that he became and will continue to be disabled and will continue to suffer pain and discomfort, distress, and psychological adjustment." (_Id._ ¶ 49.) Mr. Powell alleges that as a result of his injuries he "required the services of

2022 U.S. Dist. LEXIS 99749, *28

physicians, surgeons, nurses, hospitals, and medicines and will continue to incur such expenses in the future." (*Id.* ¶ 51.) The Complaint also alleges that he suffered "severe, painful, permanent and personal injuries; was rendered sick, sore lame and disabled, and suffered a loss of enjoyment and quality of life." (*Id.* ¶ 85.)

These descriptions do not distinguish which injuries resulted from force applied by law enforcement officers versus force Mr. Powell used himself. In the present context, the court draws all reasonable inferences in Mr. Powell's favor. Doing that, the court can infer that at least some of the injuries described were the result of force applied by law enforcement officers. Similarly, the Complaint goes beyond a mere conclusory allegation of "physical and emotional injuries" and alleges internal and external injuries to specific locations of Mr. Powell's body and ongoing pain. That is sufficient **[*29]** at this stage of the case. *Cf. Bowers, 2021 U.S. Dist. LEXIS 129406, 2021 WL 2917672, at *9* (denying motion to dismiss excessive-force claims where the plaintiff alleged torn muscle and tendon plus shoulder and spine injuries).

**3. Personal Involvement**

*HN16*[⬆] To state a claim under *§ 1983*, a plaintiff must plead "that each Government-official defendant, through the official's own actions, has violated the Constitution." *Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020)* (quoting *Iqbal, 556 U.S. at 676*). The County Defendants argue that Mr. Powell does not allege that Sheriff Quattrone or Undersheriff Braley used any force against him. (Doc. 9-6 at 23.) Similarly, the City Defendants argue that the Complaint lacks any allegation that Chief Jackson used any force against Mr. Powell. (Doc. 14-9 at 31.)

The court agrees with Defendants that the Complaint lacks any allegations that Sheriff Quattrone, Undersheriff Braley, or Chief Jackson personally used any physical force on Mr, Powell at any relevant time. There are no allegations that those supervisory law enforcement officers were even present for any of the alleged events, and no allegations from which a reasonable factfinder could draw that inference. Mr. Powell's assertion that the incidents "involved CHAUTAUQUA COUNTY SHERIFFS and JAMESTOWN POLICE OFFICERS" (Doc. 1-1 ¶ 26) is **[*30]** insufficient to plausibly allege that Sheriff Quattrone, Undersheriff Braley, or Chief Jackson personally used any physical force against Mr. Powell.

*See Green v. Garcia, No. 18-CV-1745 (KMK), 2020 U.S. Dist. LEXIS 55164, 2020 WL 1467359, at *5 (S.D.N.Y. Mar. 25, 2020)* (dismissing excessive force claims against certain officers because plaintiff failed to plead that "each of them was individually present during the alleged assault"). The court will therefore dismiss the *§ 1983* excessive-force claims against those individual defendants.

**B. Count 2—*§ 1983 Monell* Claim**

Count 2 is entitled "Violation of Federal Civil Rights Municipal Liability: *42 U.S.C. § 1983*." (Doc. 1-1 at 22.) It includes the following allegations. Mr. Powell asserts "upon information and belief" that prior to Incidents 1 and 2:

- "[T]he defendants had notice of the defendants employees['] pattern and practice of using unconstitutionally excessive force and assaults against other civilians in the course of an unlawful arrest and members of the public while in their capacity as police officers, including but not limited to failing to treat medical conditions and preventing self harm"; and

- "[T]he defendants had received complaints and service of prior lawsuits that the defendant employees engaged in a pattern and practice of using unconstitutionally excessive **[*31]** force assaulting civilians, and failing to treat medical conditions in the course of unlawful arrests and members of the general public in the course of their duties as police officers including but not limited to failing to treat medical conditions and preventing self harm."

(Doc. 1-1 ¶¶ 63-64.) Mr. Powell further asserts "upon information and belief" that at all relevant times it was "the policy and custom of the defendants" to:

- "[F]ail to adequately train and supervise its employees relating to the use of force including but not limited to failing to treat medical conditions and preventing self harm";
- "[O]verlook, excuse, and disregard unprovoked acts of violence by its employees in the course of their duties as police officers, including but not limited to failing to treat medical conditions and preventing self harm";
- "[T]olerate the indiscriminate use of excessive force against civilians in the course of unlawful arrests without reference to a reasonable use-of-force continuum and without consideration of recourse to less deadly use [of] force, and to also

2022 U.S. Dist. LEXIS 99749, *31

fail to treat medical conditions and prevent self harm";

• "[T]olerate and encourage the use of excessive force and assault **[\*32]** in dealing with civilians in the course of unlawful arrests in the course of their duties as police officers, including but not limited to failing to treat medical conditions and preventing self harm."

(*Id.* ¶¶ 65-68.)

Defendants assert—and Mr. Powell agrees—that Count 2 is a claim against the municipal entity defendants under *Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. *HN17*[⬆] "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y. C. Dep't of Educ. , 982 F.3d 86, 97 (2d Cir. 2020)*. Consistent with their positions on Mr. Powell's other claims, Defendants argue that the Complaint fails to plausibly allege any deprivation of a constitutional right. (Doc. 9-6 at 18; Doc. 14-9 at 19.) But the court focuses here on Defendants' additional argument that the *Monell* claim fails for lack of allegations plausibly establishing any municipal policy or custom. (Doc. 9-6 at 18; Doc. 14-9 at 20-21.)

Defendants argue that the Complaint lacks sufficient factual details to support an inference of any relevant municipal policy or custom, and that Mr. Powell cannot establish such an inference by relying only on the events during his arrest. (*See* Doc. 9-6 at 18; Doc. 14-9 at 21.) Mr. Powell argues that: (1) **[\*33]** he can show a municipal policy or custom by showing an adequately persistent and widespread practice; (2) his allegations satisfy the less stringent pleading standards for failure-to-train claims under *Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004)*; and (3) the court need not rely on the number of incidents but must instead assess the totality of the circumstances. (Doc. 13-1 at 13; Doc. 20-2 at 18-19.) In reply, Defendants insist that the Complaint fails to plausibly allege *Monell* liability. (Doc. 18 1 at 6; Doc. 23 at 3.)

## 1. Inference of Policy or Custom from Similar Incidents of Misconduct

*HN18*[⬆] Mr. Powell correctly observes that "[t]o show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Patterson, 375 F.3d at*

*226*. "It is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law . . .'" *Id.* (quoting *Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992)*). Thus "a plaintiff can rely on allegations of similar misconduct to plead that there was a widespread practice, policy or custom." *DiPippo v. Cnty. of Putnam, No. 17-cv-7948 (NSR), 2019 U.S. Dist. LEXIS 33071, 2019 WL 1004152, at \*8 (S.D.N.Y. Feb. 28, 2019)*. And, depending on the particular circumstances, a plaintiff need not present a large number of similar incidents. *See id.* (courts evaluating *Monell* claims should consider "the **[\*34]** number of instances alleged *relative to the size* of the [law enforcement] department and relative to the time frame at issue").

However, apart from relying on these statements of *law*, Mr. Powell points to no allegations *of fact* referencing even one specific incident similar to the alleged events of December 10, 2020. The Complaint's allegations "upon information and belief" in paragraphs 63-64 suggest that Mr. Powell seeks to rely on prior incidents and complaints of "defendant employees" engaging in "excessive force and assaults," failing to treat medical conditions, and failing to prevent self-harm. (Doc. 1-1 ¶¶ 63-64.) But the Complaint is entirely conclusory regarding these alleged prior incidents. Such unspecified prior incidents—without any details at all—are insufficient. *See, e.g., Jackson v. City of Syracuse, No. 5:20-CV-1215 (GTS/ML), 2021 U.S. Dist. LEXIS 157578, 2021 WL 3710494, at \*6 (N.D.N.Y. Aug. 20, 2021)* (rejecting plaintiff's attempt to establish municipal liability based on a theory of alleged "numerous" violations in the prior six years against unidentified minorities by unidentified officers; reasoning that the complaint lacked "facts plausibly suggesting how many (if any) of the complaints alleging the violations were found to be substantiated, when they occurred, and under what circumstances"). **[\*35]**

## 2. Inference of Policy or Custom from Failure to Train

Mr. Powell also argues that a policy or custom can be inferred from a failure to train. (Doc. 13-1 at 13; Doc. 20-2 at 18.) *HN19*[⬆] Indeed, such an inference can be drawn where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Patterson, 375 F.3d at 226* (quoting *Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)*). Mr. Powell

2022 U.S. Dist. LEXIS 99749, *35

relies on _Ferrari v. County of Suffolk, 790 F. Supp. 2d 34 (E.D.N.Y. 2011)_, for the proposition that since plaintiffs have no realistic way to learn about a municipality's training programs without discovery, they "'need only plead that the city's failure to train caused the constitutional violation,' in order to plead municipal liability." _Id. at 45_ (quoting _Amnesty Am., 361 F.3d at 130 n.10_).

Notably, the Second Circuit decided _Amnesty America_ in 2004—before the Supreme Court decided _Iqbal_ (2009) and _Twombly_ (2007). **HN20[⬆]** And since the _Ferrari_ decision, the Second Circuit has clarified that "[w]hile it may be true that _§ 1983_ plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, . this does not relieve them of their obligation under _Iqbal_ to plead a facially plausible claim." _Simms v. City of New York, 480 F. App'x 627, 631 n.4 (2d Cir. 2012)_ (summary order). "There are a number of ways that plaintiffs can plausibly allege a _§ 1983_ claim for municipal liability [*36] premised on a failure to train theory without having detailed knowledge of a municipality's training programs." _Id._ The court therefore respectfully declines to follow _Ferrari_ insofar as that case suggests that the pleading standard articulated in _Amnesty America_ could continue to apply after _Iqbal_ and _Twombly_.

In short, as the district court stated in _Simms_, Mr. Powell must provide "more than a simple recitation of [his] theory of liability, even if that theory is based on a failure to train." _Simms v. City of New York, No. 10-CV-3420 (NGG)(RML), 2011 U.S. Dist. LEXIS 115949, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011)_. The Complaint fails to do that. Since all of Mr. Powell's arguments for inferring a policy or custom fail, Defendants are entitled to dismissal of the _Monell_ claim. This conclusion also requires dismissal of Count 3 ("Respondeat Superior/Vicarious Liability") as duplicative of the _Monell_ claim insofar as Count 3 seeks to hold the municipal defendants liable for a _§ 1983_ claim. _See Monell, 436 U.S. at 691_ ("[A] municipality cannot be held liable under _§ 1983_ on a _respondeat superior_ theory.").

## C. _Section 1983_ Supervisory Liability

Mr. Powell alleges that the defendants "failed to properly supervise their employees and the participating officers in their activities." (Doc. 1-1 ¶ 52.) The court interprets the Complaint as seeking to impose _§ 1983_ supervisory liability on Sheriff Quattrone, Undersheriff [*37] Braley, and Chief Jackson. Since the Complaint names each of

those defendants in their individual and official capacities (Doc. 1-1 at 5), the court considers both such capacities here.

### 1. Official Capacity

There can be no plausible claims against Sheriff Quattrone, Undersheriff Braley, and Chief Jackson in their official capacities because, for the reasons discussed above, Mr. Powell has failed to plead a viable _Monell_ claim against any municipal defendant. _See Ortiz v. Wagstaff, 523 F. Supp. 3d 347, 361 (W.D.N.Y. 2021)_ ("_Section 1983_ claims against municipal employees sued in their official capacity are treated as claims against the municipality itself. Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable _Monell_ claim against the municipality." (quoting _Seri v. Town of Newtown, 573 F. Supp. 2d 661, 671 (D. Conn. 2008)_)).

Mr. Powell argues that his official-capacity claims are not duplicative of his _Monell_ claim because the supervisory officers can be held liable on a theory of respondeat superior. (Doc. 20-2 at 16.) In support, he cites this court's statement in _Davis v. Erie Cnty. Sheriff Dep't, No. 17-CV-955, 2019 U.S. Dist. LEXIS 173798, 2019 WL 4926289, at *1 (W.D.N.Y. Oct. 7, 2019)_, that a county "may be held liable for acts committed by the Sheriff and his deputies." But the plaintiff in _Davis_ brought a claim under _Title VII of the Civil Rights Act of 1964_. In contrast, [*38] the court is considering here the plausibility of a _§ 1983_ supervisory liability against Sheriff Quattrone, Undersheriff Braley, and Chief Jackson. **HN21[⬆]** Since claims against the officers in their official capacities are treated as claims against the municipalities themselves, respondeat superior does not authorize a _§ 1983_ claim against those defendants in their official capacities. _See Monell, 436 U.S. at 691_ ("[A] municipality cannot be held liable under _§ 1983_ on a _respondeat superior_ theory.").

### 2. Personal Capacity

**HN22[⬆]** To state a personal-capacity claim under _§ 1983_, Mr. Powell must allege facts showing Defendants' personal involvement in the alleged constitutional deprivations. _See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013)_ ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

2022 U.S. Dist. LEXIS 99749, *38

prerequisite to an award of damages under _§ 1983_." (quoting _Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)_); _Pagan v. City of Rochester, No. 17-CV-6073-CJS, 2017 U.S. Dist. LEXIS 148454, 2017 WL 4042545, at *7 (W.D.N.Y. Sept. 13, 2017)_ (personal involvement required to establish _§ 1983_ liability against police chief in his personal capacity). Here, Sheriff Quattrone, Undersheriff Braley, and Chief Jackson argue that the Complaint fails to adequately allege their personal involvement in any of the alleged violations. (Doc. 9-6 at 19; Doc. 14-9 at 17.) Mr. Powell maintains that he has adequately alleged that each supervisory **[*39]** officer violated his constitutional rights by their individual actions. (Doc. 13-1 at 15; Doc. 20-2 at 16.)

_HN23_[⬆] Before the Supreme Court's _Iqbal_ decision, the Second Circuit identified five categories of evidence to show the personal involvement of a supervisory defendant:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

_Colon, 58 F.3d at 873_. But the Second Circuit has since held that "after _Iqbal_, there is no special rule for supervisory liability." _Tangreti, 983 F.3d at 618_. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" _Id._ (quoting _Iqbal, 556 U.S. at 676_). "The factors necessary to establish a **[*40]** _§ 1983_ violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." _Id._ (cleaned up).

Mr. Powell relies on _Wilson v. Soucy, No. 3:18-cv-1680 (AWT), 2020 U.S. Dist. LEXIS 177828, 2020 WL 5764117, at *6 n.1 (D. Conn. Sept. 28, 2020)_, for the proposition that the _Colon_ analysis still applies in cases where the claim does not require a showing of discriminatory intent. But _Wilson_ was decided before _Tangreti_, and the Second Circuit in _Tangreti_ rejected the theory that the _Colon_ analysis still applies where the

constitutional claim does not require a showing of discriminatory intent, _Tangreti, 983 F.3d at 617_ & n.5. Therefore, even if Mr. Powell's claims do not require him to show discriminatory intent, the _Colon_ analysis is inapplicable.

Applying the _Tangreti_ analysis, the court agrees with Defendants that the Complaint fails to allege the personal involvement of Sheriff Quattrone, Undersheriff Braley, and Chief Jackson. Notably, the Complaint mentions those individuals by name only in the caption and in a section introducing the parties. The allegation that defendants "faile[d] to adequately train and supervise [their] employees relating to the use of force including but not limited to failing to treat medical conditions and preventing self harm" (Doc. 1-1 ¶ 65) is conclusory and insufficient. See _Guzman v. McCarthy, No. 9:21-CV-1192 (MAD/ATB), 2022 U.S. Dist. LEXIS 39038, 2022 WL 630873, at *3 (N.D.N.Y. Mar. 4, 2022)_ **[*41]** (mere allegation that prison superintendent failed to train his officers to protect inmates from harm was "not enough to plausibly allege the [superintendent's] personal involvement").

Similarly, the conclusory allegation that Sheriff Quattrone, Undersheriff Braley, and Chief Jackson "established a policy or custom of deliberate indifference to unlawful conduct" (Doe. 1-1 ¶ 70) is insufficient to state a plausible claim of _§ 1983_ supervisory liability against those officers. _HN24_[⬆] "Although after _Tangreti_ courts must resolve claims against supervisor-defendants without reference to _Colon's_ special standards for supervisory liability, the legal standard under the fourth _Colon_ factor is virtually identical to the _Fourteenth Amendment_ deliberate-indifference standard applicable here." _Falls v. (Police Officer) Detective Michael Pitt, No. 16-CV-8863 (KMK), 2021 U.S. Dist. LEXIS 58197, 2021 WL 1164185, at *34 (S.D.N.Y. Mar. 26, 2021)_. Here, the Complaint's allegation that Defendants received complaints in prior (unspecified) lawsuits (Doc. 1-1 ¶ 64) is insufficient to show that the supervisory defendants knew or should have known of a risk of unlawful conduct, or that they deliberately or recklessly disregarded that risk. See _id._ (citing _Gantt v. Ferrara, No. 15-CV-7661 (KMK), 2018 U.S. Dist. LEXIS 166689, 2018 WL 4636991, at *7 (S.D.N.Y. Sept. 27, 2018)_) (without details of other complaints, allegations were insufficient to make out a claim of supervisor's deliberate **[*42]** indifference). And as discussed above, the Complaint lacks any sufficiently specific allegations from which to infer a policy or custom that might have caused the deprivation of a constitutional right.

2022 U.S. Dist. LEXIS 99749, *42

## D. Count 12—§ 1983 Failure to Intervene

In Count 12, Mr. Powell alleges that "defendants assumed a duty to protect plaintiff from the striking, battering and assault by the defendants and their failure to provide plaintiff with medical treatment and to protect him from self harm" and that "defendants did not take any steps to protect the plaintiff from the assault, in fact such individuals stood idly by and watched as plaintiff was repeatedly struck." (Doc. 1-1 ¶¶ 153, 155.) Mr. Powell further alleges that "defendants also did not take any steps to protect plaintiff from defendants['] failure to provide plaintiff with medical treatment and to protect him from self harm." (Id. ¶ 155.)

Defendants seek dismissal of Count 12 on the grounds that the Complaint does not specify which defendants committed the alleged acts and omissions. (Doc. 9-6 at 29; Doc. 14-9 at 25.) The court rejects that argument for the reasons discussed above regarding "group pleading." See supra Part III. HN25[⬆] In the context of an [*43] alleged assault by a group of law enforcement officers, the plaintiff is not required to set forth in detail the actions and omissions of each officer. See Bryant, 2022 U.S. Dist. LEXIS 6392, 2022 WL 119184, at *10-12 (denying motion to dismiss failure-to-protect/intervene claims premised on multiple officers' alleged use of excessive force).

The County Defendants further seek dismissal of Count 12 on the grounds that "Plaintiff has failed to plausibly allege a constitutional injury in the first place." (Doc. 9-6 at 30.) HN26[⬆] It is true that to prevail on a failure-to-intervene claim, "a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene." Grinols v. Beers, 532 F. Supp. 3d 95, 109 (W.D.N.Y. 2021) (quoting Walker v. City of New York, No. 11-CV-00314(CBA)(JMA), 2014 U.S. Dist. LEXIS 197314, 2014 WL 12652345, at *12 (E.D.N.Y. Sept. 3, 2014)); see also Matthews v. City of New York, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim."). But since the court has denied Defendants' motion to dismiss the excessive-force claim, supra Section V.A., there is a plausible underlying claim of a constitutional violation. The court will not dismiss Count 12 against the County Defendants on this basis.

Finally, the City Defendants assert that Count 12 "is baseless and without merit as the Plaintiff was attended to numerous [*44] times in a relatively short time period." (Doc. 14-9 at 26.) But for that argument the City Defendants rely on extrinsic evidence that the court is excluding from consideration in the present context. (See id.) The court will not dismiss Count 12 against the City Defendants on this basis.

## E. Count 13—§ 1983 Unlawful Arrest

The court interprets Count 13 as a claim for false arrest under § 1983. HN27[⬆] "The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." Santiago v. City of Rochester, 481 F. Supp. 3d 152, 156 (W.D.N.Y. 2020) (quoting Maron v. Cnty. of Albany, 166 F. App'x 540, 541 (2d Cir. 2006) (summary order)). "[U]nder New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Id. (alteration in original) (quoting Maron, 166 F. App'x at 541). "'The existence of probable cause to arrest' renders the confinement privileged 'and is a complete defense to an action for false arrest.'" Id. at 156-57 (quoting Horvath v. City of New York, No. 12 CV 6005(RJD)(JMA), 2015 U.S. Dist. LEXIS 51029, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015)).

HN28[⬆] "[A]n arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause . . . ." Martinetti v. Town of New Hartford Police Dep't, 12 F. App'x 29, 32 (2d Cir. 2001) (summary order). Here, the court is taking notice of the December 9, 2020 [*45] warrant for Mr. Powell's arrest issued by Jamestown City Court Judge John L. LaMancuso. (Doe. 9-2.) Although a plaintiff can demonstrate that his right not to be arrested without probable cause was violated "where the officer submitting the probable cause affidavit acted with reckless disregard for the truth," Martinetti, 12 F. App'x at 32 (cleaned up), Mr. Powell does not attack the probable cause affidavit. The court therefore concludes that Defendants are entitled to dismissal of Count 13.

## F. Count 14—§ 1983 Deliberate Indifference to Medical Needs

Count 14—entitled "Failure to Treat"—asserts that Defendants were deliberately indifferent to Mr. Powell's right "to receive proper and adequate medical evaluation and attention." (Doe. 101 ¶ 175.) All

2022 U.S. Dist. LEXIS 99749, *45

Defendants argue that Mr. Powell did in fact receive emergency medical evaluations after his arrest. (Doc. 9-6 at 25; Doc. 14-9 at 27.) But since those arguments rely on materials outside of the Complaint that the court is excluding, Defendants are not entitled to dismissal of Count 14 on this basis. The court therefore turns to Defendants' other arguments against Count 14.

**1. Personal Involvement of the County Defendants**

The County Defendants argue for dismissal of Count 14 [*46] to the extent that it seeks to hold them liable "for any purported deliberate indifference to medical needs while [Mr. Powell] was in the custody of the City Defendants in the JPD squad car and the JPD's Central Booking Bureau." (Doc. 9-6 at 24-25.) Mr. Powell does not appear to contest the point that no County Defendant was present for any of the events after he was placed in the JPD squad car. But he notes that the Complaint *does* allege that County Defendants were present at the time of his arrest, at which time he allegedly made statements about his mental state and requested that he be taken to a hospital for mental health treatment. (Doc. 13-1 at 20.) The court therefore concludes that there is no dispute that the County Defendants are entitled to only the *partial* dismissal of Count 14 that they seek.

**2. Objective Serious Need and Subjective Deliberate Indifference**

*HN29*[⬆] The *Due Process Clause* requires "the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)*. "A pretrial detainee may establish a *§ 1983* claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate [*47] indifference to the challenged conditions." *Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)*.

> This means that a pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong"—perhaps better classified as a "mens rea prong" or "mental element prong"— showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Id.* Defendants argue that Mr. Powell's allegations are insufficient as to both the "objective" and "subjective" prongs. (Doc. 9-6 at 27; Doc. 14-9 at 28.)

*HN30*[⬆] Regarding the objective prong, failure to attend to a medical condition can be a constitutional violation "depending on the facts of the particular case." *Tolbert v. Sullivan, No. 19-CV-1691-JLS, 2021 U.S. Dist. LEXIS 83435, 2021 WL 1721025, at *9 (W.D.N.Y. Apr. 29, 2021)* (quoting *Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000)*); *see also Durr v. Slator, 558 F. Supp. 3d 1, 42 (N.D.N. Y. 2021)* (pretrial detainee alleging deliberate indifference to a need for medical care must show a "sufficiently serious need"). "In the context of mental health needs, 'propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as sufficiently serious.'" *Tolbert, 2021 U.S. Dist. LEXIS 83435, 2021 WL 1721025, at *9* (quoting *Young v. Choinski, 15 F. Supp. 3d 194, 199 (D. Conn. 2014)*). Here, the Complaint includes multiple allegations that Mr. Powell expressed suicidal [*48] ideation and that he engaged in self-harm. The allegations plausibly establish sufficiently serious mental health conditions and safety needs of which defendants were aware. *See Kelsey v. City of New York, No. 03-CV-5978(JFB)(KAM), 2006 U.S. Dist. LEXIS 91977, 2006 WL 3725543, at *4 (E.D.N.Y. Dec. 18, 2006)* (arrestee who exclaimed "shoot me, kill me" and tried to grab officer's gun had a "right to care and protection, including protection from suicide").

*HN31*[⬆] As to the subjective prong, the court considers whether the allegations plausibly indicate that defendants knew and disregarded an "excessive risk to health or safety." *Darnell, 849 F.3d at 35*. Mr. Powell does not allege that Defendants' conduct put him at excessive risk of death by suicide. *Cf. Kelsey, 2006 U.S. Dist. LEXIS 91977, 2006 WL 3725543, at *4* ("In the detainee suicide context, the relevant inquiry is whether defendants were deliberately indifferent to the medical need of the detainee to be protected from himself."). Instead, Mr. Powell claims that Defendants failed to protect him from injuring himself and failed to provide a mental health evaluation or send him to a hospital for mental health treatment. The court therefore focuses on Mr. Powell's rights to mental health care and protection from non-lethal self-harm during his arrest and detention.

For present purposes, the court takes it to be true that Mr. Powell's mental health [*49] condition was serious and deteriorating during Incidents 1 and 2. Some courts

2022 U.S. Dist. LEXIS 99749, *49

have held that delaying a mental health screening for recently arrested detainees could be "deliberately indifferent to the possibility that some combative mentally ill detainee might suffer harm as a result of being jailed without receiving an immediate screening." _Lemire v. Cal. Dept of Corr. & Rehab., 726 F.3d 1062, 1078 (9th Cir. 2013)_ (citing _Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1190 (9th Cir. 2002)_). But the mentally ill individual in _Lemire_ died of apparent suicide and the manic-depressive detainee in _Gibson_ died after a heart attack. Defendants argue that Mr. Powell has not alleged how their alleged failure to provide immediate mental health screening or treatment caused him any injury. (Doc. 9-6 at 26; Doc. 14-9 at 28.)

Mr. Powell does not attempt to quarrel with the requirement that he allege causation and damages to state a _§ 1983_ claim. HN32[↑] Those are required elements of the claim. _See Ctr. For Bio-Ethical Reform, Inc. v. Black, No. 13-CV-581A, 2013 U.S. Dist. LEXIS 192703, 2013 WL 12099855, at * (W.D.N.Y. Oct. 1, 2013)_ ("To state a claim under _Section 1983_, a plaintiff must show: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; [and] (4) damages." (alteration in original) (quoting _Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009)_)), _report and recommendation adopted in part 234 F. Supp. 3d 423 (W.D.N.Y. 2017)_; _see also Cash v. Cnty. of Erie, 654 F.3d 324, 341 (2d Cir. 2011)_ (affirming jury instruction in _§ 1983_ case describing causation as the "third element" of the claim; [*50] _Broculgio v. Proulx, 478 F. Supp. 2d 309, 322-23 (D. Conn. 2007)_ ("To prevail on a _section 1983_ claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." (citing _42 U.S.C. § 1983_)).[7]

As noted above, the Complaint alleges a variety of physical and mental injuries. _See supra_ Section V.A.2. The allegations do not distinguish which physical injuries resulted from force applied by law enforcement officers versus force that Mr. Powell used himself. But, drawing all reasonable inferences in Mr. Powell's favor,

the court concludes that he has plausibly alleged that at least some of his self-inflicted physical injuries could have been avoided if he received mental health treatment earlier during the course of the events alleged in Incidents 1 and 2. Similarly, drawing all reasonable inferences in Mr. Powell's favor, the court concludes that he has plausibly alleged that his mental health degenerated in a significant way due to a delay in treatment on December 10, 2020.

The court has also considered Mr. Powell's right to protection from non-lethal self-harm. The Complaint alleges that Defendants "allowed" Mr. Powell to hit his head on objects during the arrest and before [*51] he was brought into the police station (Doc. 1-1 ¶ 31, 32, 34), that they improperly handcuffed him to a bench instead of putting him in a restraint chair to prevent him from injuring himself (_id._ ¶ 36), and that after the arraignment they "allowed" him to hit his head on metal bars (_id._ ¶ 44) and to bang his head and neck on the back of the restraint chair (_id._ ¶ 45). Taking Mr. Powell's allegations as true and granting him all reasonable inferences, the court concludes that he has plausibly alleged that the defendant officers were deliberately indifferent to Mr. Powell's medical need to be protected from injuring himself.

## G. Count 15—_§ 1983_ or _§ 1985_ Conspiracy

Count 15—labeled "Conspiracy"—is arguably a claim for conspiracy under _42 U.S.C. §§ 1983_ or _1985_. The parties have not briefed the possible application of _§ 1985_, and have instead focused only on the plausibility of a _§ 1983_ conspiracy claim. HN33[↑] "Conspiracy under _§ 1983_ and conspiracy under _§ 1985_ are distinct causes of action with different elements." _Nichols v. Livingston Cnty., No. 6:18-cv-06669 EAW, 2019 U.S. Dist. LEXIS 142201, 2019 WL 3935998, at *9 (W.D.N.Y. Aug. 20, 2019)_ (quoting _Hamilton v. City of N.Y., No. 15-CV-4574 (CBA) (SJB), 2019 U.S. Dist. LEXIS 56606, 2019 WL 1452013, at *30 (E.D.N.Y. Mar. 19, 2019)_). "However, it is necessary to each of these causes of action that there has been an underlying constitutional violation." _Id._

Defendants argue that Mr. Powell has failed to [*52] allege any underlying constitutional violation. (Doc. 9-6 at 28; Doc. 14-9 at 29.) The court rejects that argument because, as discussed above, at least some of Mr. Powell's constitutional claims meet the plausibility threshold.

---

[7] In some jurisdictions causation is a component of the subjective prong. _See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)_ ("This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.").

2022 U.S. Dist. LEXIS 99749, *52

Defendants also argue that Mr. Powell's conspiracy claim is vague and conclusory. (Doc. 9-6 at 28; Doc. 14-9 at 29.) _HN34_[⬆] "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either _§ 1983_ or _§ 1985(3)_." _Trombley v. O'Neill, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013)_. Mr. Powell refers to the allegations in Count 15 (Doc. 1-1 ¶¶ 178-181) and argues that he has not yet had the opportunity to conduct discovery to reveal circumstantial evidence of a conspiracy. (Doc. 13-1 at 22; Doc. 20-2 at 25.) The County Defendants argue that, by citing the need for discovery, Mr. Powell has conceded the implausibility of his conspiracy claim. (Doc. 18-1 at 12.)

The court concludes that Mr. Powell has failed to state a plausible _§ 1983_ or _§ 1985_ conspiracy claim. The Complaint's allegations of a conspiracy are entirely conclusory—it lacks any factual details of formation of an agreement to violate Mr. Powell's rights or any specific acts in furtherance of such an agreement. (_See_ Doc. 1-1 **[*53]** ¶¶ 179-181.) Mr. Powell's request for discovery does not cure this defect in the pleading. _See Graham v. Peters, No. 13-CV-705JTC, 2013 U.S. Dist. LEXIS 156509, 2013 WL 5924727, at *5 (W.D.N.Y. Oct. 31, 2013)_ (granting motion to dismiss conspiracy claim despite plaintiff's request for discovery).

## H. Count 16—Punitive Damages

Defendants argue that punitive damages are unavailable against municipalities for _§ 1983_ claims, and that Mr. Powell is precluded from recovering punitive damages against any of the individual defendants because their conduct "did not even rise to the level of negligence." (Doc. 9-6 at 38-39; Doc. 14-9 at 33.) Mr. Powell insists that he has made "several claims against Defendants that entitle him to [punitive damages]." (Doc. 13-1 at 24.)

_HN35_[⬆] The court agrees with Defendants that "punitive damages are not available against a municipal defendant." _Jarzembek v. Cnty. of Erie, No. 1:20-cv-1796, 2021 U.S. Dist. LEXIS 100832, 2021 WL 2155442, at *2 (W.D.N.Y. May 27, 2021)_ (citing _Kentucky v. Graham, 473 U.S. 159, 167 n.13, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)_). Punitive damages can be available, however "against municipal officials named in their individual capacities." _Girard v. Howard, No. 19-CV-673S, 2021 U.S. Dist. LEXIS 84143, 2021 WL 1737758, at *5 (W.D.N.Y. May 3, 2021)_. At the motion-to-dismiss stage, Mr. Powell "needs to allege evil motive

or intent, callous indifference to justify punitive damages." _Id._ (citing _Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)_). Since Mr. Powell has alleged some plausible claims, _see supra_, the court concludes that his claim for punitive damages should **[*54]** be decided at a later stage of this litigation. _See Dixie v. Antonacci, No. 5:16-CV-1221 (FJS/TWD), 2017 U.S. Dist. LEXIS 79449, 2017 WL 2275017, at *11 (N.D.N.Y. May 24, 2017)_ (denying motion to dismiss claim for punitive damages at _Rule 12(b)(6)_ stage "because Defendant Antonacci's actions are not outside all plausible inferences of reckless indifference to Plaintiffs' rights").

## VI. State-Law Claims

### A. Count 1—Negligence

The County Defendants and the City Defendants raise different arguments for dismissal of Mr. Powell's negligence claim. The court considers those arguments in turn.

### 1. Whether the Claim is Barred by "Documentary Evidence"

Citing _N.Y. C.P.L.R. 3211(a)(1)_, the County Defendants argue that their documentary evidence "makes it clear that Plaintiff's arrest was privileged, and that the amount of force[] used by Deputy Madonia during the course of the arrest was objectively reasonable under the circumstances." (Doc. 9-6 at 32.) Mr. Powell asserts that his factual pleadings are sufficient and that the County Defendants' argument on this point improperly seeks to "flip the burden" that applies under _Rule 12(b)(6)_. (Doc. 13-1 at 8, 23.)

_HN36_[⬆] Under New York's Civil Practice Law and Rules, "[a] party may move for judgment dismissing one or more causes of action against him on the ground that . . . a defense is founded upon documentary evidence." _N.Y. C.P.L.R. 3211(a)(1)_. But New **[*55]** York's procedural rules do not apply in this case removed to federal court. _Fed. R. Civ. P. 81(c)(1)_; _see also Swain v. Brookdale Senior Living, No. 08-CV-702S, 2009 U.S. Dist. LEXIS 88835, 2009 WL 3162143, at *4 (W.D.N.Y. Sept. 27, 2009)_ ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings . . . ." (quoting _Granny Goose Foods, Inc. v. Bhd. of_

2022 U.S. Dist. LEXIS 99749, *55

*Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 436, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)*)). And even if *N.Y. C.P.L.R. 3211(a)(1)* did apply, it does not appear that the reference to "documentary evidence" would authorize consideration of the declarations and written reports that Defendants have presented here. *See N.Y. C.P.L.R. 3211(e)*; *see also* Sanford F. Young, *Conventional Wisdoms or Mistakes: The Complaint and the Response*, 76 N.Y. St. B. J. 28, 34 (2004) ("Examples of documentary evidence typically used are documents that are the subject of and contemporaneous with the events that are the subject of the complaint—*e.g.*, contracts, leases, notes, mortgages, deeds, insurance policies and the like.").[8] As stated above, the court declines to consider the extra-pleading materials that Defendants have presented.

## 2. Particularity and Group Pleading

The County Defendants further assert that the negligence claim should be dismissed under *N.Y. C.P.L.R. 3013* and *3211(a)(7)* on the grounds that the Complaint is "vague and conclusory and fails to identify which purported acts / omission are attributable to the various County Defendants as opposed [*56] to the City Defendants." (Doc. 9-6 at 32-33.) But as noted above, New York's procedural rules do not apply in this federal case. In any case, the court has already concluded that Mr. Powell's allegations are sufficiently specific and has rejected Defendants' "group pleading" arguments. *See supra* Sections ITI.A and V.A.1, 2.

## 3. Compatibility of Negligence and Intentional-Conduct Claims

The City Defendants raise a separate argument against Mr. Powell's negligence claim. They rely on this court's observation that "[u]nder New York law, '[w]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie'" *Bryant v. Ciminelli, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017)* (second alteration

---

[8] The decision in *Goshen v. Mutual Life Insurance Company of New York, 98 N.Y.2d 314, 326, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002)*, plainly fits within the limited categories of examples listed above because it involved documentation illustrating the contractual terms and conditions.

in original) (quoting *Dineen ex rel. Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)*). In the City Defendants' view, "it is clear that the conduct [Mr. Powell] complains of is based upon *intentional conduct*." (Doc. 14-9 at 15.) Mr. Powell disagrees, asserting that his claims "are not entirely premised on intentional conduct." (Doc. 20-2 at 14.)

The court agrees with the City Defendants that under *Bryant* Mr. Powell cannot proceed with a negligence claim insofar as it is premised on alleged excessive force and [*57] assault. Mr. Powell cannot recharacterize Defendants' conduct in "striking, pushing, pulling and throwing the plaintiff to the ground" (Doc. 20-2 at 14) as negligence. At the same time, Mr. Powell alleges other categories of negligence, including negligent hiring, negligent retention, and negligent training and supervision. Since those claims are asserted in separate counts, the court considers them below. The court will dismiss the "negligence" portion of Count 1 only insofar as it is premised on Defendants' alleged assault and application of excessive force. Count 1 remains in the case insofar as it is a *§ 1983* excessive-force claim against the individual defendants other than Sheriff Quattrone, Undersheriff Braley, and Chief Jackson. *See supra* Section V.A.

## B. Count 3—"Respondeat Superior/Vicarious Liability"

The court has already concluded that Count 3 must be dismissed as duplicative of the *Manell* claim insofar as Count 3 seeks to hold the municipal defendants liable for a *§ 1983* claim. *See supra* Section V.B.2. The court considers here the plausibility of the remainder of Count 3.

The County Defendants seek dismissal of Mr. Powell's vicarious liability claims under *N.Y. C.P.L.R. 321 l(a)(1)* and *3211(a)(7)*. (Doc. 9-6 at 32.) For [*58] the reasons stated above, the County Defendants are not entitled to dismissal of any claims on the basis of those state procedural rules. *See supra* Section VI.A.

The City Defendants make a different point, arguing that Count 3 should be dismissed because respondeat superior is not a stand-alone cause of action. (Doc. 14-9 at 21.) *HN37*[⬆] As this court has observed, "[r]espondeat superior is not an independent cause of action, but a theory that must attach to an underlying claim." *Casiano v. Ashley, 515 F. Supp. 3d 19, 28 (W.D.N.Y. 2021)* (quoting *Alexander v. Westbury Union*

2022 U.S. Dist. LEXIS 99749, *58

*Free Sch. Dist., 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011)*). Mr. Powell opposes dismissal of Count 3 because, he maintains, his respondeat superior claim "is attached to the claims in his Complaint." (Doc. 20-2 at 20.)

The distinction between a cause of action and a legal theory warrants the following action. The court will dismiss Count 3 insofar as it is a claim for relief. But Defendants have articulated no basis to preclude consideration of the doctrine of respondeat superior insofar as it might apply to any underlying tort claims. Accord *Doe v. Sarah Lawrence Coll., 453 F. Supp. 3d 653, 670 (S.D.N.Y. 2020)* (dismissing respondeat superior "claim for relief" but declining to dismiss "the applicability of the doctrine of Respondeat Superior").

## C. Counts 4, 5, and 6—Negligent Hiring, Retention, Training, Supervision

Defendants argue [*59] that Mr. Powell's negligent-hiring, retention, training, and supervision claims are not actionable under New York law because all employee-defendants were acting within the scope of their employment. (Doc. 9-6 at 34; Doc. 14-9 at 22.) They note that the Complaint alleges that individual defendants acted "in the course and scope" of their duties as law enforcement officers at the relevant times. (Doc. 1-1 ¶¶ 6, 11, 12.) And they rely on cases describing New York law as follows:

> [W]here the acts of 'employees' are concerned, an employer can be held *vicariously* liable under principles of respondeat superior for acts committed within the scope of the employee's employment, or may be held *directly* liable for 'negligent hiring, retention, or supervision' for acts committed outside that scope.

*Mustafa v. Povero, No. 15-CV-6714 CTS, 2017 U.S. Dist. LEXIS 153236, 2017 WL 4169339, at *7 (W.D.N.Y. Sept. 20, 2017)* (emphasis added) (quoting *Ben v. United States, 160 F. Supp. 3d 460, 476-77 (N.D.N.Y. 2016)*).

*HN38*[⬆] In New York, "conduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties." *White v. Montesano, 466 F. Supp. 3d 331, 335*

*(W.D.N.Y. 2020)* (quoting *Gore v. Kuhlman, 217 A.D.2d 890, 891, 630 N.Y.S.2d 141 (3d Dep't 1995)*). "However, an employee will be considered [*60] within the scope of his employment so long as he is discharging his duties, no matter how irregularly, or with what disregard of instructions." *Id.* (internal quotation marks omitted). Since law enforcement officers "often must use some degree of force to make arrests," municipalities can foresee that their officers will use force "given the nature of police work." *Dorsey v. City of Albany Police Dep't, No. 1:15-CV-859, 2016 U.S. Dist. LEXIS 197597, 2016 WL 11605138, at *3 (N.D.N.Y. Apr. 13, 2016)*; see also *McKnight v. City of Rochester, No. 11-CV-6328P, 2015 U.S. Dist. LEXIS 40608, 2015 WL 1462379, at *4 (W.D.N.Y. Mar. 30, 2015)* ("[C]ourts routinely dismiss negligent hiring, training and supervision claims asserted against municipalities arising out of the conduct of police officers who were acting within the scope of their employment." (citing cases)).

Here, although Mr. Powell alleges that Defendants used excessive force when they arrested him, the allegations in the Complaint—even in the light most favorable to Mr. Powell—do not plausibly suggest a departure from normal methods "so substantial as to remove the [officers'] actions from the scope of their employment." *Dorsey, 2016 U.S. Dist. LEXIS 197597, 2016 WL 11605138, at *3*. Moreover, Mr. Powell himself alleges that Defendants were acting within the course and scope of their duties. See *Mustafa, 2017 U.S. Dist. LEXIS 153236, 2017 WL 4169339, at *7* (dismissing negligent training/supervision claim where excessive-force complaint alleged that officers were acting within the scope of their employment at [*61] all times).

Mr. Powell's reliance on *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238 (N.D.N.Y. 2014), is unavailing. The court in that case stated that an employer can be held liable for negligent hiring or retention in some circumstances and that "[a] municipality may be held liable for negligently training or supervising its law enforcement officers." *Id.* at 267-68. But the *Marcano* court granted summary judgment to the defendants in that case on the negligent hiring, retention, training, and supervision claims due to lack of evidence of any propensity for using excessive force and lack of evidence that training and supervision was deficient. It was therefore unnecessary for the *Marcano* court to analyze whether the relevant conduct might have been outside the scope of employment.

## D. Counts 7 and 8—Assault and Battery

2022 U.S. Dist. LEXIS 99749, *61

Defendants argue that the standards for assessing state-law assault and battery claims are "substantially identical" to the standards for a *§ 1983* excessive force claim. (Doe. 9-6 at 36; Doc. 14-9 at 23.) The Second Circuit has indeed described the relation between these claims as such. *Posr v. Doherty, 944 F.2d 91, 95 (2d Cir. 1991)*. However, since Defendants are not entitled to dismissal of the *§ 1983* excessive force claim, *supra* Section V.A, they are also not entitled to dismissal of the assault and battery claims. **[*62]**

## E. Count 9—Battery Committed in Performance of Public Duty

Defendants argue that Count 9—entitled "Battery Committed in the Performance of a Public Duty"—is not a separately recognized cause of action and is duplicative of Counts 1 and 8. (Doc. 9-6 at 36; Doc. 14-9 at 23.) Mr. Powell does not address this issue in his opposition memoranda. The court concludes that Mr. Powell has abandoned this claim and will accordingly dismiss Count 9. *See Tojek v. Swift, No. 20-CV-755Si(F), 2021 U.S. Dist. LEXIS 90039, 2021 WL 2481874, at *6 (W.D.N.Y. May 10, 2021)* (where a plaintiff fails to address a defendant's argument against a claim in a motion to dismiss, the court may consider the claim abandoned), *report and recommendation adopted,* **[*63]** *2021 U.S. Dist. LEXIS 113905, 2021 WL 2477163 (W.D.N.Y. June 17, 2021)*.

## F. Counts 10 and 11—IIED and NIED

Defendants argue that Mr. Powell's TIED and NIED claims should be dismissed as "duplicative and meritless." (Doc. 9-6 at 37; Doc. 14-9 at 24.) In support of their argument that the claims are duplicative, Defendants cite *Hays v. City of New York, No. 14-CV-10126 (JMF), 2017 U.S. Dist. LEXIS 28090, 2017 WL 782496 (S.D.N.Y. Feb. 28, 2017)*. Mr. Powell does not discuss *Hays* in his opposition memoranda but he maintains that he is entitled to assert his TIED and NIED claims in addition to his other claims and that the claims are plausible. *(See* Doc. 13-1 at 24; Doc. 20-2 at 25.)

The plaintiff in *Hays* brought "a litany of claims," including claims for false arrest and **[*63]** excessive force. *Hays, 2017 U.S. Dist. LEXIS 28090, 2017 WL 782496, at *2*. The court dismissed the plaintiff's IIED and NIED claims, reasoning that "under New York law, a person may not bring claims for intentional infliction of emotional distress or negligent infliction of emotional

distress where, as here, there are more traditional theories of tort liability available." *2017 U.S. Dist. LEXIS 28090, [WL] at *5. HN39*[⌗] The applicable federal rules of procedure authorize alternative claims in a pleading. *Fed. R. Civ. P. 8(d)(2)*. But this court has held that IIED and NIED "may not be used as a substitute for an available traditional tort theory." *Taylor v. City of Rochester, 458 F. Supp. 3d 133, 145 (W.D.N.Y. 2020)* (quoting *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 442 (W.D.N.Y. 2018)). Here, as the above analysis demonstrates, Mr. Powell has alleged multiple traditional tort theories arising out of Incidents 1 and 2. Since he has not articulated how his IIED and NIED claims might apply to any conduct that is not already the subject of other claims, the court concludes that Defendants are entitled to dismissal of Counts 10 and 11.

## G. Count 14—Failure to Treat

Count 14 includes a passing reference to "medical malpractice." (Doc. 1-1 ¶ 174.)[9] But since the Complaint lacks any allegation that any defendant is a medical professional, Mr. Powell has failed to allege a plausible claim on that theory. *See Durant v. United States, No. 1:17-CV-0902 (GTS/CFH), 2020 U.S. Dist. LEXIS 45766, 2020 WL 1274326, at *13 (N.D.N.Y. Mar. 17, 2020)* (medical malpractice is "negligence **[*64]** by a *medical professional* related to medical treatment or assessment" (emphasis added)).

Insofar as Count 14 is a *§ 1983* deliberate-indifference claim, Defendants are not entitled to dismissal of that claim for the reasons stated above. *See supra* Section V.F. The parties have not briefed whether Count 14 might also include a separate state-law claim under *N.Y. Civil Rights Law § 28*. That law, enacted and effective on June 15, 2020, provides:

> When a person is under arrest or otherwise in the custody of a police officer, peace officer or other law enforcement representative or entity, such officer, representative or entity shall have a duty to provide attention to the medical and mental health needs of such person, and obtain assistance and treatment of such needs for such person, which are reasonable and provided in good faith under the circumstances. Any person who has not received such reasonable and good faith attention, assistance or treatment and who, as a result, suffers serious physical injury or significant

---

[9] Count 1 includes the same phrase. (Doc. 1-1 ¶ 52.)

2022 U.S. Dist. LEXIS 99749, *64

exacerbation of an injury or condition shall have a cause of action against such officer, representative, and/or entity.

*Id.* There is almost no case law interpreting *Section 28*, but one district court has observed that [*65] "*Section 28* broadens the scope of an arrestee's rights against an arresting officer." *Durr, 558 F. Supp. 3d at 42*. Since the court has concluded that the Complaint states a plausible *§ 1983* deliberate-indifference claim, it appears to also necessarily state a state-law *Section 28* claim.

### H. Count 15—Conspiracy

The court has considered whether, in addition to a claim for *§ 1983* or *§ 1985* conspiracy, Count 15 ("Conspiracy") might be a claim for civil conspiracy under New York law. *HN40*[⬆] In order to state a claim for civil conspiracy, Mr. Powell must allege an "underlying tort plus four additional elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Apace Commc'ns. Ltd. v. Burke, 17 F. Supp. 3d 238, 246 (W.D.N.Y. 2014)*. The court will dismiss Count 15 insofar as it is a civil conspiracy claim for the same reasons that Count 15 is dismissed insofar as it is a claim for *§ 1983* or *§ 1985* conspiracy. The Complaint lacks any factual details of formation of an agreement to violate Mr. Powell's rights or any specific acts in furtherance of such an agreement. Mr. Powell's request for discovery does not cure this defect in the pleading. *See supra* Section V.G.

### VII. Leave to Amend [*66]

Mr. Powell requests "leave to amend his pleadings if the Court feels [it] is necessary." (Doc. 20-2 at 25.) But this request fails to comply with the requirements of Local Rule 15. Mr. Powell does not indicate what amendments he proposes to make or why any amendment would cure the deficiencies identified above. The request for leave to amend is denied.

### Conclusion

The Defendants' Motions to Dismiss (Does. 9 and 14) are GRANTED IN PART and DENIED IN PART. The

court *dismisses* the following claims or portions of claims:

- All claims against the Jamestown Police Department, the City of Jamestown Clerk, and the Chautauqua County Sheriff's Office;

- Count 1 insofar as it is a *§ 1983* excessive-force claim against Sheriff Quattrone, Undersheriff Braley, or Chief Jackson, and also insofar as it is a negligence claim premised on Defendants' alleged assault and application of excessive force;

- Count 2 (the *Monell* claim);

- Count 3, as duplicative of the *Monell* claim and because it is not an independent cause of action;
- Counts 4, 5, 6, 9, 10, 11, 13, and 15;

- Count 14 only insofar as it is brought against the County Defendants seeking to hold them liable for any purported deliberate indifference to medical needs while Mr. Powell [*67] was in the custody of the City Defendants in the JPD squad car and the JPD's Central Booking Bureau; and
- Count 16 insofar as it seeks punitive damages against any municipal entity.

The following claims have *survived* the motions to dismiss:

○ Count 1 insofar as it is a *§ 1983* excessive-force claim against defendants other than Sheriff Quattrone, Undersheriff Braley, or Chief Jackson;
○ Counts 7 and 8 (assault and battery);

○ Count 12 (*§ 1983* failure to intervene);

○ Insofar as Count 14 is a *§ 1983* claim for deliberate indifference to medical needs, this count survives except as far as it seeks to hold the County Defendants liable for any purported deliberate indifference to medical needs while Mr. Powell was in the sole custody of the City Defendants;
○ Count 14 also survives insofar as it is a claim under *N.Y. Civil Rights Law § 28*; and
○ Count 16 (punitive damages), except insofar as it is brought against any municipal entity.

The parties are directed to complete a *Rule 26(f)* conference within 60 days and to submit their report as specified in the rule.

Dated this 3rd day of June, 2022.

2022 U.S. Dist. LEXIS 99749, *67

/s/ Geoffrey W. Crawford

Geoffrey W. Crawford, Judge

United States District Court

**End of Document**