UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTIAN POWELL
1879 Davis Street
Elmira, NY 14901

               Plaintiff,

      -vs-

CITY OF JAMESTOWN
200 East Third Street
Jamestown, NY 14701

JAMESTOWN POLICE OFFICER
CARTER OBERGFELL
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

JAMESTOWN POLICE OFFICER
KEVIN WISE
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

JAMESTOWN POLICE OFFICER
MARK CONKLIN
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

JAMESTOWN POLICE OFFICER
JOHN CONTI
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

JAMESTOWN POLICE SERGEANT
OVEREND
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

**AMENDED SUMMONS**
Civil Action No.:1:21-CV-00721

JAMESTOWN POLICE OFFICER WARD
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

JAMESTOWN POLICE DETECTIVE MAGGIO
in their individual and official capacity
201 E 2nd Street
Jamestown, NY 14701

                         Defendants.
_____

**TO THE ABOVE-NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED AND REQUIRED** to serve upon the

plaintiff's attorneys, at the address stated below, a written Answer to the attached Complaint.

        If this Summons is served upon you within the State of New York by personal service

you must respond within TWENTY (20) days after service, not counting the day of

service.  If this Summons is not personally delivered to you within the State of New York you must

respond within THIRTY (30) days after service is completed, as provided by law.

        If you do not respond to the attached Complaint within the applicable time limitation

stated above a Judgment will be entered against you, by default, for the relief demanded in the

Complaint, without further notice to you.

Plaintiff designates UNITED STATES DISTRICT COURT  WESTERN DISTRICT

OF NEW YORK as the place of trial.

DATED:      September 2, 2023
               Hamburg, New York

                                    SHAW & SHAW, P.C.

                                  _____

                                  Blake Zaccagnino
                                  Attorneys for Plaintiff
                                  4819 South Park Avenue
                                  Hamburg, New York  14075
                                  (716) 648-3020 Telephone
                                  (716) 648-3730 Fax

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTIAN POWELL

                Plaintiff,

       -vs-                              **AMENDED COMPLAINT**
                                            Civil Action No.:1:21-CV-00721

CITY OF JAMESTOWN

JAMESTOWN POLICE OFFICER
CARTER OBERGFELL
in their individual and official capacity

JAMESTOWN POLICE OFFICER
KEVIN WISE
in their individual and official capacity

JAMESTOWN POLICE OFFICER
MARK CONKLIN
in their individual and official capacity

JAMESTOWN POLICE OFFICER
JOHN CONTI
in their individual and official capacity

JAMESTOWN POLICE SERGEANT
OVEREND
in their individual and official capacity

JAMESTOWN POLICE OFFICER WARD
in their individual and official capacity

JAMESTOWN POLICE DETECTIVE MAGGIO
in their individual and official capacity

                Defendants.
_____

        Plaintiff, by his undersigned counsel, alleges, upon personal knowledge, and upon information and belief as to all other matters, as follows:

1.    This is an action to redress the deprivation by the defendants of the rights secured to plaintiff by the United States Constitution, New York State Constitution, and federal and state statute.

## THE PARTIES

2.    By virtue of the application of one or more of the exemptions listed in Section 1602 of Article 16 of the CPLR, the limitations and liability imposed by that Article do not apply to the cause or causes of action set forth herein.

3.    Plaintiff at all times hereinafter mentioned, was and continues to be, a resident of Chemung County, New York.

4.    Defendant CITY OF JAMESTOWN was at all times hereinafter mentioned is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York with offices for the conduct of its business located in the CITY OF JAMESTOWN, County of Chautauqua and State of New York.

5.    Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE OFFICER CARTER OBERGFELL is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

6.    Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE OFFICER KEVIN WISE is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

7.      Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE OFFICER MARK CONKLIN is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

8.      Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE OFFICER JOHN CONTI is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

9.      Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE SERGEANT OVEREND is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

10.     Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE OFFICER WARD is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

11.     Upon information and belief, at all times hereinafter mentioned, and specifically on December 10, 2020, defendant JAMESTOWN POLICE DETECTIVE MAGGIO is and was a resident of the City of Jamestown, State of New York, and was an employee of the CITY OF

JAMESTOWN and JAMESTOWN POLICE DEPARTMENT, and was in the course and scope of his duties as a police officer on the date and at the time of the within incident.

12.     The defendant police officers are hereinafter referred to as officers/employees.

## CONDITIONS PRECEDENT

13.     That on February 1, 2021 the plaintiff caused the CITY OF JAMESTOWN to be personally served with a Notice of Claim pursuant to the Laws of the State of New York relating to the allegations of the Complaint herein.

14.     The Notice of Claims were served on the above mentioned defendants within 90 days after the accrual of the respective causes of action.

15.     That on April 5, 2021, plaintiff submitted to an oral examination by the defendants pursuant to Section 50-e of the General Municipal Law.

16.     That more than 30 days have passed since the service of the Notice of Claim herein, the adjustment or payment of the claim has been neglected or refused, and the defendants have failed, declined, or otherwise refused to pay the claim herein.

17.     That the plaintiff has otherwise exhausted any and all administrative remedies relating to the action herein.

18.     This action has been commenced within 1 year and 90 days after the causes of action herein accrued.

19.     At the time and place aforesaid, the defendants were in the course of their employment.

**FACTUAL BACKGROUND:**

20.    This claim is for personal injuries and other damages sustained by

Plaintiff as a result of the acts of assault, harassment, battery, excessive force, failure and delay in

providing medical treatment, failing to treat his medical conditions and prevent self harm, general

negligence, vicarious liability and violations of the Federal Civil Rights Law, The United States

Constitution, The New York State Constitution and the Amendments thereof, by all defendants.

21.    The Plaintiff's injuries were sustained on account of the defendants' intentional

acts of assault, harassment, battery, excessive force, failure and or delay to provide the Plaintiff with

adequate medical care, failing to treat his medical conditions and prevent self harm, vicarious liability

and violations of the Federal Civil Rights Law, The United States Constitution, The New York State

Constitution and the Amendments thereof. The actions of the respondents also violated the plaintiff's

due process rights of the Fourteenth Amendment and Fourth Amendment including but not limited to

his substantive rights embodied therein.

22.    The amount of force used by defendants was used against the plaintiff

purposely and knowingly, was objectively unreasonable and excessive force amounting to punishment.

<u>INCIDENT 1:</u>

23    The date when this claim arose and the Plaintiff's injuries and damages herein

alleged were sustained was on December 10, 2020.

24.    The location where this claim arose was outside of 111 Barrett Avenue,

Jamestown, NY and 201 East 2nd Street Jamestown, NY 14701 (Upon information and belief, the

above address is known as the JAMESTOWN POLICE DEPARTMENT Central Booking Bureau)

25.    Specifically, on the day and time of this incident, JAMESTOWN POLICE

OFFICER KEVIN WISE and JAMESTOWN POLICE OFFICER CARTER OBERGFELL responded

to and were present on the scene. They were personally involved in using excessive force in arresting

the Plaintiff as is more fully described below. They were also responsible for providing the Plaintiff with

medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him

from harming himself. When Plaintiff refers to defendants/officers below in describing <u>Incident 1</u>, he

is referring to the actions and personal involvement of JAMESTOWN POLICE  OFFICER KEVIN

WISE and JAMESTOWN POLICE OFFICER CARTER OBERGFELL on scene, as well as the CITY

OF JAMESTOWN.

26.    The Causes of Action which forms the substance of this claim arose is when

the Plaintiff was lawfully located at the location stated above, when he was assaulted, battered,

repeatedly grabbed, kneed, yanked  his arms, threw him to  the ground, placed handcuffs on him

extremely tight causing injury, and seized him without cause or provocation by the above named police

officers, and employees of the defendants herein.

27.    Upon information belief, the plaintiff suffers from mental  health / other

health conditions that  were known or should have been known by defendants.

28.    At the time of plaintiff's  arrest, he asked  defendants to send him to an inpatient

hospital to  be treated for his mental  health conditions mental state at the time.  Defendants refused to

send plaintiff  to the hospital or to provide him with a mental health evaluation. This caused plaintiff

injury and  pain.

29.    The plaintiff was crying.  He advised defendants that he had not slept in days,

that he had not seen his children, that he was stressed out, that he wanted to kill himself, including but

not limited to,  that he has PTSD.

30.    After being advised of the above, the defendants remained on top of Plaintiff.

They allowed plaintiff to hit his head off of the ground multiple times causing injury. The officers  stood

plaintiff up. Plaintiff advised that he felt he had a concussion.

31.     Plaintiff was placed in a Jamestown Police Vehicle en route to the JAMESTOWN POLICE DEPARTMENT Central Booking Bureau. Defendants allowed the plaintiff to hit his head on the glass separating where he and the officers were sitting multiple times, causing injury. Plaintiff screamed that he had a concussion and that he felt like he was going to die. He again screamed that he had not slept in days. Defendants allowed Plaintiff to hit his head on the above mentioned glass again, multiple times, causing injury. Plaintiff screamed that he was going to die and that he could not feel his head.

32.     Plaintiff and defendants arrived at the JAMESTOWN POLICE DEPARTMENT Central Booking Bureau. When they arrived, an officer stated that Plaintiff was fighting hard and that he would be going straight to the "chair" depending on his medical situation. Upon information and belief, he was referring to a restraint chair meant to prevent prisoners from self injury. An officer also stated that Plaintiff was bashing his head on a flash-light.

33.     When officers took Plaintiff out of the vehicle, they allowed Plaintiff to bash his head on the trunk of a police vehicle, causing injury. Officers brought Plaintiff into the station.

<u>INCIDENT 2:</u>

34.     Once in the station, <u>Incident 2</u>, as is described below took place. Specifically, on the day and time of this incident, JAMESTOWN POLICE OFFICER MARK CONKLIN (who was working as the City Jailor) and JAMESTOWN POLICE SERGEANT OVEREND responded to and were present on the scene. They were personally involved and were responsible for providing the Plaintiff with medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him from harming himself. When Plaintiff refers to defendants/officers below in describing <u>Incident 2</u>, he is referring to the actions and personal involvement of JAMESTOWN POLICE OFFICER MARK CONKLIN and JAMESTOWN POLICE SERGEANT OVEREND on scene, as well as the CITY OF JAMESTOWN.

35.    Plaintiff screamed that his handcuffs were tight and asked officers to take them off. Plaintiff stated he had not slept in days, that he hadn't seen his children in weeks, that he had no-one to talk to, that he had no-one, and that he had PTSD.

36.    Plaintiff stated to officers that he had not eaten, that he did not care what happened to him, that he would rather kill himself then go to jail, and that he needed someone to talk to. Plaintiff also stated to officers that he wanted to go to the hospital.

37.    Instead of sending Plaintiff to the hospital, placing him in a restraint chair, and or providing him with a mental health evaluation, they handcuffed him to a bench at the station. This delay/denial in care, failure to treat his medical condition, and failure to prevent self harm caused plaintiff pain and injury. They did not put Plaintiff in a restraint chair to prevent further self harm/injury. Plaintiff was handcuffed on the bench for a number of hours.

38.    Defendants allowed plaintiff to smash his hands on the bench and yank on his handcuffs, causing injury. Plaintiff stated to officers that he lost his kids and his heart was gone, that he would rather kill himself, that he was psychotic, that he needed mental health help right now, and told officers to use a taser on him and to put a bullet in his head. Defendants allowed Plaintiff to punch the wall and break his ankle-handcuffs, causing injury.

39.    Plaintiff's mental health condition continued to deteriorate. Despite that, defendants still did not send Plaintiff to a hospital or provide him with a mental health evaluation. This caused him great pain and injury.

40.    Plaintiff again stated that he was going to kill himself. Officers allowed Plaintiff to hit his head off of the wall, causing injury. Plaintiff rambled, stumbled around, stretched his full body out with his leg attached to a bench, and took his shirt off. Plaintiff yanked his handcuffs on the bench, grabbed the phone off of the wall, violently clapped his hands, punched the wall, fell off of the

bench and landed on his side, hit his head on the wall, and rolled back and forth moaning. The above and delay in his medical care caused Plaintiff pain and injury.

41.    Plaintiff stated to officers that he had been drinking for the past week, that he had not showered in days, that he was ready to kill himself, that he would rather be dead, that he has no-body and he was ready to say bye, that he had explosive anger disorder, that he was getting ready to kill himself and warned that officers better call someone in before he does it, that he was ready to jump head first off of the bench, and that he might as well kill himself.

42.    Plaintiff's mental health condition continued to deteriorate. Despite that, defendants still did not send Plaintiff to the hospital or provide him with a mental health evaluation. This caused him great pain and injury.

43.    The incident caused the claimant to be seriously injured.

<u>INCIDENT 3:</u>

44.    Below is a description of <u>Incident 3.</u> Specifically, on the day and time of this incident JAMESTOWN POLICE OFFICER JOHN CONTI(who was working as the City Jailor), JAMESTOWN POLICE OFFICER WARD, and JAMESTOWN POLICE DETECTIVE MAGGIO responded to and were present on the scene. They were personally involved and were responsible for using excessive force on the Plaintiff, providing the Plaintiff with medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him from harming himself. When Plaintiff refers to defendants/officers below in describing <u>Incident 3</u>, he is referring to the actions and personal involvement of JAMESTOWN POLICE OFFICER JOHN CONTI(who was working as the City Jailor), JAMESTOWN POLICE OFFICER WARD, and JAMESTOWN POLICE DETECTIVE MAGGIO on scene, as well as the CITY OF JAMESTOWN.

45.     Hours later, plaintiff was arraigned. He was crying, trying to make statements on the record,  and  acted  erratically. His bazaar  behavior from hours prior continued. Despite that, defendants  still  did not  send Plaintiff to the hospital or  provide him with a mental health  evaluation. This caused him great pain and injury.

46.     After his arraignment, hours  after he was brought to the station, plaintiff ripped his  Court  paperwork up and threw it on  the  ground. Defendants brought Plaintiff to the restraint chair. They allowed Plaintiff to hit his head on the metal bars in the jail area causing him pain and injury.

47.     In the process of restraining plaintiff, defendants  assaulted, battered, slammed  Plaintiff to the ground, and  seized Plaintiff without cause or provocation.  The Defendants pulled Plaintiff's shirt over his head for a period of time while they restrained him.  They allowed Plaintiff to bang his head and neck on the  back  of the  restraint chair. He  was  strapped  down  by Defendants extremely tight. He asked officers to loosen his restraints.  This caused him pain and injury.

48.     The Causes of Action which forms the substance of this claim also arose  when the plaintiff was in the custody care and control of the respondents,  when he was in need of medical care,  and the respondents  failed, refused to, and or delayed to obtain such care for him, and failed to treat his medical conditions and  prevent self harm.

**AS AND FOR A SEPARATE**
**AND DISTINCT CAUSES**
**OF ACTION AGAINST ALL DEFENDANTS:**

**1.     42 U.S.C. § 1983 EXCESSIVE FORCE CLAIM:**

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

50.     That upon information and belief, the defendants  were negligent, reckless, careless, willful, and wanton in striking, pushing, pulling and throwing the plaintiff

to the ground, and failing to treat his medical conditions and prevent self harm, resulting in serious and permanent bodily injuries to the plaintiff.

51.     As a result of the negligence of the defendants, the plaintiff was injured internally, externally, and permanently in and about the face, head, back, chest, shoulders, limbs, torso, and nervous system, so that he became and will continue to be disabled and will continue to suffer pain and discomfort, distress, and psychological adjustment.

52.     That the plaintiff was at all times, using due care.

53.     That by reason of said injuries, the plaintiff required the services of physicians, surgeons, nurses, hospitals, and medicines and will continue to incur such expenses in the future; that as a result of the aforesaid injuries and the resulting disabilities, said plaintiff was incapacitated from his normal activities, may be incapacitated in the future, and as a result of the aforesaid injuries, the future earning capacity of said plaintiff, has been partially and/or permanently impaired, and as a result of the aforesaid, the plaintiff was otherwise damaged.

54.     That upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless and/or unlawful conduct on the part of the agents, servants and/or employees of all of the defendants herein, more particularly:

-     the defendants exercised their authority in an intentionally malicious and careless manner causing serious and permanent injuries and/or damages to the plaintiff;

-     the defendants, their agents, servants and/or employees were negligent, wanton and reckless in failing to properly supervise their employees;

- they allowed their employees and agents to subject claimant to physical contact without cause or provocation, thus creating a dangerous or hazardous condition, which they knew, or in the exercise of reasonable care, existed for a period of time prior to the incident;

- that they failed to properly supervise their employees and the participating officers in their activities;

- the above conduct of the respondents was committed by persons acting under color of state law; and their conduct deprived the plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States;

- their actions violated the claimant's Fourth, Fifth, Eighth including but not limited to Fourteenth Amendment Rights and was an unreasonable and excessive use of force by police officers in the course of an arrest/pre-trial detainment and their actions were <u>not</u> objectively reasonable;

- the defendants used the above force purposely and knowingly, and the force used against him used on him was objectively unreasonable **(Kingsley v. Hendrickson, 576 U.S. 389)**;

- the defendants used excessive force because they gratuitously inflicted pain on the plaintiff in a manner that was not reasonable in response to the circumstances;

- a reasonable jury would find that the officers acted not only unreasonably, but that they were plainly incompetent and knowingly violated the law by gratuitously inflicting pain on the plaintiff over an extended period of time;

- they failed in their affirmative duty to intervene to protect the constitutional rights of the plaintiff from infringement by the other law enforcement officers in their presence and the officers observed and had reason to know that excessive force was being used on the plaintiff, that the plaintiff was being unlawfully arrested/detained/excessive force was being used; and that a constitutional violation was being committed by the other law enforcement officers;

- that upon information and belief, at all times hereinafter mentioned, respondents, through their employees, agents, servants and contractors, failed/delayed in rendering medical evaluation and attention to the plaintiff and failed to treat his medical conditions and prevent self harm;

- that upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed/delayed to provide adequate and essential medical evaluation and care and treatment to the plaintiff; they failed to address the plaintiff's serious medical needs;

- the defendants acted with deliberate indifference to the plaintiff because he was in need of medical care and they failed, or refused to, and or delayed to obtain such care;

- the defendants failed to protect the plaintiff from health problems that were sufficiently imminent and sure or very likely to cause him serious injuries and needless suffering;

- that by reason of the carelessness, negligence and recklessness and medical malpractice of the defendants through their employees, agents, servants and contractors, in the medical care and treatment and services rendered to and for plaintiff/lack thereof, the plaintiff was caused to suffer severe and great bodily injury with accompanying pain and suffering and sustained bodily and emotional injuries of a permanent nature;

- that the policies and procedures, and the willful and wanton conduct of defendants, their agents, servants and employees, reflect a reckless and careless disregard and deliberate indifference for the rights of the plaintiff to receive proper and adequate medical evaluation and attention so as to merit an award of damages against defendants;

- the municipal defendants were liable under a theory of respondeat superior for the above actions, including but not limited to, the arrest, assault, and battery of the plaintiff and their failure to treat plaintiff's medical conditions and prevent self harm;

- the defendants' conduct violated the Fourth Amendment "reasonableness standard";

- the above conduct of defendants violated plaintiff's right to be free from excessive force amounting to punishment protected by the Due Process Clause of the Fourteenth Amendment;

- the force used by defendants was purposefully and knowingly used against them and was objectively unreasonable;

- they failed to provide plaintiff with reasonable care to protect him from risks of harm that were reasonably foreseeable, i.e., those that they knew or should have known;

- they breached their duty of care to protect Plaintiff from self-inflicted harm;

- the defendants knew and/or should have known that the plaintiff posed a risk of harm to himself and failed to use adequate supervision to prevent that which was reasonably foreseeable;

- the defendants violated 42 USC Section 1983 by depriving the injured plaintiff of his Fourteenth Amendment right to adequate medical care, proper medical care, and treatment;

- the deprivations alleged herein is objectively, sufficiently serious, and defendants acted with deliberate indifference to plaintiff's health and safety;

- defendants failed to treat his medical needs that produced physical pain and injury;

- the defendants ignored plaintiff's psychiatric conditions causing him pain and injury;

- defendants recklessly failed to act with reasonable care to mitigate the risk of harm to plaintiff even though they knew or should have known that his condition posed an excessive risk to his health and safety;

- defendants knew of plaintiff's serious medical need and failed to respond reasonably to it;

- defendants denied plaintiff of mental health care and they acted with deliberately indifferent to his conditions and the conditions of his confinement;

- defendants unconstitutionally delayed or interrupted plaintiff's medical/mental health treatment in that it reflected a deliberate indifference to a serious risk of his health and safety, in other words, to a life threatening or fast degenerating condition of extreme pain that would have been alleviated through prompt treatment;   including but not limited to

- defendants failed to address plaintiffs depression and anxiety attacks, propensity for self harm, failed/delayed in providing him with a mental health evaluation, his suicidal thoughts, his PTSD, defendants had notice of plaintiff's deteriorating condition, and their delay in treatment ran the risk of and caused harm to plaintiff.

55      That defendants affirmatively created the dangerous and defective condition described herein, that included but is not limited to, placing the defendant employees, in a position to cause foreseeable harm to the plaintiff (to be assaulted, not treating his serious medical needs, and failing to treat his medical conditions and prevent self harm), that the plaintiff would have been spared had they used reasonable care in making their decision regarding the hiring and retention of the aforementioned defendant employees.

56.      That the defendants herein had actual and constructive knowledge of the defective condition described above and in paragraph 54 above.

57.      That the defendants had subjective and objective knowledge of the defendant employees involved in the within incident propensity for conduct that caused the plaintiff's injuries, and that deficient training and supervision was a proximate cause of the plaintiff's injuries.

58.      That the conduct of all of the defendants herein amounted to more than mere negligence, and instead, amounted to deliberate indifference to the plaintiff's safety.

59.      That the defendants provided grossly inadequate care and, in fact, took no measures to provide for plaintiff's safety for an unreasonable and inordinate period of time.

60.      That the negligence of the defendants, and his resultant injuries, produced physical injury to the plaintiff.

61.      That as a result of the foregoing, the plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

**2.    RESPONDEAT SUPERIOR/VICARIOUS LIABILITY**
**(Plaintiff does not claim this is a claim for relief, but claims that the above**
**doctrines are applicable to his underlying Tort claims alleged herein)**

62.    Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

63.    That on or about December 10, 2020 the defendant CITY OF JAMESTOWN, was responsible for the training, supervision, and actions of the defendant officers.

64.    On or about December 10, 2020 the defendant officers were acting within the scope of their employment with the defendants.

65.    That said tortuous conduct above described and blatant disregard for the safety of the plaintiff, committed by the defendant officers on the aforesaid date was ratified by the defendants, and was in furtherance of purposes and aims of the defendants.

66.    That the defendants CITY OF JAMESTOWN, were willful, wanton, reckless and negligent in employing defendant officers.

67.    The defendants CITY OF JAMESTOWN, are liable under a theory of respondeat superior for the tort claims alleged in this Complaint.

68.    That by reason of the foregoing, plaintiff suffered severe, painful, permanent and personal injuries; was rendered sick, sore lame and disabled, and has suffered a loss of enjoyment and quality of life.

**3.    ASSAULT:**

69.    Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

70.    On December 10, 2020, the plaintiff was unlawfully arrested by the above named defendants.

71.    That the defendant officers intentionally made physical contact with the plaintiff, beating him, and causing serious injuries and damages.

72.    That by the conduct described above,  the defendant employees intended to cause the plaintiff apprehension that harmful, injurious and offensive bodily contact would occur.

73.    That the conduct aforementioned did in fact cause the plaintiff apprehension that harmful, injurious, and offensive bodily contact would occur.

74.    That the defendant officers, while acting in the scope of their authority as employees of defendants, through their training, experience, and possession of dangerous weapons, did in fact have such capability to cause the harmful, injurious, and offensive bodily contact to the plaintiff herein.

75.    That the conduct of the defendant officers was without just cause or provocation, and the plaintiff did not consent to such conduct. The defendant officers intentionally caused the plaintiff to become concerned that they were about to cause harmful or offensive bodily contact; they had a real and apparent ability to bring about the harmful and offensive contact; and the defendants not only made offensive contact with the plaintiff, but performed a menacing act or gesture that caused the plaintiff to believe that a harmful or offensive imminent bodily contact was about to occur before it did.

76.    That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

## 4.    BATTERY:

77.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

78.     On December 10, 2020, the plaintiff was unlawfully arrested by the above named defendants.

79.     That the defendant employees, intentionally made physical contact with the plaintiff, beating him, and causing serious injuries and damages.

80.     The defendant employees intended to subject the plaintiff to harmful, injurious, and offensive bodily contact.

81.     They did, in fact, subject the plaintiff to harmful, injurious, and offensive bodily contact.

82.     That the physical contact perpetrated by the defendant employees was without just cause, without provocation, and the plaintiff did not consent to such physical contact. The force used against the plaintiff was grossly excessive and patently unreasonable under the circumstances.

83.     The defendant employees intentionally touched the plaintiff, without his consent, and caused offensive bodily contact; their intention in causing bodily contact to the plaintiff is one that a reasonable person would find offensive; the contact was one that was done for the purpose of harming the plaintiff and offended his reasonable sense of personal dignity and was one that was otherwise wrongful; the contact also caused physical pain and illness and interfered with the condition of his body.

84.     The amount of force used by the officer defendants was excessive and they did not have a reasonable belief that the amount of force they used was necessary to make the unlawful arrest and to prevent the plaintiff's escape. The physical forced used by the officers was intentional and was not reasonably necessary under the circumstances. Considering the circumstances at the time and place of this incident, it was not reasonable for the officers to believe the plaintiff was resisting arrest or attempting to escape and thy were not justified in using force.

85.    Since the officers arrest of the plaintiff was unlawful, any use of force against the plaintiff was assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest, the plaintiff alleges his arrest was not lawful.

86.    That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

### 5.    42 U.S.C. § 1983- FAILURE TO INTERVENE:

87.    Plaintiff repeats and reiterates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

88.    On December 10, 2020, the plaintiff was unlawfully arrested by the above named defendants.

89.    That the defendant employees while employed and acting in their individual and official capacity, intentionally made physical contact with the plaintiff, beating him, and causing serious injuries and damages. Defendants also failed to provide plaintiff with medical treatment and to protect him from self harm.

90.    That while the defendant employees were assaulting and battering the plaintiff and failing to provide him with medical treatment and failing to protect him from self harm, at the same time, employees were within a few feet of the assault sufficient to constitute direct contact between plaintiff and defendants.

91.    That by their conduct, these defendants assumed a duty to protect plaintiff from the striking, battering and assault by the defendants and their failure to provide plaintiff with medical treatment and to protect him from self harm.

92.     That said defendants knew plaintiff would suffer harm if they did not take timely action to protect him.

93.     That said defendants did not take any steps to protect the plaintiff from the assault, in fact such individuals stood idly by and watched as plaintiff was repeatedly struck. That said defendants also did not take any steps to protect plaintiff from defendants  failure to provide plaintiff with medical treatment and to protect  him from self harm.

94.     That plaintiff reasonably relied upon the officers assumption of duty that they would protect him from an assault by defendant and from failure to provide plaintiff with medical treatment and to protect  him from self harm. The defendants failed to fulfil their affirmative duty to intercede.

95.     The officers breached their affirmative duties to intervene to protect the constitutional rights of the plaintiff from infringement by other law enforcement officers in their presence. They failed to intercede to prevent the preventable harm caused to plaintiff by the actions of other officers where the officers  observed and had reason to know that the plaintiff was being assaulted and that he was not being provided with medical treatment or prevented from self harm, that was a constitutional violation committed by law enforcement officials.

96.     The officers failed to intercede and are liable for the preventable harm sustained by the plaintiff caused by the actions of other officers where the officers observed or had reason to know that excessive force was being used,  that the plaintiff was being unlawfully arrested, that they were failing  to provide plaintiff with medical treatment and to protect  him from self harm. that constitutional violations were being committed by the other officers.

97.     That by reason of the foregoing, plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment and quality of life.

**6.**    **42 U.S.C.  § 1983 FAILURE TO TREAT: DELIBERATE INDIFFERENCE CLAIM TO MEDICAL NEEDS:**

**7.**    **NY CIVIL RIGHTS LAW SECTION 28 CLAIM:**

98.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

99.    That upon information and belief, at all times hereinafter mentioned, defendants hired employees, agents, servants and contractors that held themselves out as duly qualified to render proper and adequate medical treatment and services, including providing physical examinations and medical care to those persons under the care and custody of the defendants, including plaintiff.

100.    That upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed to render medical evaluation and attention to the plaintiff.

101.    That upon information and belief, on December 10, 2020, defendants, through their employees, agents, servants and contractors, failed to provide adequate and essential medical evaluation and care and treatment to the plaintiff; they failed to address the plaintiff's serious medical and mental health needs; they acted with deliberate indifference to the plaintiff because he was in need of medical care and they failed, or refused to, obtain such care; they failed to protect him from health problems that were sufficiently imminent and sure or very likely to cause him serious illness and needless suffering.

102.    Defendants failed in their duty to protect plaintiff from, including but not limited to, self inflicted harm, and other risks of harm that were reasonably foreseeable to defendants, i.e., those that they knew about or should have known about.

103.    That by reason of the carelessness, negligence and recklessness and medical malpractice of the defendants through their employees, agents, servants and contractors, in the medical care and treatment and services rendered to and for plaintiff, plaintiff was caused to suffer severe and great bodily injury with accompanying pain and suffering and sustained bodily and emotional injuries of a permanent nature.

104.    That the policies and procedures, and the willful and wanton conduct of defendants, their agents, servants and employees, reflect a reckless and careless disregard and deliberate indifference for the rights of the plaintiff to receive proper and adequate medical evaluation and attention so as to merit an award of damages against defendants

105.    That the defendants' actions indicate a willful misconduct, wantonness and want of care which have raised the presumption of conscious indifference to the consequences to plaintiff, thus entitling plaintiff to an award of damages.

106.    That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

**8.    DEMAND FOR PUNITIVE DAMAGES-BROUGHT AGAINST THE INDIVIDUALLY NAMED DEFENDANTS ONLY:**

107.    The actions of the defendants herein were extreme and outrageous, and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the defendants for their deliberate indifference and malice towards the plaintiff and his rights as outlined above.

108.    As such,  plaintiff demands judgment against defendants in an amount to be determined at trial.

*WHEREFORE*, the plaintiff respectfully the following forms of relief:

A)    Compensatory and special damages against the defendants and each of them jointly and severally, in an amount to be determined at trial;

B)    Punitive Damages against all individual defendants in an amount to be determined by a properly instructed jury;

C)    Costs, disbursements, and attorneys' fees as stated above;

D)    Interest on the aforementioned judgments;

E)    Jury trial; and

F)    Such other and further relief that the Court deems just and proper.

Dated:     September 2, 2023
           Hamburg, New York


                         **SHAW & SHAW P.C.**


                         _____
                         Blake Zaccagnino
                         Attorneys for Plaintiff
                         4819 South Park Avenue
                         Hamburg, New York 14075
                         (716) 648-3020 Telephone
                         (716) 648-3730 Fax