UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTIAN POWELL

Plaintiff,

-vs-

CITY OF JAMESTOWN                                    21-CV-00721
CITY OF JAMESTOWN CLERK
JAMESTOWN POLICE DEPARTMENT
JAMESTOWN POLICE CHIEF TIMOTHY JACKSON
COUNTY OF CHAUTAUQUA
CHAUTAUQUA COUNTY SHERIFF'S OFFICE
CHAUTAUQUA COUNTY SHERIFF
JAMES B. QUATTRONE
in his individual and official capacity
CHAUTAUQUA COUNTY UNDERSHERIFF
DARRYL W. BRALEY
JOHN DOES 1-10, said names being fictitious
but intended to be any other individual/officers
involved in the within incident and employees of the
CITY OF JAMESTOWN and/or JAMESTOWN
POLICE DEPARTMENT in their individual and official capacities
JOHN DOES 1-10, said names being fictitious
but intended to be any other individual/officers
involved in the within incident and employees of the
COUNTY OF CHAUTAUQUA  and/or CHAUTAUQUA
COUNTY SHERIFF'S OFFICE in their individual and official capacities

Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO AMEND OR CORRECT HIS COMPLAINT TO IDENTIFY
AND SUBSTITUTE THE NAMED OFFICERS/EMPLOYEES FOR THE
JOHN DOE DEFENDANTS, AND TO ALSO CONFORM IT TO THE
COURT'S MOTION TO DISMISS DECISION AND ORDER DATED JUNE
3, 2022**

**Blake Zaccagnino**
**Attorneys for Plaintiff**
**Office and Post Office Address**
**4819 South Park Avenue**
**Hamburg, NY 14075**
**(716) 648-3020 Telephone**
**(716) 648-3730 Fax**
**Bzaccagnino@shawlawpc.com**

**REQUEST:**

The Plaintiff is seeking an order allowing the Plaintiff to amend/correct

his complaint to identify and substitute the named officers/employees for the John Doe Defendants,

and also to conform it to the Court's Decision and Order (motion to dismiss) (Dkt. No. 24 dated

June 3, 2022). A redlined version of Plaintiff's proposed amended Complaint is attached as **Exhibit**

**E**. A non redlined version is attached at **Exhibit G**.

Specifically, the Plaintiff requests to substitute in the following individual

Defendants in place of the John Doe Defendant representatives of the City of Jamestown.

- JAMESTOWN POLICE OFFICER
  CARTER OBERGFELL

- JAMESTOWN POLICE OFFICER
  KEVIN WISE

- JAMESTOWN POLICE OFFICER
  MARK CONKLIN

- JAMESTOWN POLICE OFFICER
  JOHN CONTI

- JAMESTOWN POLICE SERGEANT
  OVEREND

- JAMESTOWN POLICE OFFICER WARD

- JAMESTOWN POLICE DETECTIVE MAGGIO

**FACTUAL BACKGROUND:**

INCIDENT 1:

The date when this claim arose and the Plaintiff's injuries and damages herein

alleged were sustained was on December 10, 2020. The location where this claim arose was outside

of 111 Barrett Avenue, and Jamestown, NY and 201 East 2nd Street Jamestown, NY 14701

Specifically, on the day and time of this incident, JAMESTOWN POLICE OFFICER KEVIN WISE and JAMESTOWN POLICE OFFICER CARTER OBERGFELL responded to and were present on the scene. They were personally involved in using excessive force in arresting the Plaintiff as is more fully described below. They were also responsible for providing the Plaintiff with medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him from harming himself. When Plaintiff refers to defendants/officers below in describing Incident 1, he is referring to the actions and personal involvement of JAMESTOWN POLICE OFFICER KEVIN WISE and JAMESTOWN POLICE OFFICER CARTER OBERGFELL on scene, as well as the CITY OF JAMESTOWN.

The Causes of Action which forms the substance of this claim arose is when the Plaintiff was lawfully located at the location stated above, when he was assaulted, battered, repeatedly grabbed, kneed, yanked his arms, threw him to the ground, placed handcuffs on him extremely tight causing injury, and seized him without cause or provocation by the above named police officers, and employees of the defendants herein.

Upon information belief, the plaintiff suffers from mental health / other health conditions that were known or should have been known by defendants.

At the time of plaintiff's arrest, he asked defendants to send him to an inpatient hospital to be treated for his mental health conditions and mental state at the time. Defendants refused to send plaintiff to the hospital or to provide him with a mental health evaluation. This caused plaintiff injury and pain. The plaintiff was crying. He advised defendants that he had not slept in days, that he had not seen his children, that he was stressed out, that he wanted to kill himself, including but not limited to, that he has PTSD.

After being advised of the above, the defendants remained on top of Plaintiff.

They allowed plaintiff to hit his head off of the ground multiple times causing injury. The officers stood plaintiff up. Plaintiff advised that he felt he had a concussion. Plaintiff was placed in a Jamestown Police Vehicle en route to the JAMESTOWN POLICE DEPARTMENT Central Booking Bureau. Defendants allowed the plaintiff to hit his head on the glass separating where he and the officers were sitting multiple times, causing injury. Plaintiff screamed that he had a concussion and that he felt like he was going to die. He again screamed that he had not slept in days. Defendants allowed Plaintiff to hit his head on the above mentioned glass again, multiple times, causing injury. Plaintiff screamed that he was going to die and that he could not feel his head.

Plaintiff and defendants arrived at the JAMESTOWN POLICE DEPARTMENT Central Booking Bureau. When they arrived, an officer stated that Plaintiff was fighting hard and that he would be going straight to the "chair" depending on his medical situation. Upon information and belief, he was referring to a restraint chair meant to prevent prisoners from self injury. An officer also stated that Plaintiff was bashing his head on a flash-light.

When officers took Plaintiff out of the vehicle, they allowed Plaintiff to bash his head on the trunk of a police vehicle, causing injury. Officers brought Plaintiff into the station.

INCIDENT 2:

Once in the station, Incident 2, as is described below took place. Specifically, on the day and time of this incident, JAMESTOWN POLICE OFFICER MARK CONKLIN (who was working as the City Jailor) and JAMESTOWN POLICE SERGEANT OVEREND responded to and were present on the scene. They were personally involved and were responsible for providing the Plaintiff with medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him from harming himself. When Plaintiff refers to defendants/officers below in describing Incident 2, he is referring to the actions and personal involvement of JAMESTOWN

POLICE OFFICER MARK CONKLIN and JAMESTOWN POLICE SERGEANT OVEREND on scene, as well as the CITY OF JAMESTOWN.

Plaintiff screamed that his handcuffs were tight and asked officers to take them off. Plaintiff stated he had not slept in days, that he hadn't seen his children in weeks, that he had no-one to talk to, that he had no-one, and that he had PTSD. Plaintiff stated to officers that he had not eaten, that he did not care what happened to him, that he would rather kill himself then go to jail, and that he needed someone to talk to. Plaintiff also stated to officers that he wanted to go to the hospital.

Instead of sending Plaintiff to the hospital, placing him in a restraint chair, and or providing him with a mental health evaluation, they handcuffed him to a bench at the station. This delay/denial in care, failure to treat his medical condition, and failure to prevent self harm caused plaintiff pain and injury. They did not put Plaintiff in a restraint chair to prevent further self harm/injury. Plaintiff was handcuffed on the bench for a number of hours.

Defendants allowed plaintiff to smash his hands on the bench and yank on his handcuffs, causing injury. Plaintiff stated to officers that he lost his kids and his heart was gone, that he would rather kill himself, that he was psychotic, that he needed mental health help right now, and told officers to use a taser on him and to put a bullet in his head. Defendants allowed Plaintiff to punch the wall and break his ankle-handcuffs, causing injury. Plaintiff's mental health condition continued to deteriorate. Despite that, defendants still did not send Plaintiff to a hospital or provide him with a mental health evaluation. This caused him great pain and injury. Plaintiff again stated that he was going to kill himself. Officers allowed Plaintiff to hit his head off of the wall, causing injury. Plaintiff rambled, stumbled around, stretched his full body out with his leg attached to a bench, and took his shirt off. Plaintiff yanked his handcuffs on the bench, grabbed the phone

off of the wall, violently clapped his hands, punched the wall, fell off of the bench and landed on his side, hit his head on the wall, and rolled back and forth moaning. The above and delay in his medical care caused Plaintiff pain and injury.

Plaintiff stated to officers that he had been drinking for the past week, that he had not showered in days, that he was ready to kill himself, that he would rather be dead, that he has no-body and he was ready to say bye, that he had explosive anger disorder, that he was getting ready to kill himself and warned that officers better call someone in before he does it, that he was ready to jump head first off of the bench, and that he might as well kill himself. Plaintiff's mental health condition continued to deteriorate. Despite that, defendants still did not send Plaintiff to the hospital or provide him with a mental health evaluation. This caused him great pain and injury. The incident caused the claimant to be seriously injured.

<u>INCIDENT 3:</u>

Below is a description of <u>Incident 3.</u> Specifically, on the day and time of this incident JAMESTOWN POLICE OFFICER JOHN CONTI(who was working as the City Jailor), JAMESTOWN POLICE OFFICER WARD, and JAMESTOWN POLICE DETECTIVE MAGGIO responded to and were present on the scene. They were personally involved and were responsible for using excessive force on the Plaintiff, providing the Plaintiff with medical care on scene, for his custody care, control, and supervision on scene, and to also prevent him from harming himself. When Plaintiff refers to defendants/officers below in describing <u>Incident 3</u>, he is referring to the actions and personal involvement of JAMESTOWN POLICE OFFICER JOHN CONTI(who was working as the City Jailor), JAMESTOWN POLICE OFFICER WARD, and JAMESTOWN POLICE DETECTIVE MAGGIO on scene, as well as the CITY OF JAMESTOWN.

Hours later, plaintiff was arraigned. He was crying, trying to make statements on

the record, and acted erratically. His bazaar behavior from hours prior continued. Despite that,

defendants still did not send Plaintiff to the hospital or provide him with a mental health

evaluation. This caused him great pain and injury. After his arraignment, hours after he was brought

to the station, plaintiff ripped his Court paperwork up and threw it on the ground. Defendants

brought Plaintiff to the restraint chair. They allowed Plaintiff to hit his head on the metal bars in the

jail area causing him pain and injury.

In the process of restraining plaintiff, defendants assaulted, battered,

slammed Plaintiff to the ground, and seized Plaintiff without cause or provocation. The Defendants

pulled Plaintiff's shirt over his head for a period of time while they restrained him. They allowed

Plaintiff to bang his head and neck on the back of the restraint chair. He was strapped down by

Defendants extremely tight. He asked officers to loosen his restraints. This caused him pain and

injury. He asserts the following claims against Defendants:

- 42 USC 1983: Excessive Force;

- 42 USC 1983: Failure to Intervene;

- 42 USC 1983: Failure to Treat: Deliberate Indifference to Medical Needs;

- NY Civil Rights Law Section 28 Claim;

- Demand for Punitive Damages;

- Assault and Battery.

## PROCEDURAL BACKGROUND/OUTLINE OF WHAT DISCOVERY HAS TAKEN PLACE:

The following is a time-line of the discovery that has taken place to date.

Please note that currently the all fact discovery deadline is October 28, 2023, and the

all discovery deadline is December 13, 2023. (Dkt.No. 32)

Your Honor granted Plaintiff's first motion to extend each unexpired deadline out 90 days, on June 1, 2023 (Dkt. No. 34). Your Honor also granted Plaintiff's second motion to extend out the all fact discovery deadline an additional 90 days, on July 14, 2023. (Dkt. No. 36)

It is the Plaintiff's position that the following time-line shows his diligence. Upon the Court's request, the Plaintiff can provide written verification of the time-lines below.

- May 28, 2021-Summons and Complaint filed in State Court;

- June 9, 2021-Notice of Removal filed by County Defendants;

- June 10, 2021-Case was assigned to the Honorable Geoffrey Crawford;

- July 14, 2021-Motion to dismiss filed by County Defendants;

- August 25, 2021-Response filed by Plaintiff to County Defendant's motion to dismiss;

- August 27, 2021-Motion to dismiss filed by Jamestown Defendants;

- September 28, 2021: Reply/Response filed by County Defendants;

- October 19, 2021: Response filed by Plaintiff to Jamestown Defendant's motion;

- December 3, 2021: Response/Reply filed by Jamestown Defendants;

- January 7, 2022: Counsel for Jamestown Defendants and Plaintiff e-mailed regarding circulating proposed virtual deposition dates;

- June 3, 2022: Opinion and Order to the above motions signed by the Honorable Geoffrey Crawford;

- June 8, 2022: Plaintiff circulated a proposed case management order to Defense counsel and proposed dates for a conference call to discuss and finalize;

- June 17, 2022: Answer filed by Jamestown Defendants;

- June 17, 2022: Notice of appearance filed by Attorney Vincent Parlato;

- June 17, 2022: Answer filed by County Defendants;

- June 23, 2022: Plaintiff emailed Defense Counsel following up on his June 8th, 2022 email;

- June 23, 2022: Counsel for all Defendants and Plaintiff e-mailed regarding proposed modifications to the proposed case management order;

- July 11, 2022: Plaintiff emailed Defense Counsel regarding modifications to the proposed case management order and a proposed mediator;

- July 22, 2022: Plaintiff emailed Defense Counsel regarding proposed modifications to the proposed case management order;

- July 25, 2022: Plaintiff and Defense Counsel emailed regarding proposed modifications to the proposed case management order;

- July 27, 2022: Plaintiff and Defense Counsel emailed to discuss final modifications to the proposed case management order;

- July 28, 2022: Plaintiff and Defense Counsel emailed agreeing to proposed case management order;

- July 28, 2022: Discovery plan filed by Plaintiff;

- August 9, 2022: Plaintiff served his Rule 26 disclosures on defense counsel, that included approximately 13 medical authorizations;

- August 10, 2022: Plaintiff and Defense Counsel emailed regarding accepting service of Rule 26 disclosures electronically and also agreeing for an extension of time for Jamestown Defendants to serve their Rule 26 disclosures;

- August 11, 2022: Plaintiff and Defense Counsel e-mailed confirming Plaintiff's consent to the above mentioned extension to file Rule 26 disclosures;

- August 11, 2022: Defense Counsel for the County Defendants served their Rule 26 disclosures;

- August 31, 2022: Plaintiff exchanged e-mails with Defense Counsel regarding settlement negotiations;

- September 8, 2022: Plaintiff emailed regarding settlement negotiations;

- September 26, 2022: Plaintiff emailed regarding settlement negotiations;

- October 11, 2022: Plaintiff and Defense Counsel emailed regarding a proposed mediator;

- October 21, 2022: Plaintiff emailed regarding settlement negotiations;

- October 31, 2022: Plaintiff and Defense Counsel emailed confirming agreement to a proposed mediator;


- October 31, 2022: Plaintiff and Defense Counsel reached out to proposed mediator regarding his selection and scheduling a first mediation date;

- November 1, 2022: Plaintiff and Defense Counsel emailed regarding selection of proposed mediator and proposed mediation dates;

- November 1, 2022: Plaintiff and Defense Counsel e-mailed with mediator regarding agreed upon mediation date;

- November 3, 2022: Stipulation selecting a mediator filed by Plaintiff;

- November 4, 2022: Plaintiff sent mediator and Defense Counsel his mediation memorandum and submission;

- November 7, 2022: Rule 26 disclosures filed by Jamestown Defendants;

- November 8, 2022: Mediation certificate filed by Mediator;

- November 28, 2022: Plaintiff and Defense Counsel emailed regarding settlement negotiations;

- December 15, 2022: Case Management Order signed and filed by the Honorable Geoffrey Crawford;

- January 5, 2023: Plaintiff emailed with Defense Counsel regarding scheduling depositions;

- January 24, 2023: Plaintiff emailed Defense Counsel regarding following up on his January 5, 2023 email;

- February 2, 2023: Plaintiff and Defense Counsel emailed regarding proposed deposition dates;

- February 15, 2023: Plaintiff and Defense Counsel emailed regarding proposed depositions to take place on March 23-24, 2023;

- March 13, 2023: Plaintiff and Defense Counsel emailed regarding having to adjourn the above deposition dates to April;

- March 16, 2023: Plaintiff emailed regarding settlement negotiations;

- March 19, 2023: Plaintiff emailed mediator regarding status;

- March 20, 2023: Plaintiff emailed mediator regarding status;

- March 29, 2023: Plaintiff emailed with Defense Counsel regarding proposed Defense witnesses to be deposed and scheduled;

- March 30, 2023: Plaintiff and Defense Counsel emailed regarding status and discovery deadlines along with proposed deposition dates;

- April 4, 2023: Plaintiff and Defense Counsel emailed regarding newly proposed dates for depositions;

- April 7, 2023: Plaintiff e-mailed Defense Counsel regarding depositions to take place on April 20 and 24, 2023;

- April 7, 2023: Plaintiff had a phone call with Defense Counsel for the County Defendants regarding having to adjourn the April depositions as the County Defendants were still waiting on the processing/fulfilling/ getting responses to the medical authorizations provided;

- April 10, 2023:  Plaintiff e-mailed Defense Counsel regarding the above conversation, and agreeing/consenting to a 90 day extension of all unexpired deadlines;

- On or about April 20, 2023, Plaintiff  filed the above motion requesting that the Court grant Counsel a 90 day extension of all unexpired deadlines;

- May 2, 2023, Plaintiff's counsel scheduled a zoom call with Plaintiff;

- May 12, 2023, Plaintiff's counsel emailed with opposing Counsel;

- May 16, 2023, Plaintiff emailed with opposing Counsel;

- May 17, 2023, Plaintiff's counsel met with Plaintiff;

- May 17, 2023, Plaintiff's counsel emailed with mediator;

- May 18, 2023, Plaintiff's counsel emailed with opposing Counsel;

- May 19, 2023, Plaintiff called mediator;

- June 1, 2023, Plaintiff's first motion for an extension of time to complete discovery was granted;

- June 15, 2023, Plaintiff phoned some opposing Counsel;

- June 16, 2023, Plaintiff spoke with mediator;

- June 18, 2023, Plaintiff's counsel spoke with Plaintiff;

- July 7, 2023, Plaintiff emailed with opposing Counsel;

- July 8, 2023, Plaintiff emailed with opposing Counsel;

- July 10 2023, Plaintiff's counsel spoke with Plaintiff;

- July 10, 2023, Plaintiff emailed with opposing Counsel;

- July 12, 2023, Plaintiff emailed with opposing Counsel;

- July 13, 2023, Plaintiff sent his availability for depositions to opposing Counsel;

- July 12, 2023, Plaintiff left a message with Chambers;

- July 13, 2023, Plaintiff's office spoke with Chambers;

- July 13, 2023, Plaintiff received additional discovery demands from opposing Counsel;

- July 14, 2023-Plaintiff emailed with opposing counsel regarding scheduling depositions;

- July 14, 2023, Plaintiff filed a second motion to for an extension of time to complete discovery;

- July 14, 2023, Plaintiff's second motion for an extension of time to complete discovery was granted;

- July 19, 2023, Counsel emailed regarding proposed deposition dates;

- July 19, 2023, Plaintiff emailed with opposing counsel and identified the following Jamestown officer as those he wanted to depose (all of which are Parties he proposes to substitute in for the John Doe Defendants in this motion):

    - JAMESTOWN POLICE OFFICER CARTER OBERGFELL;

    - JAMESTOWN POLICE OFFICER KEVIN WISE;

    - JAMESTOWN POLICE SERGEANT OVEREND;

    - JAMESTOWN POLICE OFFICER MARK CONKLIN;

-     JAMESTOWN POLICE OFFICER
  JOHN CONTI.

- August 6, 2023: Plaintiff emailed with Counsel regarding the logistics of who would be deposed when and on what days;

- August 7, 2023: Counsel emailed regarding agreeing to having depositions via Zoom;

- August 9, 2023: Plaintiff sent deposition notices out to the Jamestown officers (via email to opposing counsel) he wished to depose that he identified on July 19, 2023, specifically, he sent out notices to the following officers:

    -     JAMESTOWN POLICE OFFICER
      CARTER OBERGFELL;

    -     JAMESTOWN POLICE OFFICER
      KEVIN WISE;

    -     JAMESTOWN POLICE SERGEANT
      OVEREND;

    -     JAMESTOWN POLICE OFFICER
      MARK CONKLIN;

    -     JAMESTOWN POLICE OFFICER
      JOHN CONTI. **(Exhibit A)**

      The attached noticed 3 of the 5 officers on August 16, 2023, and noted that we would scheduling the remaining two at a mutually convenient future date and time.

- August 10, 2023: Plaintiff sent a drop box link to opposing counsel with numerous proposed deposition exhibits;

- August 11, 2023: Counsel emailed regarding the specific times for the first depositions in the case to take place on August 16, 2023, noting that they would likely be producing:

    -     JAMESTOWN POLICE OFFICER
      KEVIN WISE;

    -     JAMESTOWN POLICE OFFICER
      MARK CONKLIN;

-      JAMESTOWN POLICE SERGEANT
  OVEREND.

The email also specifically noted that the additional two officers (JAMESTOWN POLICE OFFICER CARTER OBERGFELL and JAMESTOWN POLICE OFFICER JOHN CONTI) would be deposed at a later date.

- August 14, 2023: Counsel emailed regarding revising the order of and specific officers to be deposed on August 16, 2023, and specifically substituting in JAMESTOWN POLICE OFFICER CARTER OBERGFELL for JAMESTOWN POLICE SERGEANT OVEREND.

- August 14, 2023: Counsel emailed regarding Plaintiff being moved to a different correctional facility, and that his deposition date would have to be rescheduled;

- August 16, 2023: Plaintiff deposed the following Jamestown officers:

  -      JAMESTOWN POLICE OFFICER
    KEVIN WISE;

  -      JAMESTOWN POLICE OFFICER
    MARK CONKLIN;

  -      JAMESTOWN POLICE OFFICER CARTER OBERGFELL

- August 17, 2023, Stipulation of partial dismissal with regard to the Chautauqua Defendants was filed;

- August 17, 2023: Plaintiff emailed with opposing Counsel regarding his intention to make this motion;

- August 18, 2023, Counsel emailed regarding the Plaintiff's intention to amend his complaint and to make this motion;

- August 18, 2023: Counsel emailed regarding scheduling the remaining depositions;

- August 24, 2023: Plaintiff emailed opposing  counsel with proposed dates to complete depositions, specifically noting that Plaintiff wished to depose:

  -      JAMESTOWN POLICE SERGEANT
    OVEREND; and

  -      JAMESTOWN POLICE OFFICER

JOHN CONTI;

- September 5, 2023: Plaintiff emailed with opposing counsel regarding this motion, he also specifically requested that JAMESTOWN POLICE OFFICER WARD and JAMESTOWN POLICE DETECTIVE MAGGIO be added to the list of remaining depositions to be taken;

- September 9, 2023: Plaintiff followed up with opposing counsel regarding rescheduling the remaining depositions;

- September 13, 2023, Plaintiff left a voice-mail with opposing counsel to discuss this motion;

- September 15, 2023, Plaintiff sent opposing counsel a follow up email regarding this motion and also left voice-mails with opposing counsel.

**ARGUMENT:**

**POINT 1:**
**THE PLAINTIFF SHOULD BE ALLOWED TO**
**AMEND HIS COMPLAINT TO IDENTIFY AND**
**SUBSTITUTE THE ABOVE NAMED OFFICERS**
**BECAUSE THE AMENDMENT WILL SERVE THE INTERESTS OF**
**JUSTICE BY ALLOWING THE PLAINTIFF TO PURSUE RELIEF**
**BASED ON NEW FACTS LEARNED IN DISCOVERY:**

The Plaintiff should be allowed to amend/correct his complaint because it will serve the interests of justice by allowing the Plaintiff to pursue relief based on new facts learned in discovery. This case presented a unique challenge with regard to the Plaintiff's identification of the John-Doe Officers/employees. This is not your typical civil rights claim that involved one incident with a specific set of Defendants. The alleged incidents outlined above took place over a 10 hour time period, took place at different locations, and involved different Jamestown Officers/employees.

Specifically, the first alleged incident took place at approximately 2:53AM on December 10, 2020, as noted by the first incident report attached as **Exhibit B**. The last alleged incident took place at approximately 1:00PM on December 10, 2020, as noted by the first incident report attached as **Exhibit B**. The incidents took place at two separate locations, that include 111

Barrett Avenue, and the Jamestown City Jail.

  Upon information and belief, the incidents spanned two or more full work shifts of City of Jamestown Officers/employees. Plaintiff was provided with the 4 separate incident reports in discovery. The above mentioned incident reports are attached as **Exhibit B**. Each of the incident reports noted the names of numerous potential Defendants who were present on the scene of each incident.

  Each incident report gave a detailed narrative, but did not clearly outline: who did what, who directed/controlled what took place, who had the power to direct/control what took place, who made the ultimate decisions regarding the actions taken, including but not limited to, the full list of employees present/working at the time of each incident.

  In order to clarify and identify the specific names of the Officers listed above to be substituted in for the John Doe Defendants, depositions were needed. In other words, in order to determine who we had a good faith basis to name as an individual Defendant, depositions had to be taken. The first session of depositions took place on August 16, 2023. On that date, JAMESTOWN POLICE OFFICER KEVIN WISE, JAMESTOWN POLICE OFFICER MARK CONKLIN , and JAMESTOWN POLICE OFFICER CARTER OBERGFELL were deposed. On that date, Counsel Deposed the above named officers over the course of a full day. Counsel questioned each officer in detail, asked them detailed questions, and verified the accuracy of the incident reports.

  The full extent of each officers individual involvement was thoroughly fleshed out, allowing Plaintiff to name them individually. It is the Plaintiff's position that the deposition testimony of the officers revealed each officers individual involvement in each incident as outlined in the factual portion above and in his amended complaint. Attached as **Exhibit H-J**, please find excerpts from each officer deposition transcript to date. Counsel reserves his right to supplement

his motion with the entire transcripts if the Court feels its necessary.

Rule 15(a) provides that in cases where a party cannot amend as a matter of course, a party may amend its pleading only with the opposing party's written consent or the court's leave. Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251; Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)

A court should freely give leave when justice so requires and such leave is in the court's discretion. Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251; Fed. R. Civ. P. 15(a); Grace v. Rosenstock, 228 F.3d 40, 56 (2d Cir. 2000) The liberality in granting leave to amend applies to requests to amend a complaint to add new parties. Brown v. Kelly, 244 F.R.D. 222

In interpreting Rule 15(a), the Second Circuit has explained that district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility. Friedl v. City of New York, 210 F.3d 79; Block v. First Blood Assocs., 988 F.2d 344

The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial. Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 253; Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); European Cmty. v. RJR Nabisco, Inc., 150 F. Supp. 2d 456, 502-03 (E.D.N.Y. 2001); Saxholm AS v. Dynal, Inc., 938 F. Supp. 120, 123 (E.D.N.Y. 1996).

The opposing party likewise bears the burden of establishing that an amendment would be futile. Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998); Harrison v. NBD Inc., 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

An amendment is futile if the proposed amended complaint could not survive a motion to dismiss. Soroof Trading Dev. Co. v. Ge Microgen, Inc., 283 F.R.D. 142, 147 Ricciuti v.

New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991).

Prejudice arises when the amendment would (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. Soroof Trading Dev. Co. v. Ge Microgen, Inc., 283 F.R.D. 142 ; Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

Given the presumption that granting leave favors the interests of justice, it is rare that such leave should be denied, especially when there has been no prior amendment. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119 Courts have repeatedly granted leave to amend where the movant has uncovered new evidence through discovery and acted on that information without delay. SEC v. DCI Telecomms., Inc., 207 F.R.D. 32 (the Court granted the plaintiff's motion to amend to add new information learned approximately 3 months prior in discovery)

Even when plaintiffs learn new information many months into the proceeding, courts have allowed amendments based on new evidence uncovered during discovery. Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (allowing amendment one year and seven months after initial deadline for amendment where amendment was based on new facts learned during discovery and plaintiff added no new claims for relief) Similar to Rule 15(a), Federal Rule of Civil Procedure 21 provides that on motion or on its own, the court may at any time, on just terms, add or drop a party. Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251; Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010).

However, it has been held that there is little practical difference between Rule 15 and Rule 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion. Id.; Franco v. Ideal Mortg. Bankers, Ltd., No. 07-CV-3956, 2009 U.S.

Dist. LEXIS 91570, 2009 WL 3150320, at *3 n.3 (E.D.N.Y. Sept. 28, 2009) (citing <u>Savine Rivas</u> <u>v. Farina</u>, No. 90-CV-4335, 1992 U.S. Dist. LEXIS 11524, 1992 WL 193668, at *1 (E.D.N.Y. Aug. 4, 1992). It has also been held that Rule 21  creates no additional obstacle, as the showing necessary under Rule 21 is the same as that required under Rule 15(a)(2).  <u>Soroof Trading Dev. Co. v. Ge</u> <u>Microgen</u>, Inc., 283 F.R.D. 142, 147

It has also been held that courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of the responsible officials. <u>Jackson v. Cty. of Erie</u>, 2020 U.S. Dist. LEXIS 173335

As is outlined in the paragraphs above, in order to clarify and identify the specific names of the Officers listed to be substituted in for the John Doe Defendants, depositions were needed. In other words, in order to determine who we have a good faith basis to name as an individual Defendant, depositions had to be taken.

Allowing the above  amendments  will not prejudice the Defendants.  It would not require them to expend significant additional resources to conduct discovery or cause a delay in the resolution of this matter. The Plaintiff is simply substituting the named employees for the John-Doe Defendants and conforming the Complaint to this Court's Decision and Order. The amount of remaining discovery would be the same whether  the officers/employees were specifically named or not. It would also not prevent the Plaintiff from bringing a timely action in another jurisdiction.

3 of the 7 proposed individual Defendants have already been deposed. Prior to the making of this motion, Counsel had been working on scheduling depositions for the remaining  4 proposed new Defendants who have not been deposed. It is the Plaintiff's position that the proposed Defendants knew or should of known that they were potential Defendants in this action since the Complaint was filed. At the very least they were on actual notice of that fact upon receipt of the

deposition notices (**Exhibit A** dated August 8, 2023 and sent on August 9, 2023) and Plaintiff's September 5, 2023 email requesting to depose the additional officers who did not receive notices.

Discovery in this matter is not closed. Please note that currently the all fact discovery deadline is October 28, 2023, and the all discovery deadline is December 13, 2023. (Dkt. No. 32) The door is also still open to request additional time for discovery if needed.

It is also very likely that Defense Counsel for the present Defendants will represent the substituted Defendants pursuant to local law that indemnifies employees of the Sheriff's Department for actions taken in the course of their employment. DiJoseph v. Erie Cty., 2020 U.S. Dist. LEXIS 128751 Specifically, Defense Counsel has coordinated the presence of the Officers who have been deposed to date, and upon information and belief, will coordinate the presence of the remaining officers to be deposed.

It is the Plaintiff's position that the proposed amended complaint would not be futile and relies upon the arguments he made in his opposition papers to the Defendants motion to dismiss. (Dkt. No. 13 and Dkt. No. 20) In addition, it is Plaintiff's position that he accurately conformed the Complaint and only included causes of action that the Court did not dismiss in their decision in Powell v. City of Jamestown, 2022 U.S. Dist. LEXIS 99749 **(Exhibit C)** based on the facts alleged.

### POINT 2:

### GOOD CAUSE ALSO EXISTS TO AMEND THE SCHEDULING ORDER TO ALLOW FOR THE AMENDMENT:

It is the Plaintiff's position that good cause exists to amend the scheduling order to allow for this amendment, assuming arguendo the Court feels an extension is needed.

Notably, the scheduling/case management order required any motions to Join Parties/Amend Pleadings be made by December 14, 2022. (Dkt. No. 32)

Plaintiff requests that the Court substitute in the individually named officers for the already named John Doe Defendants.

In most cases, scheduling orders cannot be changed absent a showing of good cause. A finding of good cause depends on the diligence of the moving party. <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326  Good cause is also demonstrated by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met by the plaintiff. <u>Soroof Trading Dev. Co. v. Ge Microgen</u>, Inc., 283 F.R.D. 142; <u>Oscar v. BMW of North America</u>, No. 09 Civ. 11, 2011 U.S. Dist. LEXIS 146395, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011)

The Court has discretion to preserve its Scheduling Order or to extend deadlines therein upon a showing of good cause.  <u>Williams v. Fischer</u>, 2015 U.S. Dist. LEXIS 72294 Factors for determining good cause and the diligence of the moving party include  the imminence of trial; whether the request is opposed;  whether the moving party foresaw  the need for additional discovery, in light of the discovery deadline set by the court; prejudice to the non-moving party; and 5) whether further discovery is likely to lead to relevant evidence. <u>Id</u>.

It is the Plaintiff's position that he acted extremely diligently. The Plaintiff incorporates  the time line outlined in the  procedural background/outline of what discovery has taken place above herein by reference to support that argument. A trial date in this matter has not been scheduled. Discovery has not been closed. Based on Counsel's arguments above, it is his position that the deadline could not have been met despite his diligence. Specifically (but not limited to) the Defendants Rule 26 Disclosures were filed on November 7, 2022 (Dkt. No. 30), approximately one month before the deadline, and the Court's Case management order was filed on December 15, 2022, 1 day after the deadline. Additionally, the first round of depositions just recently took place on August 16, 2023.

No prejudice to the Defendants exists if the Plaintiff's requested amendment is allowed. Plaintiff incorporates the arguments he made above regarding lack of prejudice herein by reference. No new claims are being raised and the matter will resume in the same manner if the amendment is allowed.

Plaintiff also made similar arguments in a prior matter before the Honorable Hugh B. Scott, and parts of the requested amendments in that case were granted, despite the expiration of the scheduling deadline. **Exhibit D**

## **POINT 3:**

## **THE PLAINTIFF'S REQUESTED AMENDMENTS SHOULD RELATE BACK TO THE DATE OF THE FILING OF HIS SUMMONS AND COMPLAINT:**

The Plaintiff's requested amendments should relate back to the date of the filing of his summons and complaint. Plaintiff would like to note that it is his position that the his 42 USC 1983 claims are timely. Specifically, a 1983 action has a 3 year statute of limitations (Harris v. Bd. of Educ., 230 F. Supp. 3d 88) (3 years from December 10, 2020 is December 10, 2023, and the COVID tolling mentioned below added 228 days to December 10, 2023 (**Exhibit F**), making the deadline July 25, 2024)

Plaintiff would also like to note that it is his position that his NY Civil Rights Section 28 Claim is also timely. Specifically, Claims brought under the New York Civil Rights Law are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp. 2d 135, 139 (3 years from December 10, 2020 is December 10, 2023, and the COVID tolling mentioned below added 228 days to December 10, 2023 (**Exhibit F**), making the deadline July 25, 2024) The only arguable causes of action where the statute of limitation has expired are the Plaintiff's assault and battery claims. However, in any event, Plaintiff argues that all

of the proposed amendments should relate back to that date of the initial filing of his Summons and Complaint filed on May 28, 2021. (Dkt. No. 1)

The Court of Appeals for the Second Circuit has held that Rule 15(c)(1)(A) instructs courts to look to the entire body of limitations law that provides the applicable statute of limitations. Hogan v. Fischer, 738 F.3d 509  If the statute of limitations derives from New York State Law, courts must determine if New York State Law provides a more forgiving principal of relation back in the John -Doe context, compared to the  federal relation back doctrine under Rule 15(c)(1)(A). The Court of Appeals has held that New York does. Id.  The Court of Appeals referenced NY CPLR Section 1024. Id. CPLR 1024 provides that a party who is ignorant of the name or identity of a person who may properly be a made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. Id. If the name or the remainder of the name becomes known, all subsequent proceedings shall be taken under the true name and all prior pleadings shall be deemed amended accordingly. Id.

New York Courts have interpreted this  section to permit John -Doe substitutions nunc pro tunc. Id. To take advantage of that section, a party must meet two requirements: (1) the party must exercise due diligence prior to the running of the statute of limitations to identify the defendants by name, and (2) the party must describe the John -Doe party in such a form as will fairly apprise the party that he is the intended defendant. Id. It has also been noted that an amendment to pleadings relates back to the date of the original pleading when the amendment asserts a claim that arose from conduct set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). Williams v. Fischer, 2015 U.S. Dist. LEXIS 72294,

The Supreme Court has held that the period of limitations for any  state claim joined with a claim within federal-court competence shall be tolled  while the claim is pending in federal

court. <u>Artis v. District of Columbia</u>, 138 S. Ct. 594  In addition, per the Erie Doctrine and <u>Wallace v. Kato</u>, 549 U.S. 384 (holding that the Supreme Court  has generally referred to State Law  for tolling  rules, just as they have for statutes of limitations),  Governor Cuomo's executive orders (March 7, 2020 through November 3, 2020 (**Exhibit F**) tolling time limits apply here.

It would apply under the Erie Doctrine to state law claims being heard by a federal court exercising supplemental jurisdiction.  With regard to the Plaintiff's diligence, please refer to his arguments above.  With regard to his description of the John Does, he described them as said names being fictitious, but intended to be the individuals/officers involved in the within incident. Therefore every officer/employee who was familiar with the Plaintiff and his injuries and the incidents would be on notice.

Finally, the amendment does not assert any new claims, it simply substitutes the above named employees for the John Does and conforming it to this Court's Decision, for the same incidents that arose from conduct set out in the Plaintiff's  original pleading. Therefore, the Plaintiff's motion should be granted.

Dated:        September 15, 2023

                                SHAW & SHAW, P.C.

                                <u>/s/Blake Zaccagnino</u>
                                Blake Zaccagnino
                                Attorneys for Plaintiff
                                Office and Post Office Address
                                4819 South Park Avenue
                                Hamburg, NY 14075
                                (716) 648-3020 Telephone
                                (716) 648-3730 Fax